Andrew G. Dietderich
Brian D. Glueckstein
Benjamin S. Beller
Noam R. Weiss
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ——————————————x | : | |
| In re | : | Chapter 11 |
| | : | |
| GARRETT MOTION INC., *et al.*,[1] | : | Case No. 20-12212 (MEW) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| ——————————————x | : | |

**SUPPLEMENTAL DECLARATION OF BRUCE MENDELSOHN IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507 AND 552, (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING AND (VI) GRANTING RELATED RELIEF**

Bruce Mendelsohn hereby declares and says:

1.      I am a Partner and the Head of Global Restructuring at Perella Weinberg

---

[1]   The last four digits of Garrett Motion Inc.'s tax identification number are 3189. Due to the large number of debtor entities in these Chapter 11 Cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/garrettmotion. The Debtors' corporate headquarters is located at La Pièce 16, Rolle, Switzerland.

Partners L.P. ("PWP"), a financial advisory firm that maintains an office at 767 5th Avenue, New

York, New York 10153.  On September 20, 2020, I submitted my declaration (the "Initial

Declaration") in support of *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to*

*11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507 and 552, (I) Authorizing Debtors to (A)*

*Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing*

*Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to*

*the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final*

*Hearing and (VI) Granting Related Relief* [D.I. 17] (the "DIP Motion")[2] filed by Garrett Motion

Inc. and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in

the above-captioned chapter 11 cases, attached to the DIP Motion as Exhibit B.

2.    I hereby submit this supplemental declaration (this "Supplemental

Declaration") in further support of the DIP Motion.

## I.    Background

3.    On September 21, 2020, the Court held an initial hearing the ("First Day

Hearing") to consider, among other things, approval on an interim basis the relief requested in

the DIP Motion (the "Initial Senior DIP Facility").  During the First Day Hearing, PWP received

a proposal from Centerbridge Partners ("Centerbridge") and Oaktree Capital ("Oaktree") for an

alternative debtor-in-possession financing (the "Centerbridge/Oaktree Junior DIP Proposal").

The Centerbridge/Oaktree Junior DIP Proposal included terms similar to those of the Initial

Senior DIP Facility, but contained the following primary differences:  (i) liens junior to the liens

held by the Prepetition Lenders; (ii) no milestones for the Debtors' chapter 11 cases; (iii) two

3-month extensions to maturity in exchange for certain fees (as compared to a single 2-month

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion.

extension available under the Initial Senior DIP Facility); and (iv) an additional non-priming fee of $3 million.  The proposal received is attached as **Exhibit A**.

4.       The Debtors agreed to adjourn the hearing with respect to the DIP Motion to September 29, 2020 (since rescheduled for October 1, 2020), in order to allow time for negotiations with parties in interest and for the Debtors and their Advisors to evaluate and consider DIP financing alternatives.  The Debtors and their Advisors engaged in discussions with Oaktree and Centerbridge and their counsel to evaluate the Centerbridge/Oaktree Junior DIP Proposal, and responded to a number of diligence requests from Centerbridge and Oaktree, including a call with the management team to discuss recent operating performance and the DIP Budget, among other things.

5.       The Debtors and their Advisors also engaged with Citibank, the syndication agent for the Initial Senior DIP Facility, and the advisors to the Ad Hoc Group of prepetition lenders, to explore possible improvements to the terms of the Initial Senior DIP Facility.  On September 23, the Debtors received a revised proposal that:  (i) removed the milestones contemplated in the Initial Senior DIP Facility and (ii) extended the duration of the extension of the facility contemplated in the Initial Senior DIP Facility from 2 months to up to 3 months at an extension cost of 1.5%.  The Debtors and their Advisors engaged in further discussions with Oaktree and Centerbridge and their advisors, as well as Citibank and the Ad Hoc Group.  The Debtors did not receive an improved proposal from Oaktree and Centerbridge. However, the Debtors received a further improved proposal with respect to the Initial Senior DIP Facility, which included, among other things, removal of the event of default arising from termination (and termination events) under the RSA, and a reduction in the cost of the 3-month extension from 1.5% to 50 basis points per month of extension, thus making a 1 or 2-month extension less costly than the full 3-month extension.  I refer to the Initial Senior DIP Facility as

3

improved by all of these cumulative changes, as the "Revised Senior DIP Facility."

6.　　　On September 25, 2020, PWP received a third DIP financing proposal forwarded by Ropes & Gray LLP, counsel to an ad hoc group of Prepetition Secured Noteholders (the "Noteholder Junior DIP Proposal" and together with the Centerbridge/Oaktree Junior DIP Proposal, the "Junior DIP Proposals").  This proposal is attached as **Exhibit B**.  The Noteholder Junior DIP Proposal is on its face less favorable for the Debtors than the Revised Senior DIP Facility.  The proponents of the Noteholder Junior DIP Proposal have not made substantial efforts with PWP to advance the Noteholder Junior DIP Proposal.

## II.　　The Debtors' Assessment of the DIP Financing Proposals and Selection of the Revised Senior DIP Facility

7.　　　To facilitate the Debtors' consideration of the DIP financing proposals, PWP prepared a summary of the proposed economic terms of the three proposals received by the Debtors, which is attached hereto as **Exhibit C** ( the "DIP Proposals Comparison").

8.　　　In addition to the greater all-in cost of the Centerbridge/Oaktree Junior DIP Proposal as compared to the Revised Senior DIP Facility, the Debtors, in consultation with PWP, also considered the following:

- The international nature of the Debtors' business raised certain concerns about potential objections by Prepetition Lenders to (A) the use of cash collateral to pay critical and foreign vendors and make investments in non-Debtor subsidiaries, and (B) the creation of appropriate intercreditor and security arrangements for the substantial amount of collateral of the Debtors located outside of the United States.  A priming fight in these circumstances could require time and judicial resources to resolve, and create uncertainty the Company's customers, suppliers, vendors, and employees.

- The Prepetition Lenders have not agreed to consent to the use of cash collateral in connection with any of the Junior DIP Proposals.  As a result, implementing any of the Junior DIP Proposals would create the additional costs and risks for the Debtors of a contested hearing with their primary prepetition secured lenders.

