Hearing Date:  October 21, 2020 at 11:00 a.m. ET
Objection Deadline:  October 14, 2020 at 4:00 p.m. ET

Andrew G. Dietderich
Brian D. Glueckstein
Benjamin S. Beller
Noam R. Weiss
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ————————————————————————x | |
| In re | Chapter 11 |
| | |
| GARRETT MOTION INC., *et al.*,[1] | Case No. 20-12212 (MEW) |
| | |
| Debtors. | Jointly Administered |
| | |
| ————————————————————————x | |

**DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO
11 U.S.C. §§ 105(a) AND 363(b) AUTHORIZING THE DEBTORS TO RETAIN
FTI CONSULTING, INC. AS ADVISOR TO THE INDEPENDENT DIRECTOR
AND SOLE MEMBER OF THE TRANSACTION COMMITTEE OF
GARRETT ASASCO INC., EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")

respectfully state the following in support of this this application (the "**Application**") for an order

authorizing the retention and employment of FTI Consulting, Inc. ("**FTI**") as financial advisor to

---

[1]     The last four digits of Garrett Motion Inc.'s tax identification number are 3189. Due to the large number of debtor entities in these Chapter 11 Cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/garrettmotion. The Debtors' corporate headquarters is located at La Pièce 16, Rolle, Switzerland.

Neal Goldman (the "**ASASCO Independent Director**"), the independent director and sole member of the ASASCO Transaction Committee (as defined below), pursuant to the terms and conditions of that certain agreement (the "**Engagement Letter**")[2] between FTI and the Debtors, dated August 24, 2020 and attached hereto as **Exhibit C**:

## Background

1.      Garrett Motion Inc. is a Delaware corporation established in 2018, with its headquarters located in Rolle, Switzerland.  The Debtors design, manufacture and sell highly engineered turbocharger, electric-boosting and connected vehicle technologies.

2.      On September 20, 2020 (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under the Bankruptcy Code.  Each Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors' committee, trustee or examiner has been appointed in the Debtors' cases (the "**Chapter 11 Cases**").  Joint administration of these Chapter 11 Cases was authorized by the Court by entry of an order on September 21, 2020 [Docket No. 27].

3.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Sean Deason in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "**Deason First Day Declaration**").[3]

---

[2]    To the extent that there is any conflict between the actual terms of the Engagement Letter or the Indemnification Provisions (as such may be modified by the Order) and any description or summary of the same herein, the actual terms of the Engagement Letter or the Indemnification Provisions (as such may be modified by the Order) shall control, as applicable.

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Deason First Day Declaration.

SC1:5305625.6

## Facts Specific to the Relief Requested

### I.     The Transaction Committees.

4.      As detailed in the Deason First Day Declaration, the ASASCO Indemnity Obligations are liabilities of ASASCO and guaranteed by the ASASCO Indemnity Guarantors, all of whom are subsidiaries of ASASCO (the "**ASASCO Group**").  GMI, GMHI, GTI and the subsidiaries of GTI (collectively, the "**GMI Group**") have not guaranteed the ASASCO Indemnity Obligations.  The MTT Payment Obligation is recourse only to ASASCO, and is not to any other Debtor.

5.      Although the Debtors believe that Honeywell has no allowable claim against ASASCO (or the ASASCO Indemnity Guarantors) and that ASASCO is a net creditor of Honeywell, the Debtors recognize that claims between ASASCO and Honeywell related to the spin-off are fact-intensive and may take time to resolve.  Prior to resolution of the claims, there is at least a possibility that Honeywell could have allowable claims against ASASCO and the ASASCO Indemnity Guarantors that may exceed their capacity to pay.

6.      Recognizing that ASASCO—if it is shown to be unable to pay all allowed claims—may have divergent interests from the GMI Group with respect to certain intercompany matters such as the allocation of the proceeds from the Stalking Horse Purchase, the Debtors determined prior to the commencement of these Chapter 11 Cases to engage the ASASCO Independent Director and the independent director at GMHI (together, the "**Independent Directors**") to negotiate an arm's-length allocation of distributable value among the ASASCO Group and the GMI Group premised on the consummation of the Stalking Horse Purchase.  In August, both ASASCO and GMHI established separate transaction committees (respectively, the "**ASASCO Transaction Committee**" and the "**GMHI Transaction Committee**", and together,

3

the "**Transaction Committees**").  The Transaction Committees have been tasked with, among other things, negotiating a settlement as to the aggregate amount of distributable value from the sale that should be allocable to ASASCO and the ASASCO Group, on the one hand, and GMI and the GMI Group, on the other hand, for purposes of a chapter 11 plan (the "**Intercompany Settlement**").  The Intercompany Settlement, if achieved, is expected to avoid costly and time-consuming litigation between the ASASCO Group and the GMI Group.

7.      The Independent Directors are still in the process of negotiating the Intercompany Settlement and the Debtors are hopeful that there will be an agreed settlement in the next few weeks, although the outcome of those negotiations is not yet knowable.  Solely for purposes of allocating the purchase price paid by the Stalking Horse Purchaser in the Stalking Horse Purchase Agreement for tax and general corporate purposes, the Debtors and the Stalking Horse Purchaser have agreed to allocate the purchase price based on the fair market value of the relevant companies as set forth in the Stalking Horse Purchase Agreement.   However, this fair market value allocation is not binding on either Independent Director for purposes of the Intercompany Settlement, which is expected to take into account a variety of claims and disputes and such matters as the Independent Directors consider applicable.  The ultimate amount allocated among the Debtors for purposes of the Intercompany Settlement and chapter 11 plan distributions may vary from the fair market valuation in the Stalking Horse Purchase Agreement.  If and when the Independent Directors have reached a settlement and resolution, the Debtors will file a motion with the Bankruptcy Court seeking approval of the settlement.

## II.      FTI's Qualifications.

8.      In consideration of the size and complexity of their business, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring managers for the ASASCO Independent Director and the ASASCO Transaction

Committee will substantially enhance their attempts to successfully reorganize and maximize the value of their estates. The FTI professionals providing services under the Engagement Letter (the "**FTI Professionals**") are well qualified to act on the ASASCO Independent Director's behalf given their extensive knowledge and expertise with respect to chapter 11 cases.

9.      The Debtors are familiar with the professional standing and reputation of FTI. The Debtors understand that FTI has a wealth of experience in providing financial services in restructurings and reorganizations and enjoys an excellent reputation for the services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

10.      FTI employs more than 5,800 employees located worldwide. FTI and its professionals work closely with clients on a daily basis to anticipate, illuminate, and overcome complex business challenges in areas such as investigations, litigation, mergers and acquisitions, regulatory issues, reputation management and restructuring. FTI's vast network of professionals, which includes, but is not limited to, forensic accountants, certified public accountants, former chief executives, and certified turnaround professionals, enables FTI to guide clients through a wide variety of complex business challenges.

11.      Specifically, FTI has extensive experience in providing restructuring services in and out of chapter 11 proceedings and has an excellent reputation for the services it has rendered on behalf of debtors, creditors and other parties-in-interests throughout the United States. Among many other examples, FTI has provided restructuring and turnaround advisory services to clients such as: *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. Sept. 15, 2019); *In re Sizmek Inc.*, Case No. 19-10971 (SMB) (Bankr. S.D.N.Y. Mar 28, 2019); *In re Fusion Connect, Inc.*, Case No. 19-11811 (SMB) (Bankr. S.D.N.Y. June 3, 2019); *In re Synergy*

*Pharmaceuticals Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Dec. 12, 2018); *In re Sears Holdings Corp.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Oct. 15, 2018); *In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. Feb. 21, 2018); *In re Cloud Peak Energy Inc.*, Case No. 19-11047 (KG) (Bankr. D. Del. May 10, 2019); *In re F+W Media, Inc.*, Case No. 19-10479 (KG) Bankr. D. Del. Mar. 10, 2019); *In re Checkout Holding Corp.*, Case No. 18-12794 (KG) (Bankr. D. Del. Dec. 12, 2018); *In re Open Road Films, LLC*, Case No. 18-12012 (LSS) (Bankr. D. Del. Sept. 6, 2018); *In re Zohar III, Corp.*, Case No. 18- 10512 (CSS) (Bankr. D. Del. Mar. 11, 2018); *In re Southeastern Grocers, LLC*, Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 27, 2018); *In re Claire's Stores, Inc.*, Case No. 18-10584 (MFW) (Bankr. D. Del. Mar. 19, 2018); *In re RadioShack Corp.*, Case No. 15-10197 (Bankr. D. Del. Mar. 12, 2015); *In re Armstrong Energy, Inc.*, Case No. 17-47541 (Bankr. E.D. Mo. Nov. 1, 2017); *In re Peabody Energy Corp.*, Case No. 16-42529 (BSS) (Bankr. E.D. Mo. Apr. 13, 2016).

## III.    Scope of Services.

12.    Subject to approval by the Court, the Debtors propose to retain personnel of FTI to perform services for the ASASCO Independent Director in connection with FTI's engagement on the terms and conditions set forth in the Engagement Letter except as otherwise explicitly set forth herein or in any order granting this Application.

13.    FTI has provided and will continue to provide such consulting and advisory services as FTI and the ASASCO Independent Director, the ASASCO Transaction Committee and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of these Chapter 11 Cases, including but not limited to the following (any defined terms shall have the meaning ascribed to them in the Engagement Letter):

- Provide certain services relating to the ASASCO Transaction Committee's evaluation and negotiation of an allocation of distributable consideration between ASASCO and

other Debtors resulting from or in connection with a whole company transaction, howsoever structured or implemented to be recommended to the Board of Directors of ASASCO (the "**Allocation Recommendation**"); and

- Provide any other services as requested by the Debtors or the ASASCO board of directors in connection with the Allocation Recommendation.

## IV.    Terms of Retention.

14.    FTI's decision to accept this engagement to advise and assist the ASASCO Independent Director was conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment.    Additionally, FTI's engagement is also conditioned on being compensated for its services, and being reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices.

15.    In accordance with the terms of the Engagement Letter, attached hereto as **Exhibit C**, FTI will be paid by the Debtors for the services of the FTI Professionals at their customary hourly billing rates.    The current hourly rates for the FTI Professionals, subject to periodic adjustments, based on the position held by such the FTI Professionals, are subject to the following range (all such proposed terms the "**Fee and Expense Structure**"):

| Professional | Hourly Billing Rate |
| --- | --- |
| Senior Managing Directors | $920 to $1,295 |
| Directors/Senior Directors/Managing Directors | $690 to $905 |
| Consultants/Senior Consultants | $370 to $660 |
| Administrative/Paraprofessionals | $150 to $280 |

16.    In addition to compensation for professional services rendered by the FTI Professionals, FTI will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 Cases, including, but not limited to data services, research materials, copying, phone charges, and other overhead expenses.    All fees and expenses due to FTI

will be billed on a monthly basis, or more frequently as agreed to between FTI and the Debtors, as further set forth in the Engagement Letter.

17.     Section 6.1 of the standard terms and conditions to the Engagement Letter provides for the indemnification of FTI by the Company from and against any and all claims and liabilities arising out of the Company's retention of FTI.  Section 6.2 of the standard terms and conditions to the Engagement Letter limits the liability of FTI to the total amount of fees paid under the Engagement Contract.  Prior to the Petition Date, the Debtors provided FTI a retainer in the amount of $200,000.  Except for the indemnification in Section 6.1 and limitations on liability in paragraph 6.2 of the standard terms and conditions attached as Exhibit A to the Engagement Letter or as otherwise set forth herein, no other provision in the attached Engagement Letter governs the postpetition engagement of FTI.