4

- The Revised Senior DIP Facility is a condition to the continued effectiveness of the RSA, through which 61% of the Prepetition Lenders have agreed to support (i) the KPS stalking horse bid (the "<u>Stalking Horse Bid</u>"), (ii) any overbid that provides greater value to the Debtors' estates than the Stalking Horse Bid, and (iii) any other chapter 11 plan that pays the Prepetition Lenders in full in cash. A termination of the RSA would give rise to a right of KPS to terminate its obligations under the Stalking Horse Bid.

- Under the RSA, in connection with a plan sale of the Debtors' business to any purchaser (whether or not KPS) in a transaction that is substantially similar to the KPS transaction, the Prepetition Lenders have agreed to waive their claims to default interest, which depending on the length of these cases, would save the Debtors approximately $19 million under current estimates. Although the Debtors are free to pursue alternatives other than a plan sale, if the Debtors pursue such a plan sale to any purchaser (whether or not KPS), the default interest savings represent material interest savings to the Debtors.

- Centerbridge has indicated a possible interest in acquiring the Company, and did not propose voting restrictions in its term sheet. Both the Initial Senior DIP Facility and the Revised Senior DIP Facility limit voting by any "Interested Lender", which is defined to include, among others, KPS and any person that has expressed at any time since January 1, 2020, or expresses in the future, in writing and interest in acquiring certain equity interests or assets of the Debtors.

9.      The Debtors' negotiation of the Revised Senior DIP Facility has resulted in material improvements from the Initial Senior DIP Facility. In my opinion, the terms of the Revised Senior DIP Facility were negotiated and agreed in good faith and are the result of arm's-length bargaining. Based on my experience with DIP financing transactions as well as my involvement in the marketing and negotiation of the DIP financing process described above and in my Initial Declaration, I believe that the Revised Senior DIP Facility is the best financing option presently available to the Debtors under the circumstances and contains terms that are customary and usual for DIP financings of this type.

I, the undersigned Partner at Perella Weinberg Partners, declare under penalty of perjury that the foregoing is true and correct.

Dated: September 27, 2020

/s/ Bruce Mendelsohn
Bruce Mendelsohn
Partner
Perella Weinberg Partners
*Proposed Investment Banker to the Debtors and Debtors-in-Possession*

**<u>Exhibit A</u>**

**Centerbridge/Oaktree Junior DIP Proposal**

**MILBANK DRAFT 9/21/20**
**SUBJECT TO FRE 408 & ITS EQUIVALENTS**

## GARRETT MOTION INC.

### DIP FACILITY PROPOSAL

**(Side-By-Side Comparison to the Citigroup DIP Facility)**

**[ ], 2020**

This term sheet (the "**Term Sheet**") summarizes: (i) certain terms and conditions (and does not purport to summarize all of the terms and conditions) of a potential superpriority non-priming secured debtor-in-possession term loan credit facility (the "**DIP Facility**") to be provided to Garrett Motion, Inc. (the "**Borrower**"), in its capacity as a debtor and debtor in possession (together with its affiliated debtors, the "**Debtors**"), in connection with its case (along with the cases of the other Debtors, the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") commenced on September 20, 2020 (the "**Petition Date**"), *in comparison to* (ii) certain terms and conditions under that certain proposed senior secured debtor-in-possession term loan facility arranged by Citigroup Inc. in connection with the Chapter 11 Cases (the "**Citigroup DIP Facility**").

The DIP Facility will be subject to the approval of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), in accordance with the DIP Orders and the DIP Documents. Without limiting the generality of the foregoing, this Term Sheet and the undertakings contemplated herein are subject in all respects to the negotiation, execution, and delivery of definitive documentation in form and substance consistent with this Term Sheet and otherwise acceptable to the Borrower and the DIP Lenders (the "**DIP Documents**"), as well as the completion of due diligence satisfactory to the DIP Lenders.

This Term Sheet is presented for discussion purposes only, does not constitute a commitment to provide, accept, or consent to any financing or otherwise create any implied or express legally binding or enforceable obligation on any party (or any affiliates of a party), at law or in equity, to negotiate or enter into definitive documentation related to the DIP Facility or otherwise. This Term Sheet is provided as part of a settlement proposal in furtherance of settlement discussions and is entitled to protection from any use or disclosure to any party or person pursuant to Federal Rule of Evidence 408 and any applicable statutes, doctrines, or rules protecting the use or disclosure of confidential information and information exchanged in the context of settlement discussions.

|  | **Citibank DIP Facility** | **DIP Facility** |
|---|---|---|
| **Borrower** | Garrett Motion Inc. | Same. |
| **Guarantors** | Each entity which guarantees (or is required to guarantee) the obligations of the Borrower and the other Debtors arising under the prepetition Credit Agreement. | Same. |
| **Agent** | Citibank, N.A. | [•]. |
| **Lead Arranger** | Citigroup Global Markets Inc. or any of its affiliates. | N/A. |