## V.     Fees and Reporting.

18.     If the Court approves the relief requested herein, FTI will be retained to provide the ASASCO Independent Director with the FTI Professionals pursuant to section 363 of the Bankruptcy Code.  Because FTI is not being employed as a professional under section 327 of the Bankruptcy Code, FTI will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  FTI intends to file and submit monthly invoices (the "**Monthly Invoices**") to the ASASCO Independent Director, with copies of the Monthly Invoices (redacted as appropriate) submitted reasonably contemporaneously therewith to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**"); (d) counsel to any official committees appointed in these Chapter 11 Cases; and (e) counsel to the administrative agent under the Debtors' debtor in possession financing facility (collectively, the "**Notice Parties**" and each, a "**Notice Party**"). The Debtors will pay all

reasonable and undisputed amounts invoiced by FTI for fees and expenses pursuant to the

following procedures (the "**Payment Procedures**"):

a. On or after the 20th day of each calendar month following the month for which compensation is sought, FTI will file with the Court and serve on each of the Notice Parties a Monthly Invoice with respect to the fees and expenses incurred during the preceding month.

b. Each Notice Party shall have fifteen (15) days after a Monthly Invoice is served to review it and, if such Notice Party has an objection to the fees or expenses sought in a particular Monthly Invoice (an "**Objection**"), such party shall, by no later than fifteen (15) days following service of the particular Monthly Invoice (the "**Objection Deadline**"), file and serve upon FTI and the Notice Parties a written notice (the "**Notice of Objection to Invoice**"), setting forth with specificity the nature of the Objection and the amount of fees or expenses at issue.

c. If no Notice of Objection to Invoice has been timely filed and served upon FTI and the Notice Parties by the expiration of the Objection Deadline, or if FTI and the objecting Notice Party thereafter consensually resolve any such Objection, the Debtors shall promptly pay, in full, the fees and expenses identified in the Monthly Invoice.

d. If a Notice of Objection to Invoice has been timely filed and served upon FTI and the Notice Parties, the Debtors shall withhold payment of that portion of the Monthly Invoice to which the Objection is directed and promptly pay the remainder of the fees and expenses to FTI.

e. If a Notice of Objection to Invoice is filed and served upon FTI and the Notice Parties, FTI and the objecting party will work in good faith to resolve their dispute without resort to the Court.

f. Any Objections that are not resolved by the parties shall be preserved and presented to the Court at an available hearing date.

19.    Given the numerous issues that the FTI Professionals have already been

required to address in the performance of their services, and will likely be required to address in

the future, and given FTI's commitment to the extensive and variable level of time and effort

necessary to address all such issues as they arise, and the market prices for such services for

engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit

that the fee arrangements in the Engagement Letter are reasonable.

## VI.    Indemnification.

20.    As stated above, a material part of the consideration for which the FTI Professionals have agreed to provide the services described herein and pursuant to the Engagement Letter is the Debtors' provision of indemnification and limitation of liability provisions in the Engagement Letter.  Specifically, the Debtors promise to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively, the "**Indemnified Persons**") from and against any and all claims (including reasonable attorneys' fees and costs of investigation) arising out of or relating to the Debtors' retention of FTI, except to the extent that any such claim shall have been determined by a non-appealable order of a court of competent jurisdiction to have resulted from the gross  negligence or willful misconduct of an Indemnified Person (an "**Adverse Determination**").  The Debtors shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI shall reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.  Additionally, the Debtors agree that no Indemnified Person shall be liable to the Debtors for damages in excess of the total amount of the fees paid to FTI under the Engagement Contract, and no Indemnified Person shall be liable for consequential, indirect, or punitive damages.

21.    The Debtors believe the indemnity provisions are a reasonable term and condition of FTI's engagement and were, along with all terms of the Engagement Letter, negotiated by FTI and the Debtors at arm's-length and in good faith.  FTI and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to FTI and for comparable engagements, both in- and out-of-court.  The Debtors respectfully submit that the indemnification provisions contained in the Engagement Letter, viewed in conjunction with the other terms of FTIs proposed

retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require FTI's services to successfully reorganize.

## VII.    No Duplication of Services.

22.    The Debtors intend for FTI's services to complement, and not duplicate, the services to be rendered by any other professional retained in these cases. FTI understands that the Debtors have retained and may retain additional professionals during the term of the engagement. FTI has worked, and will continue to work, cooperatively as requested by the Debtors with other professionals retained by the Debtors to integrate any respective work conducted by the professionals on behalf of the Debtors.

## VIII.  FTI's Disinterestedness.

23.    To the best of the Debtors' knowledge, information, and belief, other than as set forth in the declaration of Luke Schaeffer (the "**Schaeffer Declaration**"), annexed hereto as **Exhibit B**, FTI: (a) has no connection with the Debtors, their creditors, other parties in interest, or the U.S. Trustee or any person employed by U.S. Trustee; and (b) does not hold any interest adverse to the Debtors' estates.

24.    Although the Debtors submit that the retention of FTI is not governed by section 327 of the Bankruptcy Code, the Debtors attach the Schaeffer Declaration, which discloses, among other things, any relationship that FTI has with the Debtors, their significant creditors, or other significant parties in interest known to FTI. Based upon the Schaeffer Declaration, the Debtors submit that FTI is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

25.    FTI will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, FTI will supplement its disclosure to the Court.

SC1:5305625.6

26.     In the ninety (90) days prior to the Petition Date, the Debtors paid approximately $228,028.00 in fees and $13,681.68 in expenses to FTI for prepetition services rendered and expenses incurred, corresponding to fees and expenses under the Engagement Letter. Further, FTI's current estimate is that it has received unapplied advance payments from the Debtors in excess of prepetition billings in the amount of $151,881.30, inclusive of the $200,000 retainer.  FTI shall apply any remaining amounts of its prepetition retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to FTI.

### Jurisdiction

27.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and rule 2014-1 of the Local Rules.

### Relief Requested

28.     Pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A**, (the "**Order**") authorizing the engagement of FTI, effective as of the Petition Date, in accordance with the fee structure described above and pursuant to the terms and conditions of the Engagement Letter.

### Basis for Relief

29.     The Debtors seek approval of the employment of FTI pursuant to section 363 of the Bankruptcy Code, as of September 20, 2020.  Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other

SC1:5305625.6

than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

30.    Under applicable case law in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See*, *e.g.*, *In re Nine West Holdings, Inc.*, 588 B.R. 678 (Bankr. S.D.N.Y. 2018) (Debtors' retention of consultant and of individual as interim CEO constituted a sound exercise of their business judgment); *see also In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

31.    The retention of FTI is a sound exercise of the Debtors' business judgment. The Debtors believe that the FTI Professionals will provide services that benefit the Debtors' estates and creditors. In light of the foregoing, the Debtors believe that the retention of FTI is appropriate and in the best interests of the Debtors and their estates and creditors. The retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code.  Courts in this district have authorized the retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions.  *In re Barneys*, Case No. 19-36300 (CMG), (Bankr. S.D.N.Y. Sept. 20, 2019);  *In re Hollander Sleep Products, LLC*, Case No. 19-

11608 (MEW) (Bankr. S.D.N.Y. July 3, 2019); *In re Sungard Availability Services Capital, Inc.*,

No. 19-22915 (RDD) (Bankr. S.D.N.Y. June 25, 2019); *In re Aegean Marine Petroleum Network*

*Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Feb. 20, 2019); *In re Nine West Holdings, Inc.*, No.

18-10947 (SCC) (Bankr. S.D.N.Y. June 14, 2018).

32.     In light of the foregoing and the Schaeffer Declaration, the Debtors submit

that the retention of FTI on the terms set forth herein and in the Engagement Letter is necessary,

appropriate, and in the best interests of the Debtors, their estates, and all stakeholders, and should

be granted in these Chapter 11 Cases.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

33.     Given the nature of the relief requested herein, the Debtors respectfully

request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day

stay under Bankruptcy Rule 6004(h).   Pursuant to Bankruptcy Rule 6004(h), "[a]n order

authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration

of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described

above, the relief requested is essential to prevent potentially irreparable damage to the Debtors'

operations, value and ability to reorganize.

**Notice**

34.     No creditors' committee has been appointed in these Chapter 11 Cases.

Notice of this Application has been provided to: (a) the Office of the U.S. Trustee; (b) counsel to

Citibank, N.A., as administrative agent under the DIP credit facility, Weil, Gotshal & Manges

LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Ray C. Schrock, P.C.

(ray.schrock@weil.com) and Candace M. Arthur, Esq. (candace.arthur@weil.com); (c) counsel to

JPMorgan Chase Bank, N.A., as administrative agent under the Debtors' prepetition credit facility,

Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attn: Kristopher M.

Hansen (khansen@stroock.com), Jonathan D. Canfield (jcanfield@stroock.com), Joanne Lau (jlau@stroock.com) and Alexander A. Fraser (afraser@stroock.com); (d) counsel to the ad hoc group of lenders under the Debtors' prepetition credit facility, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, Attn: Scott J. Greenberg (sgreenberg@gibsondunn.com), Steven A. Domanowski (sdomanowski@gibsondunn.com) and Matthew G. Bouslog (mbouslog@gibsondunn.com); (e) counsel to the ad hoc group of bondholders, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Matthew M. Roose (matthew.roose@ropesgray.com) and Mark I. Bane (mark.bane@ropesgray.com); (f) counsel to KPS Capital Partners, LP, as stalking horse bidder, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick (brian.resnick@davispolk.com) and Joshua Y. Sturm (joshua.sturm@davispolk.com); (g) the parties identified on the Debtors' consolidated list of 30 largest unsecured creditors; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## No Prior Request

35.    No prior request for the relief sought in this Application has been made to this or any other court.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as **Exhibit A** and (b) grant such other and further relief as is just and proper.

Dated: September 30, 2020
New York, New York

/s/ Andrew. G. Dietderich

Andrew G. Dietderich
Brian D. Glueckstein
Benjamin S. Beller
Noam R. Weiss
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
E-mail:        dietdericha@sullcrom.com
               gluecksteinb@sullcrom.com
               bellerb@sullcrom.com
               weissn@sullcrom.com

*Proposed Counsel to the Debtors*

SC1:5305625.6

## Exhibit A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————x
:
In re               :
:
GARRETT MOTION INC., *et al.*,[1]   :
:
       Debtors.   :
:
:
————————————————————————x

  Chapter 11

  Case No. 20-12212 (MEW)

  Jointly Administered

**ORDER AUTHORIZING THE DEBTORS**
**TO RETAIN FTI CONSULTING, INC. AS ADVISOR TO THE INDEPENDENT**
**DIRECTOR  AND SOLE MEMBER OF THE TRANSACTION COMMITTEE OF**
**GARRETT ASASCO INC.,  EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "**Application**")[2] of the above-captioned debtors and debtors in

possession (collectively, the "**Debtors**"), pursuant to sections 105(a) and 363(b) of title 11 of the

United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), for authorization to

employ FTI as necessary to assist with the ASASCO Transaction Committee's Allocation

Recommendation, pursuant to Engagement Letter, all as more fully set forth in the Application;

and upon the Schaeffer Declaration in support of the Application; and this Court having

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order of Reference from the United States District Court for the Southern District of New York*,

and venue of these Chapter 11 Cases and the Motion in this district being proper pursuant to 28

U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1] The last four digits of Garrett Motion Inc.'s tax identification number are 3189. Due to the large number of
debtor entities in these Chapter 11 Cases, which are being jointly administered, a complete list of the Debtors
and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such
information may be obtained on the website of the Debtors' proposed claims and noticing agent at
http://www.kccllc.net/garrettmotion. The Debtors' corporate headquarters is located at La Pièce 16, Rolle,
Switzerland.