| | **Citibank DIP Facility** | **DIP Facility** |
|---|---|---|
| **DIP Lenders** | A syndicate of prepetition lenders under the prepetition Credit Agreement (including the *ad hoc* group of prepetition lenders and each other prepetition lender that has become a party to the RSA, who will be offered the opportunity to participate in the DIP Facility on a *pro rata* basis). | Affiliates or designees of Centerbridge Partners, L.P. and Oaktree Capital Management, L.P., respectively. |
| **Facility** | A non-amortizing senior secured superpriority debtor-in-possession term loan facility with a maximum principal availability of $250 million to be funded in two borrowings as follows: (i) $100 million on an interim basis, and (ii) $150 million on a final basis. | Same, provided that, with respect to the prepetition collateral, the DIP Facility will be secured on a basis junior to the liens securing the loans outstanding under the prepetition Credit Agreement. |
| **Scheduled Maturity Date** | March 31, 2021, subject to extension by 2 months upon request of the Borrower in exchange for the payment of an extension fee equal to 1.00% of the principal amount of the DIP loans outstanding and provided no default or Event of Default has occurred and is continuing. | March 31, 2021, subject to two separate three-month extensions at the request of the Borrower (provided no default or Event of Default has occurred and is continuing) upon payment of:<br>• for the first extension, a fee equal to 1.5% of the principal amount of the DIP loans outstanding; and<br>• for the second extension, a fee equal to 2.5% of the principal amount of the DIP loans outstanding. |
| **Purpose** | Proceeds used to:<br>• pay certain costs, premiums, fees and expenses related to the Chapter 11 Cases;<br>• with respect to the interim borrowing, make payments pursuant to any interim or final "first day" orders;<br>• make adequate protection payments; and<br>• fund working capital needs of the Debtors and their subsidiaries to the extent permitted under a 13-week budget satisfactory to the required DIP lenders. | Same. |
| **All-in Cost** | Same all-in cost to the Debtors. | Same all-in cost to the Debtors. |
| **Interest Rate** | Loans to bear interest at a rate, at Borrower's option, equal to<br>• prior to March 31, 2021, the Base Rate *plus* 3.50% per annum <u>or</u> LIBOR (subject to a 1.00% floor) *plus* 4.50% per annum; and<br>• following March 31, 2021, if the Scheduled Maturity Date has been extended at such time, the Base Rate *plus* 4.50% per annum <u>or</u> LIBOR (subject to a 1.00% floor) *plus* 5.50% per annum, in each case, compounded monthly and payable every 30 days in arrears.<br>"**Base Rate**" means the highest of (i) the Agent's prime rate, (ii) the federal funds effective rate from time to time (but not less than zero) *plus* 0.50% and (iii) the LIBOR for an interest period of one month (giving effect to the LIBOR floor) *plus* 1.00%. | Loans to bear interest at a rate, at Borrower's option, equal to<br>• prior to March 31, 2021, LIBOR (subject to a 1.00% floor) *plus* 4.50% per annum;<br>• following March 31, 2021, if the Scheduled Maturity Date has been extended at such time, but prior to June 21, 2021, LIBOR (subject to a 1.00% floor) *plus* 5.50% per annum, in each case, compounded monthly and payable every 30 days in arrears; and<br>• following June 21, 2021, if the Scheduled Maturity Date has been extended at such time, LIBOR (subject to a 1.00% floor) *plus* 6.50% per annum, in each case, compounded monthly and payable every 30 days in arrears. |
| **Default Rate** | Applicable interest rate *plus* 2.00% *per annum* | Same. |

| | Citibank DIP Facility | DIP Facility |
|---|---|---|
| **Fees** | • <u>OID</u>: Loans made after deduction of original issue discount in the amount of 2.00% of the commitments at closing.<br>• <u>Agent Fees</u>: Arrangement fee equal to 1.00% of the aggregate principal amount of the DIP facility, plus agency fee in the amount of $100,000.<br>• <u>Financing Fee</u>: 1.00% of each lender's commitments at closing, payable in cash. | • <u>OID</u>: Loans made after deduction of original issue discount in the amount of 2.00% of the commitments at closing.<br>• <u>Financing Fee</u>: 2.00% of each lender's commitments at closing, payable in cash.<br>• <u>Agent Fee</u>: Agency fee in the amount of $100,000. |
| **Consent Fee** | • Prepetition lenders who sign the RSA and consent to the incurrence of the DIP loans on a priming basis will receive a consent fee equal to 0.25% of the principal amount of such lender's loans under the prepetition Credit Agreement | Non-priming fee equal to $3 million, payable to the DIP lenders in cash upon closing of the DIP Facility. |

| | **Citibank DIP Facility** | **DIP Facility** |
|---|---|---|
| **Adequate Protection** | Adequate protection to the prepetition secured lenders as follows:<br>• the payment of the reasonable and documented out-of pocket fees and expenses of (i) Gibson Dunn, as legal counsel to the *ad hoc* group of prepetition lenders and one local counsel in each applicable material jurisdiction, (ii) PJT Partners, as financial advisor to the *ad hoc* group, and (iii) the prepetition agent;<br>• replacement liens on prepetition collateral;<br>• allowed superpriority administrative expenses; and<br>• postpetition monthly interest payments, payable on the last business day of each month, in an amount equal to the nondefault interest rate payable under the prepetition Credit Agreement (including, payment of all prepetition accrued and unpaid interest under the prepetition Credit Agreement), with default interest of an additional 2% accruing in kind.<br>Adequate protection to noteholders:<br>• reimbursement of all reasonable and documented postpetition professional fees of (i) Ropes & Gray, as counsel to an *ad hoc* group of noteholders and (ii) a financial advisor selected by the *ad hoc* group;<br>• superpriority administrative expenses as provided for in section 507(b) of the Bankruptcy Code that are junior to the claims of the DIP lenders and the prepetition secured lenders; and<br>• continuing valid, binding, enforceable and perfected postpetition security interests in and liens on all of the collateral under the notes indenture, junior only to the existing valid, perfected, unavoidable and senior liens in such collateral held by any other parties, the carve-out, the DIP liens, the liens under the prepetition Credit Agreement, and the prepetition secured lenders' adequate protection liens. | Same or substantially similar. |

| | Citibank DIP Facility | DIP Facility |
|---|---|---|
| **Milestones** | • Entry of Bid Procedures Order: 35 days following the Petition Date **(October 25, 2020)**.<br>• File Acceptable Disclosure Statement and Plan: 35 days following the Petition Date **(October 25, 2020)**.<br>• Entry of Disclosure Statement Order: 90 days following the Petition Date **(December 19, 2020)**.<br>• Entry of Sale and Confirmation Order: 150 days following the Petition Date **(February 17, 2021)**.<br>• Plan Effective Date: 210 days following the Petition Date **(April 18, 2021)**. | No milestones. |
| **Optional Prepayments** | The Borrower may prepay in full or in part, subject to a prepayment premium of 1.00% of the aggregate principal amount of the DIP loans prepaid, refinanced, substituted, or replaced, and subject to breakage costs, if applicable, of the loans; provided, that each such partial prepayment shall be in an aggregate amount that is an integral multiple of $500,000 and not less than $1 million. | Same. |
| **Mandatory Prepayments** | Mandatory prepayments of the DIP loans include an amount equal to:<br>• 100% of insurance and condemnation proceeds;<br>• 100% of net cash proceeds from the issuance or incurrence of postpetition indebtedness not permitted by the DIP credit agreement; and<br>• 100% of the net cash proceeds of any asset sales (other than dispositions in the ordinary course of business, dispositions specifically approved by the required DIP lenders in advance, dispositions provided for in the budget, and other customary exceptions). | Same. |
| **Security** | Liens on substantially all of the Borrower's and the Guarantors' tangible and intangible assets, including, without limitation, any collateral granted in respect of the prepetition Credit Agreement and including, upon entry of the final DIP order, any proceeds of avoidance actions available to the Debtors' bankruptcy estates. | Same. |