[2] Capitalized terms used herein but not otherwise defined have the meanings ascribed in Application.

and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules; and that, except as otherwise ordered herein, no other or further notice is necessary; and any objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before this Court; and this Court having found that the terms and conditions of employment, including those set forth in the Engagement Letter and summarized in the Application, are reasonable as required by section 328(a) of the Bankruptcy Code; and this Court having found that FTI is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and this Court having found that the relief requested in the Application is necessary and essential for the Debtors' reorganization and such relief is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Application is GRANTED to the extent set forth herein.

2.      The terms of the Engagement Letter, including, without limitation, the compensation provisions and the indemnification provisions, as modified by the Application and this Order, are reasonable terms and conditions of employment and are hereby approved.

3.      Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are hereby authorized to retain FTI to provide the ASASCO Independent Director with services related to the ASASCO Transaction Committee's Allocation Recommendation, effective as of September 20, 2020 on the terms set forth in the Engagement Letter subject to the following terms, which

SC1:5305625.6

apply notwithstanding anything in the Engagement Letter or the Application or any exhibits related

thereto to the contrary:

    (a)    FTI and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned cases.

    (b)    No principal, employee, or independent contractor of FTI and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned cases.

    (c)    Notwithstanding the requirements of any order entered by Court governing the procedures for compensation of the Debtors' professionals, the Debtors are authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by FTI for fees and expenses incurred in connection with FTI's retention.

    (d)    Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order. No success fee, transaction fee, or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

    (e)    For a period of three years after the conclusion of the engagement, neither FTI nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors.

    (f)    FTI shall disclose any and all facts that may have a bearing on whether FTI, its affiliates, and/or any individuals working on the engagement have any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. The obligation to disclose identified in this subparagraph is a continuing obligation.

    4.    FTI shall file and submit monthly invoices (the "**Monthly Invoices**") to the

ASASCO Independent Director, with copies of the Monthly Invoices (redacted as appropriate)

submitted reasonably contemporaneously therewith to (a) the Debtors, (b) counsel for the Debtors,

(c) the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**"); (d) counsel to any

official committees appointed in these Chapter 11 Cases; and (e) counsel to the administrative

agent under the Debtors' debtor in possession financing facility (collectively, the "**Notice Parties**"

and each, a "**Notice Party**"). The Debtors will pay all reasonable and undisputed amounts invoiced by FTI in accordance with the following Payment Procedures:

a.  On or after the 20th day of each calendar month following the month for which compensation is sought, FTI will file with the Court and serve on each of the Notice Parties a Monthly Invoice with respect to the fees and expenses incurred during the preceding month.

b.  Each Notice Party shall have fifteen (15) days after a Monthly Invoice is served to review it and, if such Notice Party has an objection to the fees or expenses sought in a particular Monthly Invoice (an "**Objection**"), such party shall, by no later than fifteen (15) days following service of the particular Monthly Invoice (the "**Objection Deadline**"), file and serve upon FTI and the Notice Parties a written notice (the "**Notice of Objection to Invoice**"), setting forth with specificity the nature of the Objection and the amount of fees or expenses at issue.

c.  If no Notice of Objection to Invoice has been timely filed and served upon FTI and the Notice Parties by the expiration of the Objection Deadline, or if FTI and the objecting Notice Party thereafter consensually resolve any such Objection, the Debtors shall promptly pay, in full, the fees and expenses identified in the Monthly Invoice.

d.  If a Notice of Objection to Invoice has been timely filed and served upon FTI and the Notice Parties, the Debtors shall withhold payment of that portion of the Monthly Invoice to which the Objection is directed and promptly pay the remainder of the fees and expenses to FTI.

e.  If a Notice of Objection to Invoice is filed and served upon FTI and the Notice Parties, FTI and the objecting party will work in good faith to resolve their dispute without resort to the Court.

f.  Any Objections that are not resolved by the parties shall be preserved and presented to the Court at an available hearing date.

5.      Notwithstanding anything in the Engagement Letter to the contrary, FTI shall apply any remaining amounts of its prepetition retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to FTI.  FTI is authorized without further order of the Court to reserve and apply amounts from the prepetition retainer that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse FTI

for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

6.      FTI shall comply with any order entered by the Court approving the Interim Compensation Procedures Motion.

7.      In the event of any inconsistency among the Engagement Letter, the Application, and this Order, this Order shall govern.

8.      The requirements set forth in Local Rule 9013-1(b) are satisfied.

9.      The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

10.     This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

11.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Interim Order.

Dated: _____
       New York, New York

_____
The Honorable Michael E. Wiles
United States Bankruptcy Judge

**<u>Exhibit B</u>**

**Declaration of Luke Schaeffer**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | x | |
| In re | : | Chapter 11 |
| | : | |
| | : | Case No. 20-12212 (MEW) |
| GARRETT MOTION INC., *et al.*,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| | : | |
| | x | |

**DECLARATION OF LUKE SCHAEFFER IN SUPPORT OF**
**THE DEBTORS' APPLICATION FOR**
**AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b)**
**AUTHORIZING THE DEBTORS TO RETAIN FTI CONSULTING, INC. AS ADVISOR**
**TO THE INDEPENDENT DIRECTOR AND SOLE MEMBER OF THE TRANSACTION**
**COMMITTEE OF GARRETT ASASCO INC.,**
**EFFECTIVE AS OF THE PETITION DATE**

I, Luke Schaeffer, declare as follows:

1.     I am a Senior Managing Director with FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors, and employees, "**FTI**"). I submit this declaration (this "**Declaration**") in support of the *Debtors' Application for an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing the Debtors to Retain FTI Consulting, Inc as Advisor to the Independent Director  and Sole Member of the Transaction Committee of  Garrett ASASCO Inc., Effective as of the Petition Date*.[2]  Except as otherwise noted, all facts herein are based on my personal knowledge, information gathered from review of relevant documents, and information supplied by other FTI professionals.  If FTI discovers any additional information

---

[1]     The last four digits of Garrett Motion Inc.'s tax identification number are 3189. Due to the large number of debtor entities in these Chapter 11 Cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/garrettmotion. The Debtors' corporate headquarters is located at La Pièce 16, Rolle, Switzerland.

[2]     Capitalized terms not defined herein have the meanings ascribed to them in the Application.

bearing on the issues discussed herein and in the Application, it will use reasonable efforts to file promptly a supplemental declaration as needed to disclose that information.

**Disinterestedness and Eligibility**

2.      In connection with the preparation of this Declaration, FTI conducted a review of its contacts with the Debtors, their affiliates and certain entities holding large claims against or interests in the Debtors that were made reasonably known to FTI.  A listing of the parties reviewed is reflected on **Schedule 1** to this Declaration.  FTI's review, completed under my supervision, consisted of a query of the **Schedule 1** parties within an internal computer database containing names of individuals and entities that are present or recent former clients of FTI.  A summary of such relationships that FTI identified during this process is set forth on **Schedule 2** to this Declaration.

3.      Based on the results of this review, FTI does not have a relationship with any of the parties on **Schedule 1** in matters related to these proceedings.  FTI has provided and could reasonably be expected to continue to provide services unrelated to the Debtors' cases for the various entities shown on **Schedule 2**.  FTI's assistance to these parties has been related to providing various financial restructuring, litigation support, or engineering and scientific investigation consulting services.  To the best of my knowledge, no services have been provided to these parties-in-interest which involve their rights in the Debtors' cases, nor does FTI's involvement in this case compromise its ability to continue such consulting services.  Prior to the Petition Date, FTI's Forensic Litigation & Consulting ("**FLC**") business segment was engaged by Garrett Motion Inc. ("**Garrett Motion**") in an unrelated matter to provide privileged consulting relating to potential asbestos liabilities.  That engagement is complete, and FTI's FLC business

2

segment has one open but inactive engagement with Garrett Motion to review periodic draft analyses regarding estimated potential asbestos liabilities.

4.      Further, as part of its diverse practice, FTI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties-in-interest in the Debtors' Chapter 11 Cases.  Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings.  In addition, FTI has in the past, may currently and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which FTI is to be employed, and none are in connection with these cases.

5.      According to FTI's books and records, during the ninety (90) days prior to the Petition Date, the Debtors paid approximately $228,028.00 in fees and $13,681.68 in expenses to FTI for prepetition services rendered and expenses incurred, corresponding to fees and expenses under the Engagement Letter and Prior Engagement Letter.  Further, FTI's current estimate is that it has received unapplied advance payments from the Debtors in excess of prepetition billings in the amount of $151,881.30, inclusive of the $200,000 retainer.  FTI shall apply any remaining amounts of its prepetition retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to FTI.

6.      FTI does not believe it is a "creditor" with respect to fees and expenses of any of the Debtors within the meaning of section 101(10) of the Bankruptcy Code.  Further, neither I nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge, is a holder of any outstanding debt instruments or shares of the Debtors' stock.

7.      To the best of my knowledge, no employee of FTI is a relative of, or has been connected with any judge of the bankruptcy court for this district or the United States Trustee in this district.

8.      As such, to the best of my knowledge, FTI is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that FTI is not a creditor, an equity security holder, or an insider of the Debtors;

   (a)      is not and was not, within two years before the date of the filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

   (b)      does not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

9.      In addition, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI neither holds nor represents an interest adverse to the Debtors.  It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties-in-interest in an expedient manner.  If any new material relevant facts or relationships are discovered or arise, FTI will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014.

**Professional Compensation**

10.      Subject to Court approval of the Application and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines, and the Local Rules for the United States Bankruptcy Court for the Southern District of New York, FTI will seek from the Debtors payment for compensation on a monthly basis its services described in the Application, as well as reimbursement of actual and necessary expenses incurred by FTI.  FTI's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application.  These hourly rates are subject to periodic adjustment.

11.      To the best of my knowledge, (a) no commitments have been made or received by FTI with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (b) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with these Chapter 11 Cases.

12.      By reason of the foregoing, I believe FTI is eligible for retention by the Debtors pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

[*Remainder of page intentionally left blank.*]

5

**WHEREFORE,** pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing statements are true and correct to the best of my knowledge, information, and belief.


Dated: September 30, 2020                    _/s/ Luke Schaeffer_____
       New York, New York                    Luke Schaeffer
                                    Senior Managing Director
                                    FTI Consulting, Inc.