| | Citibank DIP Facility | DIP Facility |
|---|---|---|
| Priority | All obligations under the DIP facility shall:<br>• pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to joint and several superpriority administrative expense status in the Chapter 11 Cases;<br>• pursuant to section 364(c)(2) of the Bankruptcy Code, be secured by a first-priority lien on all DIP collateral that is not subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date, including upon entry of the final DIP order, any proceeds of avoidance actions;<br>• pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by a junior lien on all collateral that is subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date in favor of third parties that were in existence immediately prior to the Petition Date, or to valid and non-avoidable liens in favor of third parties that were in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, subject as to priority to such liens in favor of such third parties; and<br>• pursuant to section 364(d) of the Bankruptcy Code, be secured by a priming lien on the prepetition collateral for the loans under the prepetition Credit Agreement. | All obligations under the DIP facility shall:<br>• under section 364(c)(1) of the Bankruptcy Code, be entitled to joint and several superpriority administrative expense status against each Debtor, which claims in respect of the DIP facility shall be superior to all other claims;<br>• under section 364(c)(2) of the Bankruptcy Code, be secured by a first-priority lien on all DIP collateral that is not subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date, including upon entry of the final DIP order, any proceeds of avoidance actions;<br>• pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by a junior lien on all collateral that is subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date in favor of third parties that were in existence immediately prior to the Petition Date, or to valid and non-avoidable liens in favor of third parties that were in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, subject as to priority to such liens in favor of such third parties; and<br>• pursuant to section 364(d) of the Bankruptcy Code, be secured by a priming lien on the prepetition collateral for the notes. |
| Carve-Out | Professional fees: $5 million after the delivery of a carve-out Notice. Chapter 7 Trustee Fees: $50,000. | Same. |
| Committee Investigation | Budget: $50,000.<br>Investigation period: 60 calendar days following the selection of counsel to the UCC. | Same. |
| Conditions Precedent to Funding | Certain customary conditions, plus:<br>• Prepetition lenders holding not less than 50.1% of the outstanding principal amount of loans and/or revolver exposure under the prepetition Credit Agreement shall have consented to the DIP facility, including the priming liens. | Same but no requirement to consent to priming. |

| | **Citibank DIP Facility** | **DIP Facility** |
|---|---|---|
| **Financial Reporting Requirements** | The Borrower shall provide to the DIP lenders:<br>• monthly unaudited summary consolidated financial statements of the Borrower and its subsidiaries;<br>• quarterly unaudited consolidated financial statements of the Borrower and its subsidiaries within 45 days of the end of each fiscal quarter, certified by the Borrower's CFO;<br>• if the Scheduled Maturity Date is extended, annual audited consolidated financial statements of the Borrower and its subsidiaries within 90 days of the end of each fiscal year, accompanied by an unqualified opinion of a nationally-recognized independent accounting firm; and<br>• promptly after they become available, copies of all material periodic and other reports, proxy statements and other materials filed by the Borrower or any of such subsidiaries with the SEC or any national securities exchange or distributed to shareholders. | Same. |
| **Budget and Variances** | • Budget variance tested weekly on a rolling-four week and a cumulative basis since the Petition Date.<br>• Actual amount of operating disbursements (excluding professional fees and expenses, adequate protection payments, debt service costs and settlement and other costs associated with hedging and derivative instruments) during a budget period may not exceed the projected expenditures (on a cumulative basis) in the budget for such budget period ***by more than 17.5%***; provided, that any negative disbursement variance to the budget from the immediately preceding budget period may be applied to the current budget period's disbursements for the purpose of determining compliance for such budget period, as applicable. | Same. |
| **Financial Covenants** | None. | Same. |
| **Credit Bid Rights** | The DIP lenders and the prepetition lenders shall have the right to credit bid the full amount of their claims in connection with any sale of the Debtors' assets (in whole or in part). | The DIP lenders shall have the right to credit bid the full amount of their claims in connection with any sale of the Debtors' assets (in whole or in part). |

## **Exhibit B**

**Noteholder Junior DIP Proposal**

**R&G & Moelis DRAFT 9/25/20**
**Confidential**

## GARRETT MOTION INC.

### *AD HOC* SENIOR NOTEHOLDER GROUP DIP FACILITY PROPOSAL

**(Side-By-Side Comparison to the Citigroup DIP Facility)**

**SEPTEMBER 25, 2020**

This term sheet (the "**Term Sheet**") summarizes: (i) certain terms and conditions (and does not purport to summarize all of the terms and conditions) of a potential superpriority non-priming secured debtor-in-possession term loan credit facility (the "**DIP Facility**") to be provided to Garrett Motion, Inc. (the "**Borrower**"), in its capacity as a debtor and debtor in possession (together with its affiliated debtors, the "**Debtors**"), in connection with its case (along with the cases of the other Debtors, the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") commenced on September 20, 2020 (the "**Petition Date**"), *in comparison to* (ii) certain terms and conditions under that certain proposed senior secured debtor-in-possession term loan facility arranged by Citigroup Inc. in connection with the Chapter 11 Cases (the "**Citigroup DIP Facility**").

The DIP Facility will be subject to the approval of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), in accordance with the DIP Orders and the DIP Documents.  Without limiting the generality of the foregoing, this Term Sheet and the undertakings contemplated herein are subject in all respects to the negotiation, execution, and delivery of definitive documentation in form and substance consistent with this Term Sheet and otherwise acceptable to the Borrower and the DIP Lenders (the "**DIP Documents**"), as well as the completion of due diligence satisfactory to the DIP Lenders.