## **Schedule 1**

**Listing of Parties-in-Interest Reviewed for Current Relationships**

# GARRET MOTION INC. et al.
## Parties in Interest

**Debtor Entities**

Garrett Motion Inc.
BRH LLC
Calvari Limited
Friction Materials LLC
Garrett ASASCO Inc.
Garrett Borrowing LLC
Garrett Holding Company Sàrl
Garrett LX I S.à r.l.
Garrett LX II S.à r.l.
Garrett LX III S.à r.l.
Garrett Motion Australia Pty Limited
Garrett Motion Automotive Research Mexico S. de R.L. de C.V
Garrett Motion Holdings II Inc.
Garrett Motion Holdings Inc.
Garrett Motion International Services S.R.L.
Garrett Motion Ireland A Limited
Garrett Motion Ireland B Limited
Garrett Motion Ireland C Limited
Garrett Motion Ireland Limited
Garrett Motion Italia S.R.L.
Garrett Motion Japan Inc.
Garrett Motion LLC
Garrett Motion México, Sociedad Anónima de Capital Variable
Garrett Motion Romania S.R.L.
Garrett Motion Sàrl
Garrett Motion Slovakia s.r.o.
Garrett Motion Switzerland Holdings Sàrl
Garrett Motion UK A Limited
Garrett Motion UK B Limited
Garrett Motion UK C Limited
Garrett Motion UK D Limited
Garrett Motion UK Limited
Garrett Transportation I Inc.
Garrett Transportation Systems Ltd
Garrett Transportation Systems UK II Ltd
Garrett TS Ltd
Garrett Turbo Ltd

**Non-debtor Related Entities**

COMDEV Investments Limited
FMP Automotive (Malaysia) SDN BHD
FMP Distribution Ltd.

FMP Group (Australia) Pty Ltd
FMP Group (Thailand) Limited
FMP Group Pty Limited
Garrett Finances SNC
Garrett Motion (Thailand)Co., Ltd.
Garrett Motion BermudaLtd.
Garrett Motion Czech Republic s.r.o.
Garrett Motion Engineering Solutions Private Limited
Garrett Motion France A S.A.S.
Garrett Motion France B S.A.S.
Garrett Motion France CS.A.
Garrett Motion France S.A.S.
Garrett Motion Germany GmbH
Garrett Motion Industria Automotiva Brasil Ltda
Garrett Motion International Services Morocco
Garrett Motion International Services S.R.L. Türkiye İrtibat Bürosu [Turkey]
Garrett Motion International ServicesSRL (Incorporated in Romania) [South Africa]
Garrett Motion Korea Ltd.
Garrett Motion Portugal, Unipessoal, Lda [Portugal]
Garrett Motion Technologies (India) Private Limited
Garrett Transportation Systems Ltd. [Thailand]
Honeywell Automotive Parts Services (Shanghai) Co., Ltd.
Honeywell Bermuda II, Ltd.
Honeywell Korea Ltd Indonesia Representative Office
Honeywell Transportation Investment (China) Co., Ltd. (New China TS Co)
Honeywell Turbo Technologies (Wuhan) Co., Ltd.
OOO Garrett Transportation Systems
Turbodina S.A.I.y.C.

**Administrative Agents and Indenture Trustees**
Deutsche Trustee Company Limited - Debt and Agency Services
Deutsche Trustee Company Limited - Lux Registrar
J.P. Morgan Europe Limited
JPMorgan Chase Bank, N.A., Loan and Agency Services Group

**Bidder**
KPS Capital Partners

**Cash Management Banks**
ANZ Corporate Banking
Bank of America Merrill Lynch, Global Corporate & Investment Banking
Banque Cantonale Vaudoise
BARCLAYS
BBVA
BLKB
BNP Paribas

Citibank
Citibank International Plc
CITIBANK INTERNATIONAL PLC
CITIBANK MASTER CARD
Citibank NA
Citibank NA Bratislava
Citigroup | Corporate and Investment Banking
Deutsche Bank
Goldman Sachs & Co. LLC
J.P. Morgan - Global Corporate Bank, Switzerland
JPMorgan Chase Bank - Luxembourg
JPMorgan Chase Bank - New York
Mitsubishi UFJ Trust and Banking
MUFG
Sumitomo Mitsui Banking Corporation, Duesseldorf Branch
Sumitomo Mitsui Trust Club Co.,Ltd
UBS Switzerland AG
UniCredit Bank AG
UniCredit Bank AG Luxembourg Branch
Unicredit Lease Management
UNICREDIT LEASING FLEET MANAGEMENT

**Contract Counterparties**
Al Manar for Manufacturing Car Fluids and Spare Parts
Allied-Signal Inc.
ASIST OTOMOTIV SAN TIC.LTD.STI.
Asysum S.A.
Balance Technology Inc.
Bayerische Motoren Werke Aktiengesellschaft
Bendix (Thailand) Limited
Bendix Commercial Vehicle Systems Limited
Bendix Corporation
Bendix Mintex Pty. Ltd.
British Belting & Asbestos Limited.
CANGO Hard and Soft S.R.L.,
Castec Korea Co., Ltd.
Cimos d.d.
Delphi Automotive Systems LLC
Dongying Baofeng Auto Parts Co., Ltd.
Fiat Powertrain Technologies S.p.a.
FMP Australia
FMP AUTOMOTIVE MALAYSIA SDN. B
FMP GROUP (THAILAND) LIMITED
Fomar Poland Sp. Z o.o.
Ford Forschungszentrum Aachen GmbH
Ford Motor Company

German TiAl Turbine & Turbocharger Technology GmbH
GRI ENGINEERING & DEVELOPMENT LLC (aka MAT Holdings Inc.)
GUANGZHOU BD CO., LTD
Hofstetter PCB AG
Honda R&D Co., Ltd.
Honeywell Intellectual Properties Inc.
Honeywell International Inc.
Kehua Holdings Co., Ltd
Knorr-Bremse AG
Knorr-Systeme fur Nutzfahrzeuge GmbH
Lucky Oil S.R.L
Mei Ta Industrial Co., Ltd
Microsoft Corporation
Ministry of the Economy of the Slovak Republic
Oerlikon Metco
OPTIMAL AG & CO. KG
Optimal KG
Pacific BBA Automotive Ltd.
Pacific BBA Limited
Palmers Green Pty. Ltd.
Recambiline S.L.
Roulonds Braking ApS
Shanghai Sinotec Co., Ltd.
Shenzhen BDS Automotive Technology Co., Ltd.
Sodirep
Sonceboz Automotive SA
Sony Computer Entertainment Inc.
TMD
Toyota Motor Corporation
Tye Soon Limited
Vaud Canton Central Tax Authority
Walter AG
Wescast Hungary Zrt.
Wescast Industries Co, Ltd.
Wuxi Best Precision Machinery Co. Ltd.
Wuxi Lihu Corporation Limited
Wuxi Yelong Precision Machinery Co., Ltd.

**Credit Agreement Parties**
BANCO BILBAO VIZCAYA ARGENTARIA, S.A., NEW YORK BRANCH
Bank of America Merrill Lynch International Limited
Barclays Bank PLC
BNP PARIBAS
CitiGroup Global Markets Limited
Deutsche Bank AG, London Branch
Goldman Sachs Bank USA

MUFG BANK, LTD
UNICREDIT BANK AG

**Major Customers**

Bayerische Motoren Werke AG
Caterpillar Inc.
Daimler AG
Deere & Company
Fiat Chrysler Automobiles N.V.
Ford Motor Company
FPT Industrial
General Motors
Groupe PSA
Hino Motors Ltd.
Hyundai Kia
Jiangling Motors Corporation Limited
Mazda Motor Corporation
Nissan Motor Co, Ltd
Perkins Engines Company Limited
Proto Motors
Renault S.A.
SAIC General Motors Corporation Limited
Subaru Corporation
Volkswagen Group

**Directors and Officers**

Aileen Kathryn McDowall
Alberto Abraham Chavez Dipp
Alberto Chavez
Aldea Mihaela
Alessandro Gili
Alexander Greene
Anthony Lodato
Armando Tacconelli
Brendan P O'Connor
Carlos Cardoso
Carlos De los Santos Anaya
Carsten J. Reinhardt
Chris James
Constanta Nazarcu
Courtney Enghauser
Craig Balis
Cristian Manu
Cyril Grandjean
Dai, Hong
Damien Schuind

Daniel Deiro
Dipp, Alberto Abraham Chavez
Enrique Vazquez Gorostiza
Eric Fraysse
Fabrice Spenninck
Fernando Marafon
Hong Dai
Jerome P. Maironi
Jerome Stoll
John Christopher James
John Jones
Koenraad Van Himbeeck
Lydia Castro Roa
Marian Vazur
Martin Schiesser
Masayuki Ienaga
Maura J. Clark
Neil Goldman
Olivier Rabiller
Paola Casciola
Patrick MacNamara
Paul Carlsson
Peter Bracke
Piero Gennari
Pierre Ernest Barthelet
Rebecca Conway
Richard Hogan
Russell James
Samuel Cochon
Scott Tozier
Sean Deason
Sean Reagan
Susan L. Main
Thierry Mabru

### **Non-D&O Employees in US**
Aileen McDowall
Chris Hales
Christophe Carli
Christophe Mathy
Christopher Burdeu
Claire Fauquette
Cody Taylor
Dominique Bartlomiejczyk
Fabio Ferrante
Jean-Phillippe Bedu

Jean Phillippe Schmitt
Kerry Eby
Mark Rodrigues
Panos Sotiropoulos
Paul Blalock
Paul de Montfalcon
Regis Michel
Rob Cadle
Robert Vitasek
Volkan Deveci

**Major Equity Holders**
BlackRock Fund Advisors
Deccan Value Investors LP
Sessa Capital IM LP

**Factoring Lenders**
B.N.P. Paribas Factor S.A.
Banco Santander, S.A., Frankfurt Branch

**Lenders**
40/86 ADVISORS INC - AS AGT
ALLIANCEBERNSTEIN LP (AS AGT)
AMER MONEY MGMT CORP
ANGELO, GORDON & CO.L.P.
AOZORA BANK, LTD.
APEX CREDIT PARTNERS LLC
ARES MANAGEMEN+C11T LLC (AS AGT)
BARCLAYS BK PLC
BARING (U.K.) LIMITED
BARINGS (UK)- JOCASSEE PTNRS
BARINGS LLC (AS AGENT)
BCO BILBAO VIZCAYA ARGENTARIA,
BDCM FUND ADVISER LLC
BLUEMOUNTAIN CAP MANAGEMENT, L
BNP PARIBAS (SUISSE) SA
BNP PARIBAS SA
BRIGADE CAP MGT, LP
CAIRN CAPITAL GROUP LTD (AGT)
CARLSON CAPITAL, L.P.
CARLYLE INV MGMT L.L.C.
CITIBANK N.A - LOND BRANCH
CITIZENS BANK, NATL ASSOC
CQS MGT LTD
CR SUISSE ASSET MGMT LLC (AS A
CVC CR PARTS LLC