This Term Sheet is presented for discussion purposes only, does not constitute a commitment to provide, accept, or consent to any financing or otherwise create any implied or express legally binding or enforceable obligation on any party (or any affiliates of a party), at law or in equity, to negotiate or enter into definitive documentation related to the DIP Facility or otherwise. This Term Sheet is provided as part of a settlement proposal in furtherance of settlement discussions and is entitled to protection from any use or disclosure to any party or person pursuant to Federal Rule of Evidence 408 and any applicable statutes, doctrines, or rules protecting the use or disclosure of confidential information and information exchanged in the context of settlement discussions.

| | **Citibank DIP Facility** | **DIP Facility** |
|---|---|---|
| **Borrower** | Garrett Motion Inc. | Same. |
| **Guarantors** | Each entity which guarantees (or is required to guarantee) the obligations of the Borrower and the other Debtors arising under the prepetition Credit Agreement. | Same. |
| **Agent** | Citibank, N.A. | [•]. |

| | Citibank DIP Facility | DIP Facility |
|---|---|---|
| **Lead Arranger** | Citigroup Global Markets Inc. or any of its affiliates. | N/A. |
| **DIP Lenders** | A syndicate of prepetition lenders under the prepetition Credit Agreement (including the *ad hoc* group of prepetition lenders and each other prepetition lender that has become a party to the RSA, who will be offered the opportunity to participate in the DIP Facility on a *pro rata* basis). | Certain members of the *ad hoc* group of holders of the €350 million in principal amount of senior notes (the "**Senior Notes**") issued by Garrett LX I S.à r.l. and Garrett Borrowing LLC. |
| **Facility** | A non-amortizing senior secured superpriority debtor-in-possession term loan facility with a maximum principal availability of $250 million to be funded in two borrowings as follows: (i) $100 million on an interim basis, and (ii) $150 million on a final basis. | Same, provided that, with respect to the prepetition collateral, the DIP Facility will be secured on a basis junior to the liens securing the loans outstanding under the prepetition Credit Agreement and on a junior basis to the liens securing the prepetition Senior Notes. |
| **Scheduled Maturity Date** | March 31, 2021, subject to extension by 2 months upon request of the Borrower in exchange for the payment of an extension fee equal to 1.00% of the principal amount of the DIP loans outstanding and provided no default or Event of Default has occurred and is continuing. | May 31, 2021, subject to extension by 2 months upon request of the Borrower in exchange for the payment of an extension fee equal to 1.00% of the principal amount of the DIP loans outstanding and provided no default or Event of Default has occurred and is continuing. |
| **Purpose** | Proceeds used to:<br>• pay certain costs, premiums, fees and expenses related to the Chapter 11 Cases;<br>• with respect to the interim borrowing, make payments pursuant to any interim or final "first day" orders;<br>• make adequate protection payments; and<br>• fund working capital needs of the Debtors and their subsidiaries to the extent permitted under a 13-week budget satisfactory to the required DIP lenders. | Same. |
| **All-in Cost** | Same all-in cost to the Debtors. | Same all-in cost to the Debtors. |

|  | **Citibank DIP Facility** | **DIP Facility** |
|---|---|---|
| **Interest Rate** | Loans to bear interest at a rate, at Borrower's option, equal to<br>• prior to March 31, 2021, the Base Rate *plus* 3.50% per annum <u>or</u> LIBOR (subject to a 1.00% floor) *plus* 4.50% per annum; and<br>• following March 31, 2021, if the Scheduled Maturity Date has been extended at such time, the Base Rate *plus* 4.50% per annum <u>or</u> LIBOR (subject to a 1.00% floor) *plus* 5.50% per annum, in each case, compounded monthly and payable every 30 days in arrears.<br>"**Base Rate**" means the highest of (i) the Agent's prime rate, (ii) the federal funds effective rate from time to time (but not less than zero) *plus* 0.50% and (iii) the LIBOR for an interest period of one month (giving effect to the LIBOR floor) *plus* 1.00%. | Loans to bear interest at a rate, at Borrower's option, equal to<br>• prior to March 31, 2021, the Base Rate *plus* 3.50% per annum <u>or</u> LIBOR (subject to a 1.00% floor) *plus* 4.50% per annum; and<br>• following March 31, 2021,  the Base Rate *plus* 4.50% per annum <u>or</u> LIBOR (subject to a 1.00% floor) *plus* 5.50% per annum, in each case, compounded monthly and payable every 30 days in arrears.<br>"**Base Rate**" means the highest of (i) the Agent's prime rate, (ii) the federal funds effective rate from time to time (but not less than zero) *plus* 0.50% and (iii) the LIBOR for an interest period of one month (giving effect to the LIBOR floor) *plus* 1.00%. |
| **Default Rate** | Applicable interest rate *plus* 2.00% *per annum* | Same. |
| **Fees** | • <u>OID</u>: Loans made after deduction of original issue discount in the amount of 2.00% of the commitments at closing.<br>• <u>Agent Fees</u>: Arrangement fee equal to 1.00% of the aggregate principal amount of the DIP facility, plus agency fee in the amount of $100,000.<br>• <u>Financing Fee</u>: 1.00% of each lender's commitments at closing, payable in cash. | • <u>OID</u>: Loans made after deduction of original issue discount in the amount of 2.00% of the commitments at closing.<br>• <u>Agent Fees</u>: Agency fee in the amount of $100,000.<br>• <u>Financing Fee</u>: 1.00% of each lender's commitments at closing, payable in cash.<br>• <u>Structuring Fee</u>: 1.00% of each lender's commitments at closing, payable in cash. |
| **Consent Fee** | • Prepetition lenders who sign the RSA and consent to the incurrence of the DIP loans on a priming basis will receive a consent fee equal to 0.25% of the principal amount of such lender's loans under the prepetition Credit Agreement | None. |