DCM SENIOR CREDIT, LLC
DEUTSCHE BK AG
DFG INVESTMENT ADVISERS INC
EAST-WEST UTD BK SA
EATON VANCE MANAGEMENT (AS AGT
ELMWOOD ASSET MANAGEMENT LLC
FAIR OAKS LOAN FUNDING I D A C
GOLDENTREE ASSET MGMT LP
GOLDENTREE LOAN MNGT EUR CLO 3
GOLDMAN SACHS ASSET MGMT LP (A
GOLDMAN SACHS BANK USA
GSO CAP PART LP
HALSEYPOINT ASSET MANAGMNT LLC
HAYFIN CAPITAL MANAGEMENT LLC
HPS INVESTMENT PARTNERS
ICICI BANK LTD
INTERMEDIATE CAP GR PLC (AGY)
INTERMEDIATE CAPITAL GROUP PLC
INVESCO ADVISERS, INC (AS AGEN
INVESCO EURO CLO III DAC
INVESTCORP CREDIT MGMT US LLC
JPMORGAN BK BRANCH - 0802
JPMORGAN CHASE BANK, NATL ASSO
M & G INV MGMT LTD (AGT)
MARBLE POINT CREDIT MGMT LLC
MEDALIST PARTNERS CORPORATE
MERRILL LYNCH & CO., INC.
MJX ASSET MGMT LLC
MUFG BANK, LTD.
MUZINICH & CO INC(AS AGT)
NASSAU CORPORATE CREDIT LLC
NIBC BK NV - LONDON
NORTH WESTERLY VI
NOVA KREDITNA BK MARIBOR DD
OCTAGON CR INVESTORS, LLC
PAR-FOUR INV MGT, LLC
PARTNERS GROUP (USA) INC.
PENTA CLO 6 DSGNTD ACTY CO .
PGIM INC
PINEBRIDGE INV LLC(AS AGT)
PPM AMER INC (AS AGENT)
PRETIUM CAP MGMT LLC
RAIFFEISEN BANK INTERNATIONAL
RAYMOND JAMES BANK N.A.
SILVERMINE CAP MGMT LLC
SOC GEN

STATE BANK OF INDIA
STATE BK OF INDIA-LONDON
STEELE CREEK
SUMITOMO MITSUI
TELOS ASSET MGT LLC
TIKEHAU CLO V B.V.
TIKEHAU INV MGMT S.A.S.
TPG OPPORTUNITIES PARTNERS, LP
UNICREDIT BK AG
VOYA INV MGMT CO LLC
WELLFLEET CR PARTS LLC
WHITEHORSE CAPITAL PARTNERS LP
YORK CAP MGT ADVISORS LLC

**Hedging Parties**
BANCO BILBAO VIZCAYA ARGENTARIA, S.A.
Barclays Bank plc
BNP Paribas, New York Branch
CITIBANK
CITIBANK N.A.
DEUTSCHE BANK AG
GOLDMAN SACHS INTERNATIONAL
J.P. MORGAN SECURITIES PLC
Merrill Lynch International
Société Générale
UNICREDIT BANK AG

**Indemnification agreements**
Honeywell ASASCO 2 Inc.
Honeywell International Inc.

**Insurers**
AIG Europe Limited
Allianz Global Corporate & Specialty SE
Allianz Insurance plc
Allied World Assurance Company AG
Aspen Syndicate 4711
Aviva Group
Beazley Syndicate 2623 / 623
Chubb European Group Limited
Chubb Seguros México, S.A.
Chubb Underwriting Agencies Ltd (Syndicate 2488)
Etablissement Cantonal d'Assurance (ECA)
First Liberty Insurance Corp
Great Lakes Insurance SE (Munich Re)
Hiscox (Syndicate 0033 HIS)

HSB Engineering Insurance Limited
Liberty Insurance Corp
MARSH & MCLENNAN INSURANCE AGENCY LUS
Marsh Ltd
MARSH LTD UK GB
Navigators Insurance Co
Pool Re
QBE European Operations plc.
Starr Indemnity & Liability Company
The First Liberty Insurance
W. R. Berkley Corporation
XL Insurance Company SE
Zurich Engineering
Zürich Versicherungs-Gesellschaft AG

**Lease Counterparties**
Casa Twin Tower Business Centre
EQUEST LOGISTIC S.R.L.
FMP Group (Australia) Pty Ltd
FZB Plymouth, LLC
Ganimede S.r.l
Hasma Pty Limited
HGR Management, LLC
Hiteco S.r.l.
Honeywell (China) Co., Ltd.
Honeywell Aftermarket Europe S.r.l.
Honeywell Control Systems Limited
Honeywell Garrett Italia Srl
Honeywell GmbH
HONEYWELL INGENIERIA Y TECNOLOGIA AEROSPACIAL DE MEXICO S. DE R.L.
DE C.V.
HONEYWELL INTERNATIONAL INC.
Honeywell International S.à.r.l.
Honeywell Japan Ltd.
Honeywell Limited
Honeywell Technologies Sarl
Honeywell UK Limited
Industrious ATL 1447 Peachtree LLC
INMUEBLES EL VIGIA, S.A. DE C.V.
La Ganimede S.r.l.
NETRON INVESTMENT SRL
Novar ED&S Limited
Regus Management Group LLC
SECOND ROC-JERSEY ASSOCIATES L.L.C.
Sparkasse Gifhorn-Wolfsburg
Svizzera 185 S.r.l

Wong y Asociados Inmobiliaria, S. de R.L.de C.V.
Xtraspace Flexi Office (pty) Ltd.

**Litigation parties**

Administración Desconcentrada de Auditoría de Comercio Exterior del Pacífico Norte, con Sede en Baja California, de la Administración General de Auditoría de Comercio Exterior del Servicio de Administración Tributaria,
BES SAUVAIGO & ASSOCIES
DARIUS ADAMCZYK
Elise Deillon-Antenen, avocate
Hayat Aarab
Honeywell ASASCO 2 Inc.
HONEYWELL ASASCO 2 LLC
HONEYWELL ASASCO LLC
Honeywell do Brasil Ltda.
HONEYWELL HOLDINGS INTERNATIONAL INC.
Honeywell International Inc.
Maître Anne-Marie Aufrère
Mexicali Customs House
Precision Components Industries
SELARL MJ ALPES
SU PING LU

**Noteholders**

ABN AMRO Investment Solutions S.A.
Aegon USA Investment Management, LLC
AllianceBernstein, L.P. (U.S.)
AllianceBernstein, LTD (U.K.)
Amundi Pioneer Asset Management, Inc.
Anima SGR S.p.A.
AXA Investment Managers (U.K.), LTD
Baillie Gifford & Company
Banco de Sabadell S.A. (Asset Management)
BankInvest Asset Management
Barings (U.K.), LTD
Barings, LLC
BlackRock Investment Management (U.K.), LTD
BNP Paribas Fortis S.A./N.V. (Private Banking)
Chenavari Credit Partners, LLP
DBX Advisors, LLC
Deka Investment GmbH
DWS Investment GmbH
Eaton Vance
Edmond de Rothschild Asset Management (UK) LTD
Erste Asset Management GmbH
Fidelity International Limited - FIL Investment Services (U.K.), LTD

Financière Meeschaert
Formuepleje A/S
Generali Insurance Asset Management SGR S.p.A.
GoldenTree Asset Management, L.P. (U.S.)
Groupama Asset Management S.A.
Helaba Invest Kapitalanlagegesellschaft mbH
Intermediate Capital Group plc
Intermediate Capital Group, Inc.
Invesco Asset Management S.A.
Janus Henderson Investors (U.K.)
JAR Capital Wealth Management, LLP
Kames Capital PLC
Lord, Abbett & Co., LLC (Asset Management)
M&G Investment Management Ltd
Manulife Asset Management (Europe), LTD
MEAG Munich Ergo Asset Management GmbH
Mediolanum Asset Management, LTD
Muzinich & Co., LTD (London)
NatWest Markets, PLC
NN Investment Partners (Belgium)
Nomura Asset Management U.S.A., Inc.
Nykredit Asset Management A/S
ODDO BHF Asset Management SAS
OFI Asset Management
PineBridge Investments Europe, LTD
PPM America
Pramerica SGR S.p.A.
Robeco Institutional Asset Management BV
Russell Investment Management, LLC
Schroder Investment Management North America, Inc.
St Paul's CLO IX Designated Activity Company
State Street Global Advisors Ireland, LTD
Swedbank Robur Fonder AB
Syd Fund Management A/S
Teachers Retirement System of Louisiana
Tikehau Investment Management
UBS Fund Management (Luxembourg) S.A. (Funds)
UBS Switzerland AG
Voya Investment Management, LLC

**Other Unsecured Creditors**
Agenzia Regionale per la Tutela dell'Ambiente (ARTA), Distretto provinciale di Chieti
Regione Abruzzo Dipartimento Opere Pubbliche, Governo del Territorio e Politiche Ambientali
Servizio Tecnico Ambiente, Provincia di Chieti
Tennessee Department of Environment and Conservation

## Professionals

A and L Goodbody
ABRAMS & BAYLISS LLP
AlixPartners LLP
ANDERSEN TAX, LLC
Arendt & Medernach SA
Arendt Services SA
Arnold & Porter Kaye Scholer LLP
BAKER & MCKENZIE - CIS, LIMITED
Baker & McKenzie Abogados, S.C.
BAKER AND MCKENZIE ZURICH
Barzano & Zanardo Roma S.p.A
Beijing Chang Tsi & Partners
BHOOPALAM CHANDRASHEKHARAIAH PRABHA
Bird & Bird AARPI
Bird and Bird LLP
Bird&Bird Advokat KB
BMG AVOCATS
Boult Wade Tennant LLP
Broadridge Investor Communications
Brown Rudnick LLP
Brunner et Associes SA
CARMODY AND TORRANCE
CMS CAMERON MCKENNA SCA
CMS HASCHE SIGLE
CMS von Erlach Poncet SA
ConwayMCColl Solicitors Limited
CORNERSTONE RESEARCH INC.
CSC THE UNITED STATES CORPORATION
Daniel J. Edelman, Inc.
DAVIS POLK & WARDWELL LONDON LLP GB
DELOITTE & TOUCHE LLP
DELOITTE & TOUCHE S.P.A.
DELOITTE & TOUCHE SA SUISSE
Deloitte Audit S.R.L.
Deloitte Audit s.r.o.
Deloitte Audit, s. r. o.
Deloitte Consulting AG
Deloitte Haskins and Sells LLP
Deloitte LLP
Deloitte SA
DELOITTE TOUCHE
DENTONS SOUTH AFRICA
Donald Hill Patent Law
Drinker Biddle & Reath
Ernst & Young AG

Ernst & Young Law s. r. o.
Ernst & Young LLP
ERNST & YOUNG SRL
Ernst & Young, s.r.o.
ERNST + YOUNG
ERNST and YOUNG LLP
Ernst&Young Law GmbH
ERNST&YOUNG TERCO SERVIÇOS
Freshfields Bruckhaus Deringer
FTI CONSULTING INC US
GALAZ,YAMAZAKI, RUIZ, URQUIZA, S.C.
Gevers & Ores
GLOBAL LAW OFFICE
Greenberg Traurig PA
Gun Partners
Hadiputranto, Hadinoto & Partners
Haynes and Boone, LLP
HOGAN LOVELLS INTERNATIONAL LLP
Hogan Lovells LPP International LLP
Hogan Lovells Paris LLP
HOGAN LOVELLS US LLP
IPREO LLC
JUNHE LLP
Kim and Chang
KPMG LLP
Kurtzman Carson Consultants (KCC)
Lakshmikumaran & Sridharan
LATHAM & WATKINS LLP
Leason Ellis LLP
LENZ ET STAEHELIN
LEWIS SILKIN LLP
Lewis Silkin Services Limited
Lorenz and Kopf LLP
M&M O'SHEA
MACKENZIE PARTNERS, INC
Morgan Stanley Smith Barney LLC
Pangrle Patent Brand and Design Law
Perella Weinberg Partners LP
PHILLIPS ADR ENTERPRISES PC
Price Water House & Co Bangalore LL
PRICEWATERHOUSE COOPERS S.C.
PricewaterhouseCoopers AG
PRICEWATERHOUSECOOPERS CONTADORES
PricewaterhouseCoopers LLP
PRICEWATERHOUSECOOPERS PRIVATE
PricewaterhouseCoopers Private Limi

Pricewaterhousecoopers services LLP
PricewaterhouseCoopers Slovensko sr
PricewaterhouseCoopers Tax  k s
PRICEWATERHOUSECOOPES LLP GB
PWC UK
QUINN EMANUEL URQUHART & SULLIVAN, US
Quinn Emmanuel Trial Lawyers
Radu si Asociatii SPRL
Remfry & Sagar
ROXIN RECHTSANWAELTE LLP
Schofield Sweeney LLP
Schulte Roth & Zabel LLP
SCP FLICHY GRANGE AVOCATS
Seager Tufte and Wickhem LLP
Sheppard Mullin Richter Hampton LLP
Signature Litigation AARPI
SIMMONS AND SIMMONS LLP
Simpson Thacher Barlett
Sullivan & Cromwell LLP
The Law Office of John A Griecci
THOMPSON HINE LLP
TLG - THE LEGAL GROUP ADVOCATES
TOWERS WATSON CONSULTORES SA DE CV
WILLIS TOWERS WATSON CONSULTING BVB
Willis Towers Watson US LLC
WP Thompson Limited
Yuasa and Hara

**JV Partners and Other Related Parties**
CANGO
FMP Australia
FMP AUTOMOTIVE MALAYSIA SDN. B
FMP GROUP (THAILAND) LIMITED
Honeywell International Inc.
Honeywell Transportation Investment (China) Co.,Ltd.