| | Citibank DIP Facility | DIP Facility |
|---|---|---|
| **Adequate Protection** | Adequate protection to the prepetition secured lenders as follows:<br>• the payment of the reasonable and documented out-of-pocket fees and expenses of (i) Gibson Dunn, as legal counsel to the *ad hoc* group of prepetition lenders and one local counsel in each applicable material jurisdiction, (ii) PJT Partners, as financial advisor to the *ad hoc* group, and (iii) the prepetition agent;<br>• replacement liens on prepetition collateral;<br>• allowed superpriority administrative expenses; and<br>• postpetition monthly interest payments, payable on the last business day of each month, in an amount equal to the non-default interest rate payable under the prepetition Credit Agreement (including, payment of all prepetition accrued and unpaid interest under the prepetition Credit Agreement), with default interest of an additional 2% accruing in kind.<br>Adequate protection to noteholders:<br>• reimbursement of all reasonable and documented postpetition professional fees of (i) Ropes & Gray, as counsel to the *ad hoc* group of Senior Noteholders and (ii) a financial advisor selected by the *ad hoc* group of Senior Noteholders;<br>• superpriority administrative expenses as provided for in section 507(b) of the Bankruptcy Code that are junior to the claims of the DIP lenders and the prepetition secured lenders; and<br>• continuing valid, binding, enforceable and perfected postpetition security interests in and liens on all of the collateral under the Senior Notes indenture, junior only to the existing valid, perfected, unavoidable and senior liens in such collateral held by any other parties, the carve-out, the DIP liens, the liens under the prepetition Credit Agreement, and the prepetition secured lenders' adequate protection liens. | Same or substantially similar. |

| | Citibank DIP Facility | DIP Facility |
|---|---|---|
| **Milestones** | <ul><li>Entry of Bid Procedures Order: 35 days following the Petition Date **(October 25, 2020)**.</li><li>File Acceptable Disclosure Statement and Plan: 35 days following the Petition Date **(October 25, 2020)**.</li><li>Entry of Disclosure Statement Order: 90 days following the Petition Date **(December 19, 2020)**.</li><li>Entry of Sale and Confirmation Order: 150 days following the Petition Date **(February 17, 2021)**.</li><li>Plan Effective Date: 210 days following the Petition Date **(April 18, 2021)**.</li></ul> | <ul><li>Entry of Bid Procedures Order: 65 days following the Petition Date **(November 24, 2020)**.</li><li>File Acceptable Disclosure Statement and Plan: 65 days following the Petition Date **(November 24, 2020)**.</li><li>Final Deadline to Submit a Qualified Bid: 90 days from the Petition Date **(December 19, 2020)**</li><li>Entry of Disclosure Statement Order: 120 days following the Petition Date **(January 18, 2021)**.</li><li>Entry of Sale and Confirmation Order: 180 days following the Petition Date **(March 19, 2021)**.</li><li>Plan Effective Date: 240 days following the Petition Date **(May 18, 2021)**.</li></ul> |
| **Optional Prepayments** | The Borrower may prepay in full or in part, subject to a prepayment premium of 1.00% of the aggregate principal amount of the DIP loans prepaid, refinanced, substituted, or replaced, and subject to breakage costs, if applicable, of the loans; provided, that each such partial prepayment shall be in an aggregate amount that is an integral multiple of $500,000 and not less than $1 million. | Same. |
| **Mandatory Prepayments** | Mandatory prepayments of the DIP loans include an amount equal to:<ul><li>100% of insurance and condemnation proceeds;</li><li>100% of net cash proceeds from the issuance or incurrence of postpetition indebtedness not permitted by the DIP credit agreement; and</li><li>100% of the net cash proceeds of any asset sales (other than dispositions in the ordinary course of business, dispositions specifically approved by the required DIP lenders in advance, dispositions provided for in the budget, and other customary exceptions).</li><li></li></ul> | Same. |
| **Security** | Liens on substantially all of the Borrower's and the Guarantors' tangible and intangible assets, including, without limitation, any collateral granted in respect of the prepetition Credit Agreement and including, upon entry of the final DIP order, any proceeds of avoidance actions available to the Debtors' bankruptcy estates. | Same. |

5

| | Citibank DIP Facility | DIP Facility |
|---|---|---|
| **Priority** | All obligations under the DIP facility shall:<br>• pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to joint and several superpriority administrative expense status in the Chapter 11 Cases;<br>• pursuant to section 364(c)(2) of the Bankruptcy Code, be secured by a first-priority lien on all DIP collateral that is not subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date, including upon entry of the final DIP order, any proceeds of avoidance actions;<br>• pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by a junior lien on all collateral that is subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date in favor of third parties that were in existence immediately prior to the Petition Date, or to valid and non-avoidable liens in favor of third parties that were in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, subject as to priority to such liens in favor of such third parties; and<br>• pursuant to section 364(d) of the Bankruptcy Code, be secured by a priming lien on the prepetition collateral for the loans under the prepetition Credit Agreement. | All obligations under the DIP facility shall:<br>• under section 364(c)(1) of the Bankruptcy Code, be entitled to joint and several superpriority administrative expense status against each Debtor, which claims in respect of the DIP facility shall be superior to all other claims;<br>• under section 364(c)(2) of the Bankruptcy Code, be secured by a first-priority lien on all DIP collateral that is not subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date, including upon entry of the final DIP order, any proceeds of avoidance actions; and<br>• pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by a junior lien on all collateral that is subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date in favor of third parties that were in existence immediately prior to the Petition Date, or to valid and non-avoidable liens in favor of third parties that were in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, subject as to priority to such liens in favor of such third parties. |
| **Carve-Out** | Professional fees: $5 million after the delivery of a carve-out Notice.<br>Chapter 7 Trustee Fees: $50,000. | Same. |
| **Committee Investigation** | Budget: $50,000.<br>Investigation period: 60 calendar days following the selection of counsel to the UCC. | Same. |
| **Conditions Precedent to Funding** | Certain customary conditions, plus:<br>• Prepetition lenders holding not less than 50.1% of the outstanding principal amount of loans and/or revolver exposure under the prepetition Credit Agreement shall have consented to the DIP facility, including the priming liens. | Same but no requirement to consent to priming. |