**SDNY Bankruptcy Judges**
Chief Judge Cecelia G. Morris
Judge James L. Garrity Jr.
Judge Martin Glenn
Judge Michael E. Wiles
Judge Robert D. Drain
Judge Robert E. Grossman
Judge Sean H. Lane
Judge Shelley C. Chapman
Judge Stuart M. Bernstein

**Tax Authorities and Regulators**

Administration des contributions directes - Grand Duche de Luxembourg
Agencia Aduanal Esquer Luken, SC
ANAF-DGRFMB-Administratia Fiscala pentru Contribuabili Mijlocii
ANAF-Directia Generala de Administrara a Marilor Contribuabili (DGAMC)
Australia Border Force
Australian Taxation Office
Ayuntamiento de Mexicali
Birou Vamal Otopeni
Biroul Vamal Constanta
Biroul Vamal Otopeni Calatori
California Department of Tax & Fee Administration
Chambre de commerce (Luxembourg)
Cheshire East Council
COMISION ESTATAL DE SERVICIOS PUBLICOS DE MEXICALI
Companies House
Customs and Tariff Bureau
DC Office of Tax and Revenue
Delaware Division of Corporations
Direzione Provinciale di Chieti
ENVIRONMENTAL PROTECTION AGENCY
Etat de vaud or Canton de vaud (Office d'impot des Personnes Morales) – State of vaud or
Canton of vaud (Tax Office for Legal Entities)
Financial Accounting Standards Board
Financni Urad Pro Hlavni
Finanzamt Konstanz
Franchise Tax Board California
General Directorate of Local Taxes and Fees Sector 6
Georgia Department of Revenue
GOBIERNO DEL ESTADO DE BAJA CALIFORNIA
Groundwater & Environmental Services, Inc
HM Revenue & Customs
Honjo-city Tax Collection Division
Indiana Department of Revenue
Inenco
Iowa Department of Revenue
IPAN Intellectual Property Associat
IRS (INTERNAL REVENUE SERVICE)
Japan National Tax Agency
Ministry of the Economy of the Slovak Republic
Municipality of Atessa
Municipality of Torino
New York Department of Revenue
Obec Zaborske
Office of the Revenue Commissioners

Public Company Accounting Oversight Board
PUBLIC COMPANY ACCOUNTING OVERSIGHTBOARD US
Regione Abruzzo Servizio Tesoreria
RL Jones Custombroker
Saitama prefecture
Servicio de Administracion Tributaria
Slovak Fiscal Administration
Slovak Tax Authority
State of Connecticut Department of Revenue Service
Tennessee Department of Revenue
Tokyo Metropolitan Government
UK Finance Administration
Urad prace, socialnych veci a rodiny
US Customs & Border Protection
Vaud Canton Central Tax Authority
Waterford City Council
Wood Environment & Infrastructure Solutions Inc

**UCC Lien Holders**
ECONOCOM CORPORATION
JPMORGAN CHASE BANK, N.A.

**Unions and Works Councils**
Australian Manufacturing Workers Union
Connect trade union (formerly TEEU)
Electrical Trades Union
Nueva Cultura Laboral
Sindicatul Allied Signal

**US Trustee employees**
Alicia Leonhard
Christine Black
Guy A. Van Baalen
Joseph Allen
Joseph Nadkarni
Kathleen Schmitt
Linda Riffkin
Lisa Penpraze
Paul K. Schwartzberg
William K. Harrington

**Utilities**
Added Computer & Telephony Com e Se
AGUA Y HIELO ESTRELLAZUL DE MEXICAL
Airtel  A/C No. 112-100960996
Airtel A/c No: 112-100959962

AN APELE ROMANE
APA NOVA
APA NOVA BUCURESTI SA
ARUBA SPA
ARUBA SPA E2E
AT & T Communication Services India
AT and T Mobility LLC
AYUNTAMIENTO DE MEXICALI
BEIJING WANG AN JIE TONG TECHNOLOGY
BETTA TELECOMUNICAÇÕES E ELETRÔNICA
BHARTI AIRTEL LIMITED
Bharti Airtel Services Ltd
BORD GAIS
C.C.D. ENERGIES
CAM. NAL. DE LA IND. ELECTR. DE TELECOM Y TECNO DE LA INFO
CAMARA DE COMERCIALIZACAO DE
CASCARDI SANEAMENTO BÁSICO LTDA
CFE SUMINISTRADOR DE SERVICIOS
Chaturshringi Service Station
CHEMTECH WASTE MANAGEMENT LTD
Cheongdo
China Unicom Wuhan Paging Enterprise Office
China United Network Communications Co., Ltd.
CIA ULTRAGAZ S.A
CIa Ultragaz S/A
Com And Lan Digital Tech Co., Ltd.
Comision Federal de Electricidad
Comune di Atessa
CONDOMINIO EDIFICIO PAULISTA
Corporativo Reaal S de RL de CV
DESARROLLO DE TECNOLOGIAS INTEGRALE
DIBPEL GERENCIAMENTO DE RESIDUOS
Duksung
DYNAMIC COMMUNICATIONS MEXICO
E.D.F. - G.D.F.
E.ON Energie România S.A.
EC Bank Co., Ltd.
ECOGAS MEXICO, S. DE R.L. DE C.V.
EDISON ENERGIA SpA
EDP SAO PAULO DISTRIBUICAO DE
Energia
ENERGIA AZTECA X SA DE CV
EOLO SpA
Fanal Comercio Derivados Petroleo
Fans Trans (China) International Freight Agent Co., Ltd.
FASTWEB SPA

FASTWEB SPA / MILANO
GOEPIK SISTEMAS INDUSTRIAIS SA
GSA GERENCIAMENTO DE RESIDUOS EIREL
GTS TELECOM SRL
H. BLOCH a.s.
Hidrocarburos del Noroeste SA de CV
HONJOSHI SUIDOKA
Horizon Safety Systems
Horizon Services
HORIZON TECH LTDA
Hyundai AutoEver Corp.
IDEA CELLULAR LTD 8.10604733
Idea Cellular Ltd A/c No 8.10398708
IEnova Marketing S. de R.L. de C.V.
Insight Technology Solutions GmbH
IRCAT CO SRL
Irish Water
JAIME DONACIANO JIMENEZ  CRUZ
Jiashang Petroleum (Zhoushan) Co.,
Korean Oil
KOSIT A S
Kt Estate Co., Ltd.
LUBSTAR A.S.
Maharashtra State Electricity Distr
MARIA ROSA ALICIA MARAVEL VALENZUEL
MAWATI COLETA DE RESIDUOS INDUSTRIA
MEDAM S DE RL DE CV
MICHELLE GARCIA LICONA
MOL Česká republika, s.r.o.
NAMYANG CO.,LTD.
Nantong Lean Electronics Co., Ltd
NCH BRASIL LTDA.
Nepal Dist. de Agua Mineral LTDA.
Nevicom SA
ONYX  EST
OPERADORA DE BOLICHE MEXICALI
Operadora de Boliche Mexicali SA de CV
ORANGE BUSINESS SERVICES
ORANGE ROMANIA SA
Orange Slovensko a s
PACIFIC TREATMENT ENVIRONMENTAL
PCS Telecom Co.,Ltd
PRAZSKA ENERGETIKA, A.S.
Presov REAL s.r.o
PROAGUAS TRANSANTISTA LTDA-ME
PROLAB AMBIENTAL ANÁLISE

SC1:5305625.6

PROMOBEIS DE MEXICALI, A.C.
RADIOMOVIL DIPSA SA DE CV
Radiomovil Dipsa SA de CV Payment
RAI Abbonamenti Speciali Torino
RELIANCE JIO INFOCOMM LIMITED
Renault SAS
RENOVA TRATAMENTO DE RESIDUOS LTDA
Restore Shred
Ryder Communications Group Inc
RYDER COMMUNICATIONS GROUP INC US
SABESP - COMP.SAN.BAS.S.P
SAMSUNG SDS
SAS SEGEC DIRECT
Schneider Electric ESS BVBA
SERVICO AUTONOMO DE AGUA E ESGOTO
Shang Hai Lai Shi You Pin You Xian
shanghai move-communicate Co.Ltd.
shanghai telecom account center
SHANGHAI WINSH COMPUTER TECHNOLOGY
Shanghai Ziyan information technolo
Shanghai Ziyu Network Technology Co
SINGTEL EUROPE LTD
Singtel Global (India) Pvt Ltd
SingTel Global India Private Limite
Singtel Global India Pvt Ltd
SK Broadband Co., Ltd.
SK PROTECTIVE PRODUCTS
SK Technik
SK 텔레콤
SUEZ Australia Pty Ltd
Swisscom (Schweiz) AG
TELECOM ITALIA SPA
TELSTRA
TEMPO ENERGIA S.A.
Tinmar Energy SA
TINMAR GAS S.A.
T-mobile Czech Republic, a.s.
TOTAL ENERGIE GAZ
TOTAL FRANCE
T-SYSTEMS DO BRASIL LTDA
UB1st Co., Ltd.
UNITED GRINDING NORTH AMERICA INC
VEOLIA EAU
Veolia Environmental Services Techn
VEOLIA ES CLEANAWAY UK LTD
Veolia Water Technologies

VERIZON
Verizon communications India Privat
Verizon Communications Slovakia s.r
VERIZON FINANCIAL SERVICES LLC US
Verizon Italia S.p.A.
Verizon Nederland BV
Verizon Switzerland AG
VERIZON WIRELESS
VERIZON WIRELESS US
VODAFONE
Vodafone GmbH
Vodafone Idea Limited
Vodafone Italia S.p.A.
Vodafone Ltd
Vychodoslovenska energetika a.s
Waterlogic Australia PTY LTD
Wuhan Hubei Electric Power Company
Wuhan Stone Smart Time Technology
Wuhan Water Group Company Litmited.