| | Citibank DIP Facility | DIP Facility |
|---|---|---|
| **Financial Reporting Requirements** | The Borrower shall provide to the DIP lenders:<br>• monthly unaudited summary consolidated financial statements of the Borrower and its subsidiaries;<br>• quarterly unaudited consolidated financial statements of the Borrower and its subsidiaries within 45 days of the end of each fiscal quarter, certified by the Borrower's CFO;<br>• if the Scheduled Maturity Date is extended, annual audited consolidated financial statements of the Borrower and its subsidiaries within 90 days of the end of each fiscal year, accompanied by an unqualified opinion of a nationally-recognized independent accounting firm; and<br>• promptly after they become available, copies of all material periodic and other reports, proxy statements and other materials filed by the Borrower or any of such subsidiaries with the SEC or any national securities exchange or distributed to shareholders. | Same. |
| **Budget and Variances** | • Budget variance tested weekly on a rolling-four week and a cumulative basis since the Petition Date.<br>• Actual amount of operating disbursements (excluding professional fees and expenses, adequate protection payments, debt service costs and settlement and other costs associated with hedging and derivative instruments) during a budget period may not exceed the projected expenditures (on a cumulative basis) in the budget for such budget period ***by more than 17.5%***; provided, that any negative disbursement variance to the budget from the immediately preceding budget period may be applied to the current budget period's disbursements for the purpose of determining compliance for such budget period, as applicable. | Same. |
| **Financial Covenants** | None. | Same. |
| **Credit Bid Rights** | The DIP lenders and the prepetition lenders shall have the right to credit bid the full amount of their claims in connection with any sale of the Debtors' assets (in whole or in part). | The DIP lenders shall have the right to credit bid the full amount of their claims in connection with any sale of the Debtors' assets (in whole or in part). |

**<u>Exhibit C</u>**

**DIP Proposals Comparison**

PRIVILEGED & CONFIDENTIAL
PREPARED AT DIRECTION OF COUNSEL

# DIP Financing Update

September 27, 2020

**P / W / P**
/ PERELLA WEINBERG
  PARTNERS

SULLIVAN & CROMWELL LLP

**Alix**Partners

Morgan Stanley

PRIVILEGED & CONFIDENTIAL
PREPARED AT DIRECTION OF COUNSEL

# Key Observations

*($ in millions)*

- On September 21, Centerbridge and Oaktree ("C&O") provided a competing DIP financing proposal to Garrett
- The terms of their competing proposal are similar to the DIP financing secured by the Company from the prepetition secured lenders except for the following key differences:
  – It includes no milestones
  – It doesn't require priming as it is secured by a junior lien on all collateral of prepetition secured lenders, and
  – It provides for a 6-month extension to the DIP maturity
- On September 23, the Citibank DIP lenders revised their proposal by eliminating the milestones and amending the duration and cost of the extension
- On September 25, the Noteholder AHG submitted their own junior DIP proposal which included extended milestones, a longer maturity date, and one 2 month extension period

| | Citibank | C&O (9/21) | Citibank (9/23) | Noteholders (9/25) |
|---|---|---|---|---|
| Facility Amount ($) | $250 | $250 | $250 | $250 |
| Seniority | Priming | Junior | Priming | Junior |
| Milestones | Per DIP CA | None | None | Adjusted |
| Tenor | 6 Months | 6 Months | 6 Months | 8 Months |
| Extension Option | 2 Months | Two 3 Month Extensions | Up to 3 Months | 2 Months |
| Interest Cost (6 Months @ L + 450)[1] | $6.88 | 6.88 | 6.88 | 6.88 |
| OID (2.0%) | 5.00 | 5.00 | 5.00 | 5.00 |
| Arranger and Agent Fees[2] | 1.85 | 0.10 | 1.85 | 0.10 |
| Financing Fee / Structuring Fee | 2.50 | 5.00 | 2.50 | 5.00 |
| Non-Priming Fee | - | 3.00 | - | - |
| **Total 6 Month Cost** | **$16.23** | **$19.98** | **$16.23** | **$16.98** |
| Interest Cost (2 Months @ L + 550)[3] | $2.71 | $2.71 [4] | $2.71 | $2.71 |
| Extension Fee (2 Month Extension) | 2.50 | 3.75 [4] | 2.50 [5] | - [6] |
| **Extension Total** | **$5.21** | **$6.46** | **$5.21** | **$2.71** |
| **Total With First Extension** | **$21.43** | **$26.43** | **$21.43** | **$19.68** |
| *Memo:* | | | | |
| *Additional Savings for Cash Plan Sale* [7] | *(19.29)* | *-* | *(19.29)* | *-* |

Notes:
(1) Assumes LIBOR floor of 1.0% and 6 months outstanding; noteholder proposal illustratively shown as 6 months, though maturity provides for 2 additional months at a 1.0% higher rate
(2) 30% of Citibank 1.0% Arranger Fee paid prepetition, so is excluded for purposes of comparison
(3) Assumes LIBOR floor of 1.0% and 2 months outstanding for comparison purposes
(4) Assumes one 3 month extension; C&O proposal includes option for a second 3 month extension for additional fees and increased interest
(5) Assumes two 1 month extensions and a 50bps fee for each, with ability to extend up to 3 months; if extended only one month, fee differential will be more favorable than shown; if extended for 3 months, then fee differential will be zero
(6) Extension fee payable after 8 months; for comparative purposes, not shown to be extended
(7) Savings from non-payment of default interest applies to KPS purchase or any alternative purchaser or overbid in a transaction with a substantially similar RSA; assumes 8 months of default interest of 2.0% paid on $1,447M of prepetition secured debt