**Major Vendors**
ACEROS MOLDEADOS DE LACUNZA SA
ACTECH GMBH
ADP
Aikoku Alpha Corp
ALUMALSA
Amazon
ANSYS
AOKI SEIKI INDUSTRIES
ARANDA TOOLING INC.
ATMECA
AutoCont
AVENUE MOULDMAKING LTD
AVL
AXA Life
BIBUS
BOCAR S.A. DE C.V.
Booster Precision Components
BQ MACHINING SA DE CV
Brakes India
BUDGET SRL
Caisse AVS de la Federation patronale vandoise
Caparo Engineering India Pvt Ltd
CASTEC
CASTWELL PRODUCTS LLC
CBRE

CCN
CEMB
Central CMS Corporation
CEVA
Cimos
CITI
Cogeme
COMPA SA
COMPACT SERVICE ABC SRL
COMPAX INC
CROSS MANUFACTURING CO
CRRC
Daido
Dalian Nakamura
Dandong Heben Prec Mach Co Ltd
DANYANG CHENGYE LIGHT
DATATECHNIC
DBI PLASTICS
DHL
DISCOM INTERNATIONAL INC
Doncasters
DUCI
Easy Flyers S.R.O.
ECONOCOM
EGSTON
ELE Advanced Technology
ElringKlinger
ENKEI ALUMINIUM PRODUCTS
EQUEST LOGISTIC SRL
ETAS
EVEREST ROPACK
Expeditors International
Faist
Feilong Auto Components Co., Ltd
FERRIERE DI STABIO S.A
Finecast Foundry Limited
FIRTH RIXSON PLC
Flex Automotive
Fontana
Formel D
FPRS DEPOSITORY ACCOUNT PLAN 88374 US (FIDELITY)
FS PRECISION TECH LLC
FSA Sisteme de Asamblare SRL
Fujitsu
Fujiwa Machinery
GITS

GUTIERREZ TRUCKING, LLC.
Helical
Hella
Hickey Fabrication Services Ltd.
HIT PRECISION METALS CO LTD
Hitachi
Honeywell
Howmet Fixation Simmonds SAS
INDO MIM PRIVATE LTD
Indo Schottle
INDO-MIM PRIVATE LTD
INSTITUTO MEXICANO DEL SEGURO SOCIAL
Inzi Controls
ISIS Development
Japan Pension Organization Port
Jiangsu sinotec co.,ltd
JIANGSU TENGCHI TECHNOLOGY CO LTD
Jiangyin Machine Building Inc
JIANGYIN UNI-POL CO LTD
Kamtec
Kehua
KINTETSU WORLD EXPRESS, INC.
KOSEI AKAGI (KUNSHAN) ALUMINUM CO.,
Koshida Corporation
KOVOLIS HEDVIKOV A.S
Le Belier
LEMAN Industire
LGA Automation
Lioho Metal (hubei) Co Ltd
LISK GW COMPANY INC
M2M Machining Inc
Magneti Marelli
MANPOWER
Marubeni Automotive Corporation
MECANIZACION S.A.
Mei Ta Industrial Co., Ltd
METALIS
Microsoft Corporation
MINDA CORPORATION LIMITED
MITSUBA
MITSUBISHI
NATIONAL ECONOMIC RESEARCH ASSOC
Netron Investment SRL
NINGBO YINZHOU TIANGE AUTOMOBILE
NMB Minebea GmbH
NNC SOLUTIONS SRL

NORMA
NTT
Old Mutual Operadora de Fondos
ORACLE
PERROTTON
Pierburg
Poclain Technicast
PRECIALP
PRECISION RESOURCE
Q and L Industrial Services s r o
Quality&Logistics Industrial Service
R.G. RAY CORPORATION
RAIS Slovakia, s.r.o.
RCI ROSS CASTING & INNOVATION
Remet UK Ltd.
S&H Co
Saint Jean Industries Lorraine
Saint Jean Industries Lorraine SA
Samwee Precision
SC EXCELENT AUTO SRL
Schaeffler
SECURITAS
SELMEC
Sensata
Seo-il Casting
Shanghai LiangJi
SICTA
SIRVA GLOBAL RELOCATION INC
Sn SAMAT
Sonceboz
STOCKLOR
Streit
STWM
Supply Chain Factory GmbH
T.R. Fastenings
TAIKO UNYU
TATA CONSULTANCY SERVICES
TECHSISTEM SRL
TECNOMATIC
TF SERVICE IMPEX SRL
THE CHARTER DEPT. INC.
THE COLLECTOR - GENERAL
Thermamax
Trigo
TRUCAST
Turbocam Automated Production Syste

Umfotec Umformtechnik GmbH
UniCredit
UNITED HEALTH CARE
Universal Precision Screws
US BANK (FREIGHT)
VANGUARD FOUNDRY LTD
VIMI Fasteners S.p.A.
WAUKESHA BEARINGS CORP
Wescast
Wieland Metal Services LLC
Windtech Inc
WUXI BEST PRECISION MACHINERY CO
WUXI LIHU
Wuxi Xinan Aluminum Technology Co.,
WUXI YELONG PRECISION MACHINERY CO
YUSEN LOGISTICS S.R.L.

## Schedule 2

**Parties-in-Interest Noted for Court Disclosure**

**List of Current and Past FTI Clients Since August 1, 2018 Who Are Interested Parties**

Engagements Relating to the Debtors or Affiliates

GARRETT ASASCO INC
GARRETT MOTION INC.

Current Clients, Parents and Affiliates of Clients and Relationships Not Relating to the Debtors or Affiliates

A AND L GOODBODY
ABRAMS & BAYLISS LLP
ADP
AIG EUROPE LIMITED
ALLIANCEBERNSTEIN LP (AS AGT)
ALLIANCEBERNSTEIN, L.P. (U.S.)
ALLIANZ INSURANCE PLC
ALLIED WORLD ASSURANCE COMPANY AG
AMAZON
ANDERSEN TAX, LLC
ANGELO, GORDON & CO.L.P.
ARNOLD & PORTER KAYE SCHOLER LLP
AT AND T MOBILITY LLC
AUSTRALIAN TAXATION OFFICE
BAILLIE GIFFORD & COMPANY
BANCO BILBAO VIZCAYA ARGENTARIA, S.A.
BARCLAYS BANK PLC
BARCLAYS BANK PLC
BARCLAYS BK PLC
BARCLAYS
BARINGS LLC (AS AGENT)
BARINGS, LLC
BBVA
BCO BILBAO VIZCAYA ARGENTARIA,
BENDIX COMMERCIAL VEHICLE SYSTEMS LIMITED
BIRD AND BIRD LLP
BLUEMOUNTAIN CAP MANAGEMENT, L
BNP PARIBAS
BNP PARIBAS
BNP PARIBAS SA
BROWN RUDNICK LLP
CARLYLE INV MGMT L.L.C.
CBRE
CITI
CITIBANK
CITIBANK

CITIBANK N.A.
CITIBANK NA
CITIGROUP GLOBAL MARKETS LIMITED
CMS CAMERON MCKENNA SCA
CMS VON ERLACH PONCET SA
DAIMLER AG
DECCAN VALUE INVESTORS LP
DEERE & COMPANY
DELOITTE & TOUCHE LLP
DEUTSCHE BANK
DEUTSCHE BANK AG
DEUTSCHE BK AG
DRINKER BIDDLE & REATH
EATON VANCE
EATON VANCE MANAGEMENT (AS AGT
ERNST & YOUNG LLP
ERNST + YOUNG
ERNST AND YOUNG LLP
FIAT CHRYSLER AUTOMOBILES N.V.
FORD MOTOR COMPANY
FORD MOTOR COMPANY
FRESHFIELDS BRUCKHAUS DERINGER
FUJITSU
GENERAL MOTORS
GOLDENTREE ASSET MANAGEMENT, L.P. (U.S.)
GOLDENTREE ASSET MGMT LP
GOLDMAN SACHS & CO. LLC
GOLDMAN SACHS ASSET MGMT LP (A
GOLDMAN SACHS BANK USA
GOLDMAN SACHS BANK USA
GOLDMAN SACHS INTERNATIONAL
GREAT LAKES INSURANCE SE (MUNICH RE)
GREENBERG TRAURIG PA
HAYNES AND BOONE, LLP
HELICAL
HISCOX (SYNDICATE 0033 HIS)
HITACHI
HM REVENUE & CUSTOMS
HONEYWELL
HONEYWELL INTERNATIONAL INC.
HONEYWELL INTERNATIONAL INC.
HONEYWELL INTERNATIONAL INC.
HONEYWELL INTERNATIONAL INC.
HONEYWELL LIMITED
HPS INVESTMENT PARTNERS
HSB ENGINEERING INSURANCE LIMITED

HYUNDAI KIA
ICICI BANK LTD
IRS (INTERNAL REVENUE SERVICE)
IRS (INTERNAL REVENUE SERVICE)
J.P. MORGAN SECURITIES PLC
JANUS HENDERSON INVESTORS (U.K.)
JPMORGAN CHASE BANK, N.A.
JPMORGAN CHASE BANK, NATL ASSO
JUNHE LLP
KIM AND CHANG
KPMG LLP
LATHAM & WATKINS LLP
LATHAM & WATKINS LLP
LEWIS SILKIN LLP
LIBERTY INSURANCE CORP
LORD, ABBETT & CO., LLC (ASSET MANAGEMENT)
M & G INV MGMT LTD (AGT)
M&G INVESTMENT MANAGEMENT LTD
MARSH LTD
MERRILL LYNCH & CO., INC.
MICROSOFT CORPORATION
MICROSOFT CORPORATION
MITSUBISHI
MITSUBISHI UFJ TRUST AND BANKING
MORGAN STANLEY SMITH BARNEY LLC
MUFG
MUFG BANK, LTD
MUFG BANK, LTD.
NATWEST MARKETS, PLC
NAVIGATORS INSURANCE CO
NISSAN MOTOR CO, LTD
ORACLE
PARTNERS GROUP (USA) INC.
PINEBRIDGE INV LLC(AS AGT)
PRICEWATERHOUSECOOPERS AG
PRICEWATERHOUSECOOPERS LLP
QUINN EMANUEL URQUHART & SULLIVAN, US
RAIFFEISEN BANK INTERNATIONAL
SCHNEIDER ELECTRIC ESS BVBA
SCHRODER INVESTMENT MANAGEMENT NORTH AMERICA, INC.
SCHULTE ROTH & ZABEL LLP
SECURITAS
SHEPPARD MULLIN RICHTER HAMPTON LLP
SIMMONS AND SIMMONS LLP
SOCIÉTÉ GÉNÉRALE
STARR INDEMNITY & LIABILITY COMPANY

STATE BANK OF INDIA
SULLIVAN & CROMWELL LLP
SULLIVAN & CROMWELL LLP
SUMITOMO MITSUI
TATA CONSULTANCY SERVICES
TECNOMATIC
TELSTRA
THOMPSON HINE LLP
TOYOTA MOTOR CORPORATION
UBS SWITZERLAND AG
UBS SWITZERLAND AG
UNICREDIT
UNICREDIT BANK AG
UNICREDIT BANK AG
UNICREDIT BANK AG
UNICREDIT BK AG
UNITED HEALTH CARE
VEOLIA WATER TECHNOLOGIES
VERIZON
VERIZON WIRELESS
VERIZON WIRELESS US
VODAFONE
VODAFONE GMBH
WATERLOGIC AUSTRALIA PTY LTD
WILLIS TOWERS WATSON US LLC
XL INSURANCE COMPANY SE