2

PRIVILEGED & CONFIDENTIAL
PREPARED AT DIRECTION OF COUNSEL

# Summary Proposed DIP Financing Terms

| | CITIBANK | CENTERBRIDGE / OAKTREE (9/21) | CITIBANK (9/23) | NOTEHOLDER AHG (9/25) |
|---|---|---|---|---|
| **Borrower** | ▪ Garrett Motion Inc. | ▪ Same | ▪ Same | ▪ Same |
| **Guarantors** | ▪ Each entity which guarantees (or is required to guarantee) the obligations of the Borrower and the other Debtors arising under the prepetition Credit Agreement. | ▪ Same | ▪ Same | ▪ Same |
| **Agent** | ▪ Citibank, N.A. | ▪ [TBD] | ▪ Same as first proposal | ▪ [TBD] |
| **DIP Lenders** | ▪ Prepetition lenders under the credit agreement | ▪ Centerbridge and Oaktree | ▪ Same as first proposal | ▪ Certain members of the Noteholder AHG |
| **Facility** | ▪ Senior secured superpriority DIP term loan facility<br> – Max. availability: $250M; Interim: $100M; Final: $150M | ▪ Same, but liens junior to prepetition secured debt<br> – Same | ▪ Same as first proposal<br> – Same as first proposal | ▪ Same, but liens junior to prepetition secured debt<br> – Same |
| **Maturity** | ▪ March 31, 2021<br> – 2-month extension for 1.0% fee | ▪ Same<br> – 3-month extension for 1.5% fee<br> – Additional 3-month extension for 2.5% fee | ▪ Same<br> – 50bps extension fee per month up to 3 months | ▪ May 31, 2021<br> – 2-month extension for 1.0% fee |
| **Interest Rate** | ▪ L + 450; 1.0% LIBOR Floor<br> – Increases to L + 550 if DIP is extended | ▪ Same<br> – Increases to L + 550 for first extension period<br> – Increases to L + 650 for second extension period | ▪ Same as first proposal<br> – Same as first proposal | ▪ L + 450; 1.0% LIBOR Floor up to 3/31/21<br> – Increases to L + 550 after 3/31 |



PRIVILEGED & CONFIDENTIAL
PREPARED AT DIRECTION OF COUNSEL

# Summary Proposed DIP Financing Terms (Cont'd)

| | CITIBANK | CENTERBRIDGE / OAKTREE (9/21) | CITIBANK (9/23) | NOTEHOLDER AHG (9/25) |
|---|---|---|---|---|
| **Fees** | ▪ OID: 2.0%<br>▪ Financing Fees: 1.0%<br>▪ Arrangement Fees: 1.0%<br>▪ Agent Fees: $100,000<br>▪ Non-Priming Fee: None | ▪ OID: Same<br>▪ Financing Fees: 2.0%<br>▪ Arrangement Fees: NA<br>▪ Agent Fees: Same<br>▪ Non-Priming Fee: $3M | ▪ OID: Same<br>▪ Financing Fees: 1.0%<br>▪ Arrangement Fees: 1.0%<br>▪ Agent Fees: Same<br>▪ Non-Priming Fee: None | ▪ OID: Same<br>▪ Financing Fees: Same<br>▪ Arrangement Fees: NA<br>▪ Agent Fees: Same<br>▪ Non-Priming Fee: None<br>▪ Structuring Fee: 1.0% |
| **Milestones** | ▪ Entry of Bid Procedures Order: 35 days following the Petition Date (October 25, 2020).<br>▪ File Acceptable Disclosure Statement and Plan: 35 days following the Petition Date (October 25, 2020).<br><br>▪ Entry of Disclosure Statement Order: 90 days following the Petition Date (December 19, 2020).<br>▪ Entry of Sale and Confirmation Order: 150 days following the Petition Date (February 17, 2021).<br>▪ Plan Effective Date: 210 days following the Petition Date (April 18, 2021). | ▪ No milestones | ▪ No milestones | ▪ Entry of Bid Procedures Order: 65 days following the Petition Date (October 25, 2020).<br>▪ File Acceptable Disclosure Statement and Plan: 65 days following the Petition Date (October 25, 2020).<br>▪ Final Deadline to Submit a Qualified Bid: 90 days from the Petition Date (December 19, 2020)<br>▪ Entry of Disclosure Statement Order: 120 days following the Petition Date (January 18, 2020).<br>▪ Entry of Sale and Confirmation Order: 180 days following the Petition Date (March 19, 2021).<br>▪ Plan Effective Date: 240 days following the Petition Date (May 18, 2021). |
| **Security** | ▪ Liens on substantially all of the Borrower's and the Guarantors' tangible and intangible assets | ▪ Same (secured on a junior basis) | ▪ Same as first proposal | ▪ Same (secured on a junior basis) |
| **Priority** | ▪ Primes prepetition credit agreement collateral | ▪ Primes prepetition senior notes collateral | ▪ Same as first proposal | ▪ Junior |



# Legal Disclaimer

This Presentation has been provided to you by Perella Weinberg Partners and its affiliates (collectively **"Perella Weinberg Partners**" or the "**Firm**") and may not be used or relied upon for any purpose without the written consent of Perella Weinberg Partners.  The information contained herein (the "Information") is confidential.  By accepting this Information, you agree that you and your directors, partners, officers, employees, attorney(s), agents and representatives agree to use it for informational purposes only and will not divulge any such Information to any other party.   Reproduction of this Information, in whole or in part, is prohibited. These contents are proprietary and a product of Perella Weinberg Partners**.  The Information contained herein is not an offer to buy or sell or a solicitation of an offer to buy or sell any corporate advisory services or security or to participate in any corporate advisory services or trading strategy.**  Any decision regarding corporate advisory services or to invest in the investments described herein should be made after, as applicable, reviewing such definitive offering memorandum, conducting such investigations as you deem necessary and consulting the investor's own investment, legal, accounting and tax advisors in order to make an independent determination of the suitability and consequences of an investment or service.

The information used in preparing these materials may have been obtained from or through you or your representatives or from public sources.  Perella Weinberg Partners assumes no responsibility for independent verification of such information and has relied on such information being complete and accurate in all material respects.  To the extent such information includes estimates and/or forecasts of future financial performance (including estimates of potential cost savings and synergies) prepared by or reviewed or discussed with the managements of your company and/or other potential transaction participants or obtained from public sources, we have assumed that such estimates and forecasts have been reasonably prepared on bases reflecting the best currently available estimates and judgments of such managements (or, with respect to estimates and forecasts obtained from public sources, represent reasonable estimates).  The Firm has no obligation (express or implied) to update any or all of the Information or to advise you of any changes; nor do we make any express or implied warranties or representations as to the completeness or accuracy or accept responsibility for errors.

Nothing contained herein should be construed as tax, accounting or legal advice.  You (and each of your employees, representatives or other agents) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transactions contemplated by these materials and all materials of any kind (including opinions or other tax analyses) that are provided to you relating to such tax treatment and structure.  For this purpose, the tax treatment of a transaction is the purported or claimed U.S. federal income tax treatment of the transaction and the tax structure of a transaction is any fact that may be relevant to understanding the purported or claimed U.S. federal income tax treatment of the transaction.



5