Former Clients, Parents and Affiliates of Clients and Relationships Not Relating to the Debtors
or Affiliates

40/86 ADVISORS INC - AS AGT
AXA INVESTMENT MANAGERS (U.K.), LTD
BIRD&BIRD ADVOKAT KB
BRIGADE CAP MGT, LP
CATERPILLAR INC.
CMS HASCHE SIGLE
COMISION FEDERAL DE ELECTRICIDAD
DELOITTE LLP
DEUTSCHE BANK AG, LONDON BRANCH
ENVIRONMENTAL PROTECTION AGENCY
GEORGIA DEPARTMENT OF REVENUE
HONDA R&D CO., LTD.
INDIANA DEPARTMENT OF REVENUE
INTERMEDIATE CAP GR PLC (AGY)
INTERMEDIATE CAPITAL GROUP PLC
KPS CAPITAL PARTNERS

NN INVESTMENT PARTNERS (BELGIUM)
OERLIKON METCO
ORANGE BUSINESS SERVICES
SONY COMPUTER ENTERTAINMENT INC.
TEACHERS RETIREMENT SYSTEM OF LOUISIANA
TELECOM ITALIA SPA
W. R. BERKLEY CORPORATION
WHITEHORSE CAPITAL PARTNERS LP

**<u>Exhibit C</u>**

**Engagement Letter**



Luke Schaeffer
FTI Consulting, Inc.
1800 Century Park East
Suite 450
213-452-6396
Luke.Schaeffer@fticonsulting.com

<u>PRIVATE & CONFIDENTIAL</u>

August 24, 2020

Garrett ASASCO Inc.
89 Headquarters Plz Ste 1430
Morristown, NJ, 07960-6834

       Re: Garrett ASACO—Transaction Committee

Dear Mr. Qusba:

1.      **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by Garrett ASASCO Inc. ("ASASCO" or the "Company") to assist in providing certain financial advisory and consulting services (the "Services") as set forth below in relation and exclusively to Simpson Thacher & Bartlett LLP's (the "Firm") representation of the Independent Director and member of the Transaction Committee (the "Transaction Committee") of the Board of Directors of ASASCO. This letter of engagement and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

2.      **Scope of Services**

The Services, to be performed at the Firm or the Transaction Committee's direction, are expected to include the following:

- Certain services relating to the Transaction Committee's evaluation and negotiation of an allocation of distributable consideration between ASASCO and Garrett Motion Holdings Inc. ("GMHI") resulting from or in connection with a whole company transaction howsoever structured or implemented to be recommended to the Board of Directors of ASASCO (the "Allocation Recommendation")
- Any other services as requested by you or the ASASCO board of directors in connection with the Allocation Recommendation

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between FTI, the Firm and the Transaction Committee.

FTI is engaged by you to provide financial advisory and consulting services only as set forth herein and exclusively for the benefit of the Firm in connection with its representation of the

Simpson Thacher
August 24, 2020

Independent Director and Transaction Committee of the Board of ASASCO. Accordingly, while we may from time to time suggest options which may be available to the Firm, the Transaction Committee or the Company, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

As part of the Services, FTI may be requested to assist the Firm, the Transaction Committee or the Company in negotiating with GMHI or its affiliates. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Transaction Committee and/or the Company and its management, not FTI or its employees.

3.      **Privileged and Confidential Work Product**

To the extent possible, written reports, memoranda or status summaries that we prepare under this Engagement Contract will be maintained in accordance with our retention procedures and shall be prominently labeled "Privileged and Confidential".  Except as may be required by law, regulation or valid judicial or administrative process, we will not disclose to anyone, without the Firm's permission, the content of any oral or written confidential communication received during the course of the Engagement or any information gained from the inspection or review of any records or documents provided by you that are identified as confidential.

4.      **Fees**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

**United States**

| | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $920 – 1,295 |
| Directors / Senior Directors / Managing Directors | 690 –   905 |
| Consultants/Senior Consultants | 370 –   660 |
| Administrative / Paraprofessionals | 150 –   280 |

Hourly rates are generally revised periodically.  We will notify you of any changes to our rates.  To the extent this engagement requires services of our International divisions or personnel, the time will be multiplied by our standard hourly rates applicable for the International divisions or personnel.  Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable allocated and direct expenses which are likely to be incurred on your behalf during this Engagement.  Allocated expenses include the cost of items which are not billed directly to the engagement but are incurred centrally, including out-of-pocket costs for data services and research materials which FTI subscribes to that we expect to use on your engagement, copying, phone charges, and other overhead expenses that are not billed through as direct reimbursable expenses and are calculated at 6.0% of FTI's fees as described above. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as internet access, telephone, overnight mail, messenger, travel, meals, accommodations and

Simpson Thacher
August 24, 2020

other expenses specifically related to this engagement.  Further, if FTI and/or any of its
emloyees are required to testify or provide evidence at or in connection with any judicial or
administrative proceeding relating to this matter, FTI will be compensated by you at its regular
hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel
fees) with respect thereto.

Notwithstanding anything herein to the contrary, FTI and the Company expressly agree and
acknowledge that neither the Firm nor any of its partners, members, employees, shareholders
or affiliates shall be responsible for any invoices, fees and expenses, charges or claims,
including, without limitation, for indemnification, that FTI may assert or claim under or in
relation to this Engagement Agreement or the Services rendered or to be renedered hereunder.

**Cash on Account**

Initially, the Company will forward to us the amount of $200,000 which funds will be held
"on account" to be applied to our professional fees, charges and disbursements for the
Engagement (the "Initial Cash on Account").  To the extent that this amount exceeds our fees,
charges and disbursements upon the completion of the Engagement, we will refund any
unused portion.  The Company agrees to increase or supplement the Initial Cash on Account
from time to time during the course of the Engagement in such amounts as the Company and
we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a
level that will be sufficient to fund Engagement fees, charges, and disbursements to be
incurred.

We will send the Company periodic invoices (not less frequently than monthly) for services
rendered and charges and disbursements incurred on the basis discussed above, and in certain
circumstances, an invoice may be for estimated fees, charges and disbursements through a
date certain.  Each invoice constitutes a request for an interim payment against the fee to be
determined at the conclusion of our Services.  Upon transmittal of the invoice, we may
immediately draw upon the Initial Cash on Account (as replenished from time to time) in the
amount of the invoice.  The Company agrees upon submission of each such invoice to
promptly wire the invoice amount to us as replenishment of the Initial Cash on Account
(together with any supplemental amount to which we and the Company mutually agree),
without prejudice to the Company's right to advise us of any differences it may have with
respect to such invoice.  We have the right to apply to any outstanding invoice (including
amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash
on Account (as may be supplemented from time to time) at any time subject to (and without
prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or
affiliates extends (or solicits the possible interest in receiving) an offer of employment to a
principal or employee of FTI involved in this Engagement and agrees that it will pay FTI has
earned and will be entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's
annualized compensation, including any guaranteed or target bonus and equity award, to be paid
to FTI's former principal or employee that the Company or any of it subsidiaries or affiliates
hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with
respect to this Engagement.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express
prior approval of the bankruptcy court.  In most cases of this size and complexity, on request
of a party in interest, the bankruptcy court permits the payment of interim fees during the case.

Simpson Thacher
August 24, 2020

The Company agrees that, if asked to do so by us and otherwise reasonable under the circumstances, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

If a dispute develops about our fees, the Company may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

5.    **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions,

Simpson Thacher
August 24, 2020

warranties and representations, and shall supersede all previous proposals, letters of
engagement, undertakings, agreements, understandings, correspondence and other
communications, whether written or oral, regarding the Services.

6.      **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you,
we have undertaken a limited review of our records to determine FTI's professional
relationships with the Company.  As you may be aware, FTI is regularly retained by the
administrative agent and/or members of your lending group (or law firms retained by the
administrative agent or the lending group members). However, such representations are in
matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or
additional relationships that we believe would preclude us from performing the Services.
However, as you know, we are a large consulting firm with numerous offices throughout the
United States.  We are regularly engaged by new clients, which may include one or more of
the Potentially Interested Parties.  The FTI professionals providing services hereunder will not
accept an engagement that directly conflicts with this Engagement without your prior written
consent.

7.      **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing
both the confirmation below and the attached Standard Terms and Conditions and returning a
copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please
do not hesitate to contact Luke Schaeffer at 213.248.4678.

Yours faithfully,

FTI CONSULTING, INC.

By:    _____
       Luke Schaeffer
       Senior Managing Director

Attachment – As stated

Simpson Thacher
August 24, 2020

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**

Garrett ASASCO Inc.

By: _____

      Name:
      Title:

Date:  8/26/20 _____

Acknowledged & Agreed

Simpson Thacher & Bartlett LLP, as counsel to the Independent Director and Member of the Transaction Committee of the Board of Garrett ASASCO Inc.

By: _____
      Name: Sandy Qusba
      Title:  Partner

Date:_____

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services as set forth within the attached letter of engagement dated August 24, 2020.   The engagement letter and the Standard Terms and Conditions  (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.  The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.    Reports and Advice**

1.1     **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for the use and benefit of the Firm and the Transaction Committee and only in connection with the purpose in respect of which the Services are provided. Unless required by law, neither the Firm nor the Transaction Committee or the Company shall provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.    Information and Assistance**

2.1     **Provision of information and assistance** – Our performance of the Services is dependent upon the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2     **Punctual and accurate information** –Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  The Company shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3     **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof.  Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information.  Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period.  Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4     **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information.  There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material.  We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.    Additional Services**

3.1    **Responsibility for other parties** – The Company shall be solely responsible for the work and fees of any other party engaged by the Firm or the Transaction Committee to provide services in connection with the engagement regardless of whether such party was introduced to the Firm or the Transaction Committee by us.  Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.  Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to the Firm or the Transaction Committee, other than our agents or independent contractors engaged to provide Services, without your or the Company's written authorization.

**4.    Confidentiality**

4.1    **Restrictions on confidential information** – All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, no party will disclose other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

    4.1.1    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

    4.1.2    is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

    4.1.3    is or has been independently developed by the recipient.

4.2    **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3    **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4    **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5    **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

**5.    Termination**

5.1    **Termination of Engagement with notice** – The Firm or the Transaction Committee or FTI may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. Regardless of the terminating party, the Company will be responsible for all fees and expenses incurred by us through the date termination

notice is received.

5.2 **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

## 6. Indemnification and Liability Limitation

6.1 **Indemnification** - The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted  (an "Adverse Determination").  The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2 **Limitation of liability –** The Company agrees that no Indemnified Person shall be liable to the Company or its successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract.  Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

## 7. Governing Law, Jurisdiction and WAIVER OF JURY TRIAL

7.1 **Governing Law -** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2 **Jurisdiction** - The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

7.3 **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

FTI CONSULTING, INC

**Confirmation of Standard Terms and Conditions**

We agree to engage FTI Consulting, Inc. upon the terms set forth in these Standard Terms and Conditions as outlined above.

Simpson Thacher & Bartlett LLP, as counsel to the Independent Director and Member of the Transaction Committee of the Board of Garrett ASASCO Inc.

By: _____

       Name:  Sandy Qusba

       Title:  Partner

Date: _____

Garrett ASASCO Inc.

By: _____

       Name:

       Title:

Date: 8/26/20 _____