**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | x | |
| In re | : | Chapter 11 |
| | : | |
| GARRETT MOTION INC., *et al.*,[1] | : | Case No. 20-12212 (MEW) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | |
| | x | |

### FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Garrett Motion Inc. (the "**Borrower**") and each of its affiliated debtors, each as a debtor and debtor-in-possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002, 4001, 6004, and 9014 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), seeking, among other things, entry of this final order (this "**Final Order**"):

---

[1] The last four digits of Garrett Motion Inc.'s tax identification number are 3189. Due to the large number of debtor entities in these Chapter 11 Cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/garrettmotion. The Debtors' corporate headquarters is located at La Pièce 16, Rolle, Switzerland.

[2] Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the DIP Credit Agreement (as defined herein) or the Motion, as applicable.

(i)    authorizing the Borrower to obtain postpetition financing ("**DIP Financing**") consisting of a non-amortizing senior secured, super-priority and priming debtor-in-possession term loan facility in the aggregate principal amount of $200,000,000 (the "**DIP Facility**") pursuant to the terms and conditions set forth in that certain *Senior Secured Super-Priority Debtor-in-Possession Credit Agreement* (as amended, supplemented, or otherwise modified from time to time but as in effect on the Effective Date, the "**DIP Credit Agreement**"), by and among the Borrower, as borrower, the several banks and other financial institutions or entities from time to time party thereto as "Lenders" (as defined in the DIP Credit Agreement) (in such capacity, the "**DIP Lenders**"), Citibank, N.A., as administrative agent and collateral agent (in such capacity, together with its successors and permitted assigns, the "**DIP Agent**" and, collectively, with the DIP Lenders, the **"DIP Secured Parties**"), substantially in the form attached to the Interim Order (as defined herein), and the other DIP Documents;

(ii)    authorizing the Debtors other than the Borrower (such Debtors, the "**Guarantors**," and together with the Borrower, the "**DIP Loan Parties**") to jointly and severally guarantee the Borrower's obligations under the DIP Facility, as set forth in that certain *Debtor-In-Possession Guarantee Agreement* among the Guarantors and the DIP Agent (as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof, the "**Guarantee Agreement**");

(iii)    authorizing the DIP Loan Parties to execute, deliver and perform under the DIP Credit Agreement, the Guarantee Agreement, and all other loan documentation, including security agreements, pledge agreements, control agreements, intercreditor agreements/arrangements, mortgages, deeds, charges, guarantees, promissory notes, intercompany notes, certificates, instruments, intellectual property security agreements, notes, the Fee Letter, the Guarantee Agreement, and such other documents that may be reasonably requested by the DIP Agent and the DIP Lenders, in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, together with the DIP Credit Agreement, all Loan Documents, and this Final Order, the "**DIP Documents**");

(iv)    authorizing the DIP Loan Parties to incur loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees (including, without limitation, upfront fees, administrative agency fees, or exit fees, other fees and fees payable pursuant to the Fee Letter), costs, expenses and other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other Obligations due or payable under the DIP Documents (collectively, the "**DIP Obligations**"), and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

(v)    upon entry of this Final Order, authorizing the Borrower to borrow $200,000,000 of term loans under the DIP Facility, inclusive of any amounts drawn pursuant to the Interim Order (the "**Final Loan**");

(vi)     subject to the Carve Out (as defined herein), granting the DIP Obligations the status of allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code;

(vii)    granting to the DIP Agent, for itself and for the benefit of the DIP Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the DIP Loan Parties' estates (other than certain excluded property as provided in the DIP Documents (the "**Excluded Assets**")) and all proceeds thereof, including any Avoidance Proceeds (as defined herein), in each case subject to the Carve Out (as defined herein);

(viii)   authorizing the Debtors to use proceeds of the DIP Facility solely in accordance with this Final Order and the DIP Documents;

(ix)     authorizing and directing the Debtors to pay the principal, interest, premium, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable to the extent provided in, and in accordance with, the DIP Documents;

(x)      approval of the intercreditor arrangements (the "**DIP Intercreditor Arrangements**") set forth in **Exhibit 1** annexed to this Final Order as among the DIP Agent, on behalf of itself and each other DIP Secured Party, and the Prepetition Agent, on behalf of itself and each other Prepetition Secured Party, with respect to the Prepetition Collateral (as defined herein) and the DIP Collateral (as defined herein), and other property of the DIP Loan Parties, if any, on which a lien is granted in favor of the DIP Agent, on behalf of itself and the other DIP Secured Parties, pursuant to the DIP Documents and this Final Order;

(xi)     subject to the restrictions set forth in the DIP Documents and this Final Order, authorizing the Debtors to use the Prepetition Collateral, including Cash Collateral (as defined herein) of the Prepetition Secured Parties under the Prepetition Loan Documents (as defined herein);

(xii)    authorizing the Debtors to grant and provide, as of the Petition Date, adequate protection to the Prepetition Secured Parties for any diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral), resulting from, among other things, the imposition of the automatic stay under section 362 of the Bankruptcy Code (the "**Automatic Stay**"), the Debtors' use, sale, or lease of the Prepetition Collateral, and the priming of their respective interests in the Prepetition Collateral, and to make Adequate Protection Payments (as defined herein);

(xiii)   authorizing the Debtors to grant and provide, as of the Petition Date, adequate protection to the Prepetition Notes Secured Parties (as defined herein) for any diminution in value of their respective interests in the Prepetition Notes Collateral

(as defined herein), resulting from, among other things, the imposition of the Automatic Stay or the Debtors' use, sale, or lease of the Prepetition Notes Collateral, and to make Noteholders Adequate Protection Payments (as defined herein);

(xiv)    vacating and modifying the Automatic Stay to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the DIP Documents;

(xv)    subject to the Carve Out (as defined herein), authorizing the Debtors to waive (a) their right to surcharge the Prepetition Collateral and the DIP Collateral (as defined herein) (together, but excluding, for the avoidance of doubt, any Excluded Assets, the "**Collateral**") pursuant to section 506(c) of the Bankruptcy Code and (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(xvi)    waiving the equitable doctrine of "marshaling" and other similar doctrines (a) with respect to the DIP Collateral for the benefit of any party other than the DIP Secured Parties and (b) with respect to any of the Prepetition Collateral (including the Cash Collateral) for the benefit of any party other than the Prepetition Secured Parties (as defined herein); and

(xvii)    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order.

The Court having reviewed the Motion, the exhibits attached thereto, the *Declaration of Sean Deason in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 15] (the "**Deason First Day Declaration**") and the *Declaration of Scott Tandberg in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 16] (the "**Tandberg First Day Declaration**" and together with the Deason First Day Declaration, the "**First Day Declarations**"), the declaration of Bruce Mendelsohn in support of the Motion [D.I. 17 Ex. B] (the "**Mendelsohn Declaration**"), the supplemental declaration of Bruce Mendelsohn in support of the Motion [D.I. 94] (the "**Supplemental Mendelsohn Declaration**"), the second supplemental declaration of Bruce Mendelsohn in support of the Motion [D.I. 143] (the "**Second Supplemental Mendelsohn Declaration**"), the supplemental declaration of Sean Deason in support of the Motion [D.I. 95] (the "**Supplemental Deason Declaration**"), the declaration of Scott M. Tandberg in support of the Motion [D.I. 93] (the "**Tandberg DIP Declaration**"), and the supplemental declaration of

4

Scott M. Tandberg in support of the Motion [D.I. 144] (the "**Supplemental Tandberg DIP Declaration**", and, together with the Supplemental Mendelsohn Declaration, the Second Supplemental Mendelsohn Declaration, the Supplemental Deason Declaration, and the Tandberg DIP Declaration, the "**Supplemental Declarations**), and the declaration of Bruce Mendelsohn in support of the Final Order [D.I. 197] (the "**Mendelsohn Final DIP Declaration**"), the declaration of Sean Deason in support of the Final Order [D.I. 196] (the "**Deason Final DIP Declaration**"), and the declaration of Scott Tandberg in support of the Final Order [D.I. 198] (the "**Tandberg Final DIP Declaration**" and, together with the Mendelsohn Final DIP Declaration and Deason Final DIP Declaration, the "**Final DIP Declarations**" and, together with the First Day Declarations, Mendelsohn Declaration, and Supplemental Declarations the "**Supporting Declarations**"), the available DIP Documents, the pleadings and objections filed with the Court with respect to the Motion, the evidence submitted and arguments made at the first interim hearing held on September 22, 2020 (the "**First Interim Hearing**") and the supplemental evidence submitted and arguments made at the continued interim hearing held on October 6, 2020 (the "**Continued Interim Hearing**"; and together with the First Interim Hearing, the "**Interim Hearings**"); and the Court having entered an order on September 22, 2020 approving use of cash collateral on an interim basis [D.I. 56] (the "**Interim Cash Collateral Order**") and an order on September 30, 2020 extending the Outside Date (as defined in the Interim Cash Collateral Order); and the final hearing held on October 21, 2020 (the "**Final Hearing**"); and the Court having entered in the *Interim Order (I) Authorizing Debtors to  (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (Iv) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (Vi) Granting*

*Related Relief* [D.I. 123] (the "**Interim Order**"); and due and sufficient notice of the Final Hearing

having been given in accordance Bankruptcy Rules 2002, 4001(b), (c) and (d) and all applicable

Local Rules; and the opportunity for objection having been given under the circumstances; and the

Final Hearing having been held and concluded; and all objections, if any, to the final relief

requested in the Motion having been withdrawn, resolved or overruled by the Court; and it

appearing that approval of the final relief requested in the Motion is fair and reasonable and in the

best interests of the DIP Loan Parties and their estates, and is essential for the continued operation

of the DIP Loan Parties' businesses and the preservation of the value of the DIP Loan Parties'

assets; and it appearing that the DIP Loan Parties' entry into the DIP Documents is a sound and

prudent exercise of the Debtors' business judgment; and after due deliberation and consideration,

and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE
COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF
LAW**:[3]

A.      Petition Date.  On September 20, 2020 (the "**Petition Date**"), each of the Debtors

filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States

Bankruptcy Court for the Southern District of New York (the "**Court**").

B.      Debtors in Possession.  The Debtors have continued in the management and

operation of their businesses and properties as debtors in possession pursuant to sections 1107 and

1108 of the Bankruptcy Code.

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To
the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To
the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Chapter 11 Cases, the

Motion, and the parties and property affected hereby pursuant to consider this matter pursuant to

28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States*

*District Court for the Southern District of New York*, dated January 31, 2012.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with

Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409.

D.    <u>Committee Formation</u>.  On October 5, 2020, the United States Trustee for the

Southern District of New York (the "**U.S**. **Trustee**") appointed an official committee of unsecured

creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the

"**Committee**").

E.    <u>Notice</u>.  The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and

(c)(2).  Proper, timely, adequate and sufficient notice of the Motion has been provided in

accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or

further notice of the Motion or the entry of this Final Order shall be required.

F.    <u>Debtors' Stipulations</u>.  Subject to the limitations contained in paragraph 24 hereof,

and after consultation with their attorneys and financial advisors, the Debtors, on their behalf and

on behalf of their estates, admit, acknowledge, stipulate and agree to the following:

(i)    *Prepetition Credit Facility*.  Pursuant to that certain Credit Agreement,
dated as of September 27, 2018, as amended by the First Amendment to the Credit Agreement,
dated as of June 12, 2020 (as further amended, restated, amended and restated, supplemented,
waived, or otherwise modified from time to time, the "**Prepetition Credit Agreement**", and
collectively with the other Loan Documents (as defined in the Prepetition Credit Agreement) and
any other agreements and documents executed or delivered in connection therewith, each as may
be amended, restated, amended and restated, supplemented, waived, or otherwise modified from
time to time, the "**Prepetition Loan Documents**"), among (a) Garrett Motion Inc., as parent,
Garrett LX III S.À R.L., Garrett Borrowing LLC, and Garrett Motion S.À R.L (formerly known
as Honeywell Technologies S.À R.L.), as borrowers (in such capacity, the "**Prepetition**

**Borrowers**"), (b) JPMorgan Chase Bank, N.A., as administrative agent and collateral agent (in such capacities, the "**Prepetition Agent**"), the Intermediate Holdcos (as defined in the Prepetition Credit Agreement), (c) the Term Lenders (as defined in the Prepetition Credit Agreement) (collectively, in such capacity, the "**Prepetition Term Loan Lenders**"), (d) the Issuing Banks (as defined in the Prepetition Credit Agreement) (in such capacity, the "**Prepetition Issuing Banks**"), and (e) the Revolving Lenders (as defined in the Prepetition Credit Agreement) (collectively, in such capacity, the "**Prepetition Revolving Lenders**" and, together with the Prepetition Term Loan Lenders, the "**Prepetition Lenders**") (the Prepetition Lenders, collectively with the Prepetition Agent, the Prepetition Issuing Banks and all other holders of Prepetition Credit Facility Debt (as defined herein), the "**Prepetition Secured Parties**"), (1)(x) the Prepetition Issuing Banks issued letters of credit in support of the Prepetition Borrowers and (y) the Prepetition Revolving Lenders provided revolving loans and other financial accommodations to the Prepetition Borrowers pursuant to the Prepetition Loan Documents (the "**Prepetition Revolving Credit Facility**") and (2) the Prepetition Term Loan Lenders provided term loans to the Prepetition Borrowers pursuant to the Prepetition Loan Documents (the "**Prepetition Term Loan Credit Facility**" and, together with the Prepetition Revolving Credit Facility, the "**Prepetition Credit Facilities**").  Pursuant to that certain Guarantee Agreement, dated as of September 27, 2018 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time), the Debtors party thereto (the "**Prepetition Guarantors**") guaranteed on a joint and several basis the obligations under the Prepetition Loan Documents.

(ii)     _Prepetition Credit Facility Debt._  As of the Petition Date, the Prepetition Borrowers were justly and lawfully indebted and liable to the Prepetition Secured Parties, without defense, counterclaim or offset of any kind, in respect of the aggregate principal amount of not less than $1.591 billion[4] including approximately (a) $510,083,037 in outstanding principal amount of Revolving Loans (as defined in the Prepetition Credit Agreement), (b) $2,960,500[5] of outstanding Letters of Credit (as defined in the Prepetition Credit Agreement), and (c) $1,080,921,710 in outstanding principal amount of Term Loans (as defined in the Prepetition Credit Agreement) (collectively, together with accrued and unpaid interest, fees, expenses, disbursements, and any reimbursement obligations (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product, employee credit card program, and hedging or other derivative instruments obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Borrowers' or the Prepetition Guarantors' obligations pursuant to, or secured by, the Prepetition Credit Agreement, including all Obligations (as defined in the Prepetition Credit Agreement), and all interest, fees, costs, and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition Credit Facility Debt**"), which Prepetition Credit Facility Debt is guaranteed on a joint and several basis by each of the Prepetition Guarantors.  As of the Petition Date, the Prepetition Credit Facility Debt includes default interest accruing at an additional 2% pursuant to Section 2.13 of the

---

[4]     This number represents an approximation based on a conversion of the Revolving Loans and certain Term Loans, which are denominated in Euros, to U.S. dollars.

[5]     This number represents an approximation based on a conversion of the Letters of Credit which are denominated in Euros and Sterling, to U.S. dollars.

Prepetition Credit Agreement ("**Default Interest**"). As of the Petition Date, Garrett Motion Sárl was justly and lawfully indebted and liable to Goldman Sachs International ("**GSI**"), as counterparty under that certain ISDA Master Agreement dated as of September 27, 2018, (as amended, supplemented or modified, and together with all schedules, annexes and exhibits thereto, and all Confirmations exchanged pursuant to Transactions entered into in connection therewith) (the "**GSI Hedge Agreement**"), without defense, counterclaim, or offset of any kind, in the amount of no less than €8,516,891.86 in outstanding Secured Hedging Obligations (as defined in the Prepetition Credit Agreement) plus any accrued and unpaid interest, fees, premiums, expenses, including legal fees, and disbursements and any other amounts or obligations due or owing in respect thereof (the "**GSI Hedge Claim**"). For purposes of this Final Order, (i) the GSI Hedge Claim is deemed to be Prepetition Credit Facility Debt, (ii) the GSI Hedge Agreement is deemed to be a Prepetition Loan Document, (iii) GSI is deemed to be a Prepetition Lender and (iv) any and all prepetition liens granted in connection with the GSI Hedge Claim or GSI Hedge Agreement are deemed to be Prepetition Credit Facility Liens.

       (iii)    <u>Prepetition Credit Facility Liens and Prepetition Collateral</u>. As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Prepetition Borrowers and the Prepetition Guarantors each granted to the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, a security interest in and continuing lien on (the "**Prepetition Credit Facility Liens**") substantially all of their assets and property, including Cash Collateral and Prepetition Notes Collateral (as defined herein), subject to certain limited exclusions as set forth in the Prepetition Loan Documents (the "**Prepetition Collateral**").

       (iv)    <u>Validity, Perfection and Priority of Prepetition Credit Facility Liens and Prepetition Debt</u>. The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Credit Facility Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Credit Facility Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens senior by operation of law or otherwise permitted by the Prepetition Loan Documents (solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Credit Facility Liens as of the Petition Date, the "**Prepetition Permitted Prior Liens**"); (c) the Prepetition Credit Facility Debt constitutes legal, valid, binding, and non-avoidable obligations of the Prepetition Borrowers and Prepetition Guarantors enforceable in accordance with the terms of the applicable Prepetition Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Credit Facility Liens or Prepetition Credit Facility Debt exist, and no portion of the Prepetition Credit Facility Liens or Prepetition Credit Facility Debt is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtors waive, discharge, and release any right to challenge any of the Prepetition Credit Facility Debt, the priority of the Debtors' obligations thereunder, and the validity, priority, enforceability, seniority, perfection, or extent of the Prepetition Credit Facility Liens securing the Prepetition Credit Facility Debt.

       (v)    <u>No Control</u>. None of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtors'

operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Loan Documents.

(vi)    <u>No Claims or Causes of Action</u>.  No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Parties (in their capacity as such) under any agreements by and among the Debtors and any Prepetition Secured Party that is in existence as of the Petition Date.  For the avoidance of doubt, the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Credit Facilities or the GSI Hedge Agreement.

(vii)    <u>Good Faith</u>. The Prepetition Secured Parties have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens (as defined herein) and the Adequate Protection Liens (as defined herein), any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.

(viii)    <u>Release</u>.  Effective upon satisfaction of the conditions set forth in paragraph 24, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its and their past, present and future predecessors, successors, subsidiaries, and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Secured Parties and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, and Representatives (as defined herein) (collectively, the "**Prepetition Released Parties**"), of and from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Prepetition Loan Documents the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Prepetition Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order, including, without limitation, (a) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (b) any and all claims and causes of action arising under the Bankruptcy Code, and (c) any and all claims and causes of actions with respect to the validity, priority, perfection, enforceability or avoidability of the liens or claims of the Prepetition Secured Parties (collectively, the "**Prepetition Released Claims**").

(ix)    <u>Prepetition Indenture</u>.  Pursuant to that certain indenture, dated as of September 27, 2018 (the "**Prepetition Indenture**"), among Garrett Motion, as Parent, Debtor LuxCo 1, as Issuer, Debtor Garrett Borrowing LLC, as Co-Issuer (collectively, the "**Prepetition Issuers**"), the guarantors identified therein, Deutsche Trustee Company Limited, as trustee (in such capacity, the "**Prepetition Indenture Trustee**"), Deutsche Bank AG, as security agent and paying agent (in such capacity, the "**Prepetition Notes Security Agent**"), and Deutsche Bank Luxembourg S.A., as registrar and transfer agent (in such capacity, the "**Prepetition Transfer Agent**," and together with all holders of the Prepetition Senior Notes (in such capacity, the "**Prepetition Secured Noteholders**"), the Prepetition Indenture Trustee and the Prepetition Notes Security Agent, the "**Prepetition Notes Secured Parties**"), the Prepetition Issuers issued €350 million in principal amount of secured senior notes (the "**Prepetition Senior Notes**").  Pursuant to that certain Guarantee Agreement, dated as of September 27, 2018, the Prepetition Guarantors guaranteed on a joint and several basis the obligations under the Prepetition Indenture.

(x)    <u>Prepetition Senior Notes Debt</u>.  As of the Petition Date, the Prepetition Issuers validly issued and were justly and lawfully indebted and liable to the Prepetition Notes Secured Parties, without defense, counterclaim or offset of any kind, in respect of the aggregate principal amount of not less than €350 million (collectively, together with accrued and unpaid interest, fee, expenses, disbursements, and any reimbursement obligations (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Issuers or the Prepetition Guarantors' obligations pursuant to, or secured by, the Prepetition Indenture, and all interest, fees, costs, and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition Senior Notes Debt**"), which Prepetition Senior Notes Debt is guaranteed on a joint and several basis by each of the Prepetition Guarantors.

(xi)    <u>Prepetition Senior Note Liens and Prepetition Notes Collateral</u>.  As more fully set forth in the Prepetition Indenture, prior to the Petition Date, the Prepetition Issuers and the Prepetition Guarantors each granted to the Prepetition Notes Security Agent, for the benefit of itself and the other Prepetition Notes Secured Parties, a security interest in and continuing lien on (the "**Prepetition Notes Liens**") certain of their assets and property (the "**Prepetition Notes Collateral**").

(xii)    <u>Validity, Perfection and Priority of Prepetition Notes Liens</u>.  The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Notes Liens on the Prepetition Notes Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Notes Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Notes Liens were junior in priority over certain other liens (including, without limitation, the Prepetition Credit Facility Liens) on the Prepetition Collateral, (c) the Prepetition Senior Notes Debt constitutes legal, valid, binding, and non-avoidable obligations of the Prepetition Issuers and Prepetition Guarantors enforceable in accordance with the terms of the applicable Prepetition Indenture; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Notes Liens or Prepetition Senior Notes Debt exist, and no portion of the Prepetition Notes Liens or Prepetition Senior Notes Debt is subject to any challenge or defense, including

avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (e) the Debtors waive, discharge, and release any right to challenge any of the Prepetition Senior Notes Debt, the priority of the Debtors' obligations thereunder, and the validity, priority, enforceability, seniority, perfection, or extent of the Prepetition Notes Liens securing the Prepetition Senior Notes Debt.

(xiii)    <u>No Control</u>.    None of the Prepetition Notes Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Indenture.

(xiv)    <u>Prepetition Notes Secured Parties; No Claims or Causes of Action</u>.    No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Notes Secured Parties (in their capacity as such) under any agreements by and among the Debtors and any Prepetition Notes Secured Party that is in existence as of the Petition Date. For the avoidance of doubt, the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Notes Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Indenture.

(xv)    <u>Prepetition Notes Secured Parties Release</u>.    Effective upon satisfaction of the conditions set forth in paragraph 24, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its and their past, present and future predecessors, successors, subsidiaries, and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Notes Secured Parties and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, and Representatives (as defined herein) (collectively, the "**Notes Released Parties**"), of and from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Prepetition Indenture, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Notes Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order, including, without limitation, (a) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (b) any and all claims and causes of action arising under the Bankruptcy Code, and (c) any and all claims and causes of actions with respect to the validity, priority, perfection, enforceability or avoidability of the liens or claims of the Prepetition Notes Secured Parties (collectively, the "**Notes Released Claims**").

(xvi)   Intercreditor Agreement.  That certain Intercreditor Agreement, dated as of September 27, 2018 (as amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "**Prepetition Intercreditor Agreement**"), by and between the Borrower, Garrett LX I S.à.r.l., Garrett LX II S.à.r.l., Garrett LX III S.à.r.l., Garrett Motion S.à.r.l. (formerly known as Honeywell Technologies S.à.r.l.), Garrett Borrowing LLC, the other Grantors (as defined in the Prepetition Intercreditor Agreement) party thereto, the Prepetition Agent, the Senior Subordinated Note Trustee (as defined in the Prepetition Intercreditor Agreement), and the Senior Subordinated Collateral Agent (as defined in the Prepetition Intercreditor Agreement), (i) is a valid and enforceable "subordination agreement" under section 510(a) of the Bankruptcy Code; (ii) provides the Prepetition Secured Parties with, among other things, senior liens and payment priorities relative to the Prepetition Notes Secured Parties with respect to the Prepetition Collateral and proceeds thereof; (iii) shall remain in full force and effect; (iv) shall, subject to the DIP Intercreditor Arrangements, continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties and the Prepetition Notes Secured Parties (including the relative priorities, rights, and remedies of such parties with respect to the replacement liens, administrative expense claims, and superpriority administrative expense claims granted or the amounts payable by the Debtors under this Final Order or otherwise); and (v) shall not be deemed to be amended, altered, or modified by the terms of this Final Order, the DIP Intercreditor Arrangements, or any other DIP Document, unless expressly set forth herein or therein.

(xvii)   Prepetition Secured Parties' Interest in Cash Collateral.  All of the following constitutes cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, "**Cash Collateral**") of the Prepetition Secured Parties, and the Prepetition Secured Parties have a legal, valid, binding, unavoidable, and properly perfected security interest in all such Cash Collateral: all of the Debtors' existing cash and all cash (i) constituting Prepetition Collateral (including cash and other amounts on deposit or maintained in any bank account or accounts of the Debtors); (ii) constituting proceeds, products, rents, or profits of property of Prepetition Collateral (including any amounts generated by the collection of accounts receivable, the sale of inventory, or other disposition of the Prepetition Collateral existing as of the Petition Date or arising or acquired after the Petition Date); (iii) subject to the Prepetition Lenders' rights of setoff; or (iv) any payment due from a Secured Hedge Counterparty to a Debtor under a Secured Hedge Agreement and paid to such Debtor as provided in paragraph 45 hereof.

G.   Prepetition Permitted Prior Liens; Continuation of Prepetition Credit Facility Liens.

Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition

Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover,

nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the

DIP Loan Parties, the DIP Agent, the DIP Secured Parties, the Prepetition Agent (acting in

accordance with the terms of the Prepetition Loan Documents and at the direction of the Prepetition

Required Lenders), or the Prepetition Secured Parties to challenge the validity, priority,

enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted
Prior Lien and/or any other purportedly prior security interests.  The Prepetition Credit Facility
Liens, and the DIP Liens that prime the Prepetition Credit Facility Liens, are continuing liens and
the DIP Collateral and the Prepetition Collateral is and will continue to be encumbered by such
liens in light of the integrated nature of the DIP Facility, the DIP Documents and the Prepetition
Loan Documents.

        H.       <u>Findings Regarding DIP Financing and Use of Cash Collateral</u>.

        (i)       Good and sufficient cause has been shown for the entry of this Final Order
and for authorization of the DIP Loan Parties to obtain financing pursuant to the DIP Credit
Agreement.

        (ii)      <u>Need for DIP Financing and Use of Cash Collateral</u>. The DIP Loan Parties
have an immediate and critical need to obtain the DIP Financing and to use Prepetition Collateral
in order to permit, among other things, the orderly continuation of the operation of their businesses,
to maintain business relationships with vendors, suppliers and customers, to make payroll, to make
capital expenditures, to satisfy other working capital and operational needs and to fund expenses
of these Chapter 11 Cases.  The access of the DIP Loan Parties to sufficient working capital and
liquidity through the use of Cash Collateral and other Prepetition Collateral, the incurrence of new
indebtedness under the DIP Documents and other financial accommodations provided under the
DIP Documents are necessary and vital to the preservation and maintenance of the going concern
values of the DIP Loan Parties and to a successful reorganization of the DIP Loan Parties.

        (iii)     <u>No Credit Available on More Favorable Terms</u>. The DIP Facility is the best
source of debtor-in-possession financing reasonably available to the Debtors at this time.  Given
their current financial condition, financing arrangements, and capital structure, the DIP Loan

Parties have been and continue to be unable to obtain financing from sources other than the DIP

Lenders on terms more favorable than under the DIP Documents.  The DIP Loan Parties are unable

to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as

an administrative expense.  The DIP Loan Parties are also unable to obtain: (a) adequate unsecured

credit having priority over that of administrative expenses of the kind specified in sections 503(b),

507(a), and 507(b) of the Bankruptcy Code; (b) adequate credit secured solely by a lien on property

of the Debtors and their estates that is not otherwise subject to a lien; or (c) adequate credit secured

solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing

on a postpetition basis on better terms is not available without granting the DIP Secured Parties,

the DIP Liens and the DIP Superpriority Claims (as defined herein) and incurring the Adequate

Protection Obligations (as defined herein), in each case subject to the Carve Out, under the terms

and conditions set forth in this Final Order and in the DIP Documents.

     (iv)    <u>Use of Cash Collateral and Proceeds of the DIP Facility</u>.  As a condition to

entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and the

authorization to use the Prepetition Collateral, the DIP Agent, the DIP Lenders, and the Prepetition

Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility and the

Prepetition Collateral shall be used in a manner consistent with the terms and conditions of this

Final Order and the DIP Documents and in accordance with an Approved Budget (as defined

herein) (including with respect to any variances as permitted in the DIP Documents), and the

Debtors have prepared and delivered to the advisors to the DIP Secured Parties and the Prepetition

Secured Parties an initial budget (the "**Initial DIP Budget**"), attached as Schedule 1 to the Interim

Order.  The Initial DIP Budget reflects, among other things, the Debtors' anticipated cash receipts

and anticipated disbursements for each calendar week over a thirteen week period, in form and

substance satisfactory to the DIP Required Lenders.[6]  The Initial DIP Budget may be modified,

amended and updated from time to time in accordance with the DIP Credit Agreement, subject to

approval by the DIP Required Lenders and once approved shall supplement and replace the Initial

DIP Budget (the Initial DIP Budget and each subsequent approved budget, shall constitute without

duplication, an "**Approved Budget**").  The DIP Secured Parties are relying, in part, upon the DIP

Loan Parties' agreement to comply with the Approved Budget (subject to only permitted

variances), the other DIP Documents and this Final Order in determining to enter into the

postpetition financing arrangements provided for in this Final Order.

(v)     Adequate Protection and Prepetition Secured Parties' Consent.  Subject to

paragraph 24, the Prepetition Secured Parties are granted adequate protection as and to the extent

set forth in this Final Order pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code

(the "**Adequate Protection**").  Based on the Motion, the Supporting Declarations, and the record

presented to the Court at the Interim Hearings and Final Hearing, the terms of the proposed

Adequate Protection and of the use of the Prepetition Collateral are fair and reasonable, reflect the

DIP Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent

value and fair consideration for the use of the Prepetition Collateral, including the Cash Collateral,

and the Prepetition Agent, acting at the direction of the "Required Lenders" (as such term is

defined in the Prepetition Credit Agreement, the "**Prepetition Required Lenders**"), has consented

to the use of the Prepetition Collateral, including the Cash Collateral, and the priming of the

Prepetition Credit Facility Liens by the DIP Liens pursuant to the DIP Intercreditor Arrangements

and the other DIP Documents; *provided* that nothing in this Final Order or the DIP Documents

---

[6]     "**DIP Required Lenders**" shall mean DIP Lenders having Term Loans and unused Commitments (each
as defined in the DIP Credit Agreement) representing more than 50% of the sum of the outstanding
Term Loans and unused Commitments at such time.

shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Final Order and in the context of the DIP Financing authorized by this Final Order to the extent such consent has been or will be given, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties, and the rights of any other party in interest, including the DIP Loan Parties, to object to such relief are hereby preserved.

(vi)    <u>Good Faith and Arms' Length Negotiations</u>. Subject to paragraph 24, the Adequate Protection and the use of the Prepetition Collateral have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured Parties, and the Prepetition Secured Parties, and all of the DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: all loans made to and guarantees issued by the DIP Loan Parties pursuant to the DIP Documents and any DIP Obligations shall be deemed to have been extended by the DIP Agent and the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Secured Parties (and the successors and assigns thereof) shall be granted the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

I.      Noteholders Adequate Protection.  Subject to paragraph 24, the Prepetition Notes Secured Parties are granted adequate protection as and to the extent set forth in this Final Order pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code (the "**Noteholders Adequate Protection**").  Based on the Motion, the Supporting Declarations, and the record presented to the Court at the Interim Hearings and Final Hearing, the terms of the proposed Noteholders Adequate Protection and of the use of the Prepetition Notes Collateral are fair and reasonable, reflect the DIP Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Notes Collateral and the Prepetition Indenture Trustee, on behalf of the Prepetition Secured Noteholders, has consented to the priming of the Prepetition Notes Lien by the DIP Liens pursuant to section 6.01 of the Prepetition Intercreditor Agreement.

J.      Section 506(c) and 552(b) of the Bankruptcy Code.  In light of, among other things: (i) the superpriority of the Carve Out (as defined below) with respect to the Prepetition Credit Facility Liens; (ii) the DIP Agent's and the DIP Lenders' agreement that their liens and superpriority claims shall be subject to the Carve Out; (iii) the Prepetition Secured Parties' agreement that their respective liens and claims, including any adequate protection liens and claims, shall be subject to the Carve Out (as defined below) and subordinate to the DIP Liens (as defined below), except as otherwise set forth herein; (iv) the execution and delivery of any documents or agreements requested by the DIP Agent to the Prepetition Agent, on behalf of itself and the other Prepetition Secured Parties, pursuant to the DIP Intercreditor Arrangements, including any certificates, pledges, mortgages, deeds, instruments, security agreements, and/or notes, in accordance with the DIP Intercreditor Arrangements by the Prepetition Agent, on behalf of itself and the other Prepetition Secured Parties; (v) authority to use Cash Collateral as provided

18

herein; and (vi) the funding made available pursuant to the DIP Facility, (a) the Prepetition Secured

Parties are granted a waiver of any "equities of the case" exception under section 552(b) of the

Bankruptcy Code and (b) the DIP Secured Parties and the Prepetition Secured Parties are each

granted a waiver of the provisions of section 506(c) of the Bankruptcy Code as provided herein.

K.      Relief Essential.  Consummation of the DIP Financing and the use of Prepetition

Collateral, in accordance with this Final Order and the DIP Documents are in the best interests of

the DIP Loan Parties' estates and consistent with the DIP Loan Parties' exercise of their fiduciary

duties.

L.      Final Hearing.  Notice of the Final Hearing and the relief requested in the Motion

has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier, or hand

delivery to certain parties in interest, including the Notice Parties.  The Debtors have made

reasonable efforts to afford the best notice possible under the circumstances, and no other notice

is required in connection with the relief set forth in this Final Order.

Based upon the foregoing findings and conclusions, the Motion and the record before the

Court with respect to the Motion, and after due consideration and good and sufficient cause

appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      Motion Granted.  The Motion is granted to the extent provided herein on an final

basis.  The DIP Facility, the borrowing of the Final Loan thereunder, and the guaranty by the DIP

Guarantors of such borrowing (and related obligations under the DIP Facility), is hereby

authorized and approved, and the use of Cash Collateral on a final basis is authorized, in each case

subject to the terms and conditions set forth in the DIP Documents and this Final Order.  All

objections to this Final Order, to the extent not withdrawn, waived, settled, or resolved, are hereby

denied and overruled on the merits. This Final Order shall become effective immediately upon its entry.

      2.    <u>Authorization of the DIP Financing and the DIP Documents</u>.

      (a)    The DIP Facility is hereby approved. The DIP Loan Parties are hereby expressly and immediately authorized and empowered to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Documents and such other and further acts as may be necessary, appropriate or desirable in connection therewith. The Borrower is hereby authorized to borrow money pursuant to the DIP Credit Agreement and each DIP Guarantor is hereby authorized to provide a guaranty of payment in respect of the Borrower's obligations with respect to such borrowings, subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents (and subject to and in accordance with the Approved Budget (subject to any permitted variances) and the Cash Management Order (as defined herein)).

      (b)    In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party is authorized to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents (including, without limitation, the execution or recordation of pledge and security agreements, mortgages, financing statements and other similar documents), and to pay the principal, interest, premiums, fees, expenses, and other amounts described in the DIP Documents as such amounts (including, without limitation, legal and other professional fees and expenses of the DIP Agent and the DIP Lenders) become due and payable in accordance with the terms and conditions of the DIP Documents, without need to obtain further Court approval, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and to take any other related actions

that may be necessary, desirable or appropriate, all to the extent provided in this Final Order or the

DIP Documents, including, without limitation:

(i)        the execution and delivery of, and performance under, each

of the DIP Documents;

(ii)        subject to paragraph 37 hereof, the execution and delivery of,

and performance under, one or more amendments, waivers, consents or other modifications to and

under the DIP Documents, in each case, in such form as the DIP Loan Parties and the DIP Agent

(acting in accordance with the terms of the DIP Credit Agreement and at the direction of the DIP

Required Lenders) may agree, it being understood that no further approval of this Court shall be

required for any authorizations, amendments, waivers, consents or other modifications to and

under the DIP Documents (and any fees and other expenses (including attorneys', accountants',

appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other

obligations paid in connection therewith) that do not shorten the maturity of the extensions of

credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder;

*provided* that, for the avoidance of doubt, updates and supplements to the Approved Budget

required to be delivered by the DIP Loan Parties under the DIP Documents shall not be considered

amendments or modifications to the Approved Budget or the DIP Documents;

(iii)        the incurrence of, and the non-refundable payment to the

DIP Agent and the DIP Secured Parties, as the case may be, of all fees, including unused facility

fees, amendment fees, servicing fees, audit fees, liquidator fees, structuring fees, financing fees,

administrative agent's, collateral agent's or security trustee's fees, upfront fees, closing fees,

commitment fees, exit fees, closing date fees, backstop fees, original issue discount fees or agency

fees, indemnities and professional fees (which fees shall be irrevocable, and shall be, and shall be

deemed to have been, approved upon entry of this Final Order, whether or not the fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification and expense reimbursement obligations, in each case under the DIP Credit Agreement or DIP Documents (or under any separate letter agreements, including, without limitation, any fee letters between any or all DIP Loan Parties, on the one hand, and any of the DIP Agent and/or DIP Secured Parties, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, the fees and expenses of the professionals retained by, or on behalf of, any of the DIP Agent or DIP Secured Parties, in each case, as provided for in the DIP Documents (collectively, the "**DIP Fees and Expenses**"), shall be without the need to file retention or fee applications or to provide notice to any party, other than as provided in paragraph 23 hereof; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and the DIP Superpriority Claims and perfection of the DIP Liens and DIP Superpriority Claims as permitted herein and therein.

3.    <u>Direction of the Prepetition Agent</u>.  Pursuant to the terms of this Final Order, the Prepetition Agent is authorized and instructed to (i) file, execute, deliver, and perform under any documents in any jurisdiction (including in any foreign jurisdiction), including, without limitation, any intercreditor agreements, lien subordination agreements, security agreements, pledge

agreements, amendments, waivers, consents, powers of attorney (solely with respect to foreign

jurisdictions), or release agreements, in each case, which may be reasonably necessary to give

effect to this Final Order, the transactions contemplated herein, the DIP Credit Agreement and the

RSA (as defined in the DIP Credit Agreement); (ii) where reasonably necessary or requested under

local law to give effect to the priming Liens in favor of the DIP Lenders under the DIP Facility,

execute, file, amend, amend and restate, release or replace guarantee or collateral agreements or

any other similar documents so that the DIP Agent can act as the collateral agent thereunder and

permit the DIP Agent to hold collateral on behalf of the DIP Lenders and/or the Prepetition

Lenders, in each case, solely to the extent required to reflect the lien priority expressly set forth in

this Final Order; and (iii) subject to the other terms and conditions of this Final DIP Order, consent

and take all reasonably necessary actions to give effect to the priming liens and security interests,

use of Cash Collateral, adequate protection arrangements, intercreditor agreements and other

documents, instruments and arrangements to give effect to this Final Order  (clauses (i) through

(iii) above, collectively, the "**Direction**"), in each case, subject to the payment of all fees, costs

and other expenses (including attorneys', accountants', appraisers' and financial advisors' fees),

amounts, charges, costs, indemnities and other obligations in connection therewith.  For purposes

of the foregoing, no further consent, approval or direction of the Prepetition Lenders or this Court

shall be required prior to the performance under or execution of such documents as contemplated

in clauses (i) through (iii) above and any such documents necessary to effectuate the actions in

clauses (i) through (iii) above shall be in a form acceptable to the Prepetition Agent.   The

Prepetition Agent, which was paid the funds by the Debtors prior to the Petition Date for the

purpose of paying the Priming Consent Fee (as defined in the RSA) to those Prepetition Lenders

eligible to receive such Priming Consent Fee pursuant to the RSA, is authorized and instructed to

pay such Priming Consent Fee to such eligible Prepetition Lenders, and any remaining funds held

by the Prepetition Agent for the purpose of paying Priming Consent Fees that the Prepetition Agent

holds after the payment to all eligible Prepetition Lenders shall be promptly delivered to the

Debtors as reasonably practicable; *provided*, *however*, to the extent that any such Priming Consent

Fees must be repaid as a result of a successful Challenge (as defined herein) under paragraph 24,

such amounts shall be recharacterized as repayment of principal of the Prepetition Credit Facility

Debt held by the applicable Prepetition Lenders.  The Prepetition Agent hereby is fully protected

in conclusively relying upon this Final Order in connection with the Direction and carrying out

any of the foregoing.

4.      DIP Obligations.  Upon execution and delivery of the DIP Documents, the DIP

Documents shall constitute legal, valid, binding and non-avoidable obligations of the DIP Loan

Parties, enforceable against each DIP Loan Party and its estate in accordance with the terms of the

DIP Documents and this Final Order, and any successors thereto, including any trustee appointed

in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the

conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to

any of the foregoing (collectively, the "**Successor Cases**").  Upon execution and delivery of the

DIP Documents, the DIP Obligations will include all loans and any other indebtedness or

obligations, contingent or absolute, which may now or from time to time be owing by any of the

DIP Loan Parties to any of the DIP Agent or DIP Secured Parties, in each case, under, or secured

by, the DIP Documents (including this Final Order), including all principal, interest, costs, fees,

expenses, indemnities and other amounts under the DIP Documents (including this Final Order).

The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations, subject to the

terms of the DIP Documents.  No obligation, payment, transfer, or grant of security hereunder or

under the DIP Documents to the DIP Agent and/or the DIP Secured Parties (including their Representatives) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.  In addition, any Letter of Credit (as defined in the Prepetition Credit Agreement) that is renewed after the Petition Date shall be treated the same as (and afforded the same protections of) a DIP Obligation hereunder.

5.    <u>No Obligation to Monitor</u>.  No DIP Lender or the DIP Agent shall have any obligation or responsibility to monitor any DIP Loan Party's use of the DIP Financing, and each DIP Lender or the DIP Agent may rely upon each DIP Loan Party's representations that the amount of DIP Financing requested at any time and the use thereof are in accordance with the requirements of this Final Order, the DIP Documents, and Bankruptcy Rule 4001(c)(2).

6.    <u>Application of Proceeds of Collateral</u>.  As a condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facility, and authorization to use Cash Collateral, the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties have agreed that as of and commencing on the date of entry of this Final Order, and to the extent set forth herein, the Debtors shall apply the proceeds of DIP Collateral solely in accordance with this Final Order, the Approved Budget, the DIP Documents, and the DIP Intercreditor Arrangements.  For the avoidance of doubt, the prepetition liens of the Prepetition Secured Parties shall attach to the

proceeds of any Prepetition Collateral and the Adequate Protection Liens of the Prepetition

Secured Parties shall attach to the proceeds of any Collateral, in each case in accordance with the

terms and priorities set forth in this Final Order.

      7.   <u>Carve Out</u>.

      (a)   As used in this Final Order, the term "**Carve Out**" means the sum of the

following:

      (i)   <u>Clerk and U.S. Trustee Fees</u>. All fees required to be aid to the clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iv) below, and without being subject to any budget) (collectively, the "**Statutory Fees**").

      (ii)   <u>Chapter 7 Trustee Fees</u>.  All reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code and allowed by this Court in an amount not to exceed $50,000 (without regard to the notice set forth in (iv) below).

      (iii)   <u>Allowed Professional Fees Incurred Prior to Carve Out Notice</u>. To the extent allowed by this Court at any time, whether by interim or final compensation order, all accrued and unpaid claims for fees, costs, and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (collectively, the "**Debtor Professionals**") and retained by any official committee appointed in the Bankruptcy Cases pursuant to section 1103 of the Bankruptcy Code (collectively, the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**," and the fees, costs and expenses of Professional Persons other than any such financing transaction fees attributed to the Debtors securing the DIP Facility, the "**Professional Fees**"), at any time on or prior to the first business day after delivery by the DIP Agent of a Carve Out Notice (as defined below), whether allowed by this Court before or after delivery of a Carve Out Notice and without regards to whether such fees, costs, and expenses are provided for in the Approved Budget or were invoiced after the Carve Out Trigger Date (as defined below).

      (iv)   <u>Allowed Professional Fees Incurred After a Carve Out Notice</u>. Any Professional Fees of the Professional Persons incurred after the first Business Day following delivery by the DIP Agent of the Carve Out

Notice (as defined below), to the extent allowed by this Court at any time, whether by interim order, procedural order or otherwise, in an aggregate amount not to exceed $6,000,000 (the amount set forth in this clause (iv) being the "**Post Carve Out Cap**"), in each case subject to the limits imposed by paragraph 25 of this Final Order; *provided*, that nothing herein shall be construed to impair the ability of any party to object to the allowance of the fees, expenses, reimbursement or compensation described in this paragraph 7(a) on any grounds.

(b)     For purposes of the foregoing, "**Carve Out Notice**" shall mean a written notice delivered by the DIP Agent (at the direction of the DIP Required Lenders) to the Debtors and their counsel, the Office of the United States Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined herein).  The Carve Out Notice shall describe the Event of Default that is alleged to continue under the DIP Documents or this Final Order, and shall expressly state that the Post Carve Out Cap has been invoked and the termination of funding under the DIP Facility (or after the payment in full of the DIP Obligations, the termination of the use of Cash Collateral by the Prepetition Agent).

(c)     On the day on which a Carve Out Notice is received by the Debtors with a copy to the Committee (such date, the "**Carve Out Trigger Date**"), the Carve Out Notice shall constitute a demand to the Debtors to utilize all cash on hand to transfer to the Professional Fees Account (as defined below) cash in an amount equal to all obligations benefitting from the Carve Out as more fully set forth below.

(d)     On and after the Carve Out Trigger Date, the DIP Agent shall deposit into a segregated account of the Debtors not subject to the control of the DIP Agent, any DIP Lender or any Prepetition Secured Party (the "**Professional Fees Account**") any cash swept or foreclosed after delivery of the Carve Out Notice (including cash received as a result of the sale or other disposition of any assets) until the Professional Fees Account has been fully funded (inclusive of

any amounts on deposit therein prior to the issuance of such Carve Out Notice) in an amount equal to all obligations benefitting from the Carve Out; *provided*, that when all Allowed Professional Fees have been paid in full, any funds remaining in the Professional Fees Account net of the remaining Post-Carve-Out Cap shall be paid directly to the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all "Commitments" (as defined in the DIP Credit Agreement and used herein, the "**DIP Commitments**") have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as set forth herein and in the Prepetition Loan Documents.  Notwithstanding anything to the contrary in the DIP Documents or this Final Order, following delivery of a Carve Out Notice, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fees Account has been fully funded in an amount equal to all obligations benefitting from the Carve Out.

(e)    For the avoidance of doubt, to the extent that Professional Fees of Professional Persons have been incurred by the Debtors at any time before or on the first business day after delivery by the DIP Agent or the Prepetition Agent, as applicable, of a Carve Out Notice but have not yet been allowed by the Court, such Professional Fees of the Professional Persons shall constitute Allowed Professional Fees benefiting from the Carve Out upon their allowance by the Court, whether by interim or final compensation order and whether before or after delivery of the Carve Out Notice, and the Debtors shall fund the Professional Fees Account with the amount of such professional fees and expenses added to the Post Carve Out Cap.

(f)    Further, notwithstanding anything to the contrary in this Final Order, the DIP Documents, or the Prepetition Loan Documents, (i) the failure of the Professional Fees Account to be funded in an amount equal to all obligations benefitting from the Carve Out shall not affect the priority of the Carve Out, (ii) in no way shall the Carve Out, Professional Fees Account, or the Approved Budget or any of the foregoing (or any good-faith estimate of Professional Fees) be construed as a cap or limitation on the amount of the Professional Fees or the Statutory Fees due and payable by the Debtors or that may be allowed by this Court at any time (whether by interim order, final order, or otherwise), and (iii) the Debtors' authority to use proceeds from the DIP Facility, the DIP Collateral, and/or Cash Collateral on account of and to timely pay Professional Fees and the obligations benefitting from the Carve Out shall in no way be limited or deemed limited by the Approved Budget or any good-faith estimate of Professional Fees.

8.    <u>DIP Superpriority Claims</u>.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the DIP Loan Parties on a joint and several basis, subject to the terms of the DIP Documents and the Hedging Order, (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes

of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**") but including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**")) in accordance with the DIP Documents, this Final Order and the Hedging Order, subject only to payment in full in cash of the Carve Out.  Notwithstanding the foregoing, prior to seeking payment of any DIP Obligations or DIP Superpriority Claims from Avoidance Proceeds, the DIP Secured Parties shall use commercially reasonable efforts to first satisfy such claims from all other material DIP Collateral.  The DIP Superpriority Claims shall be granted the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The DIP Superpriority Claims shall be *pari passu* in right of payment with one another and senior to the 507(b) Claims (as defined herein), and subordinated only to the Carve Out.

9.      DIP Liens.  As security for the DIP Obligations, effective and automatically and properly perfected upon the date of the Interim Order and without the necessity of the execution, recordation or filing by the DIP Loan Parties or any of the DIP Secured Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the DIP Agent of, or over, any DIP Collateral, the following valid, binding, continuing, enforceable and non-avoidable security interests and liens

(all security interests and liens granted to the DIP Agent, for its benefit and for the benefit of the

DIP Secured Parties, pursuant to this Final Order and the DIP Documents, the "**DIP Liens**") are

hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Secured Parties (all

property identified in clauses (a) through (c) below being collectively referred to as the "**DIP**

**Collateral**"):

   (a) <u>First Lien on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior

security interest in and lien upon all prepetition and postpetition property of the DIP Loan Parties,

whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is

not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in

existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by

section 546(b) of the Bankruptcy Code, including, without limitation, any and all unencumbered

cash of the DIP Loan Parties (whether maintained with any of the DIP Secured Parties or otherwise)

and any investment of cash, inventory, accounts receivable, other rights to payment whether

arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery,

equipment, general intangibles, documents, instruments, securities, goodwill, commercial tort

claims and claims that may constitute commercial tort claims (known and unknown), chattel paper,

interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade

names, rights under license agreements and other intellectual property, capital stock of subsidiaries,

wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising

under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (the

"**Unencumbered Property**"), in each case other than the Avoidance Actions (but, for the

avoidance of doubt "Unencumbered Property" shall include Avoidance Proceeds) and Excluded Assets;

(b)      <u>Junior Liens on Collateral Subject to Prepetition Permitted Prior Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior priority security interest and lien on all prepetition and postpetition property of each DIP Loan Party (other than Excluded Assets) junior only to (1) Prepetition Permitted Prior Liens or (2) unperfected Prepetition Permitted Prior Liens that were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (in each case, other than the Prepetition Credit Facility Liens and Prepetition Notes Liens).

(c)      <u>Priming Liens on Prepetition Collateral</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all prepetition and postpetition property of each DIP Loan Party (including, without limitation, any and all cash and Cash Collateral and any investment of such cash and Cash Collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the DIP Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing), whether now existing or hereafter acquired, that is subject to the Prepetition Credit Facility Liens, which lien shall be senior in all respects to such Prepetition Credit Facility Liens and Prepetition Notes Liens (the "**Priming Liens**").  The Priming Liens shall be senior in all respects to the

respective interests in such property of the Prepetition Secured Parties and Prepetition Notes Secured Parties arising from current and future liens of the Prepetition Secured Parties and Prepetition Notes Secured Parties (including, without limitation, the Adequate Protection Liens and Noteholders Adequate Protection Liens granted hereunder); and

(d)    Liens Senior to Certain Other Liens.  The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (1) any lien or security interest that is avoided and preserved for the benefit of the DIP Loan Parties and their estates under section 551 of the Bankruptcy Code, (2) unless otherwise provided for in the DIP Documents or in this Final Order, including, without limitation, as authorized pursuant to the *Interim Order (I) Authorizing, But Not Directing, the Debtors to Enter into, Continue Performing, and Provide Credit Support Under, Hedging and Derivative Contracts and (II) Granting Related Relief* [D.I. 170] or, upon entry of a final order of the Court with respect to such relief, such final order (the "**Hedging Order**"), or unless otherwise required by section 546(b) of the Bankruptcy Code or applicable non-bankruptcy law, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties, or (3) any intercompany or affiliate liens or security interests of the DIP Loan Parties; or (ii) unless otherwise provided for in the DIP Documents or in this Final Order, including, without limitation, as authorized pursuant to the Hedging Order, subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

(e)    For the avoidance of doubt, nothing in this Final Order or the DIP Documents shall grant a lien in favor of the DIP Agent, DIP Lenders, Prepetition Secured Parties, or Prepetition Notes Secured Parties with respect to any assets or interests in assets (including such

assets that are held by a Debtor as a true bailee pursuant to a valid, binding and enforceable bailment agreement) that, under applicable law, do not constitute property of the Debtors' estates or that are Excluded Assets.  All parties' rights are fully reserved with respect to the assertions made by Caterpillar, Inc. in its Limited Objection and Reservation of Rights in Connection with Debtors' Financing Motion [D.I. 116].

10.    Protection of DIP Lenders' Rights.

(a)    So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding DIP Commitments under the DIP Documents, the Prepetition Secured Parties and Prepetition Notes Secured Parties shall, at the request of the DIP Agent, deliver or cause to be delivered, at the DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Secured Parties or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any sale or disposition approved by the Court.

(b)    So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding DIP Commitments under the DIP Documents, to the extent any Prepetition Secured Party or Prepetition Notes Secured Party has possession of any Prepetition Collateral, DIP Collateral or Prepetition Notes Collateral or has control with respect to any Prepetition Collateral, DIP Collateral or Prepetition Notes Collateral, or has been noted as a secured party on any certificate of title for a titled good constituting Prepetition Collateral, DIP Collateral or Prepetition Notes Collateral, then such Prepetition Secured Party or Prepetition Notes Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Secured Parties, and such Prepetition Secured Party and the Prepetition Agent or Prepetition Notes Secured Party

shall comply with the reasonable instructions of the DIP Agent, acting at the direction of the DIP Required Lenders, with respect to the exercise of such control.

(c)    So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding DIP Commitments under the DIP Documents, any proceeds of Prepetition Collateral or Prepetition Notes Collateral subject to the Primed Liens received by any Prepetition Secured Party or Prepetition Notes Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by the Prepetition Agent or a Prepetition Notes Secured Party, as applicable, shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Agent for the benefit of the DIP Secured Parties in the same form as received, with any necessary endorsements.  The DIP Agent is hereby authorized to make any such endorsements as agent for the Prepetition Agent or any such Prepetition Secured Parties or Prepetition Notes Secured Parties.  This authorization is coupled with an interest and is irrevocable.

(d)    The Automatic Stay is hereby modified to the extent necessary to permit the DIP Agent (acting at the direction of the DIP Required Lenders) to take any or all of the following actions, at the same or different time, in each case without further order or application of the Court in each case immediately upon the occurrence and during continuation of an Event of Default: (i) deliver a notice of an Event of Default to the Debtors; (ii) declare the termination, reduction or restriction of any further DIP Commitment to the extent any such DIP Commitment remains outstanding; (iii) declare the termination of the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Secured Parties (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations); (iv) charge the default rate of interest on the DIP Loans and other outstanding DIP Obligations; and (v) declare all applicable DIP

Obligations to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Debtors.  In addition, upon the occurrence and during the continuation of an Event of Default, the DIP Required Lenders may deliver written notice (which may be included with the notice delivered pursuant to clause (i) above), in their sole and absolute discretion, via electronic mail (or other electronic means) to lead counsel to the Debtors, lead counsel to the Committee or any other statutory committee appointed, lead counsel to the Prepetition Agent, lead counsel to the Ad Hoc Group (as defined herein), and the U.S. Trustee of their intent to exercise remedies under the DIP Documents, and if an Event of Default is continuing upon expiration of 7 days from the date of such notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (such period, the "**DIP Remedies Notice Period**"), the Automatic Stay shall be terminated automatically without further order of this Court, without the need for filing any motion for relief from the automatic stay or any other pleading, for the limited purpose of permitting the DIP Lenders to do any of the following: (i) exercise remedies against the Collateral; (ii) terminate use of Cash Collateral; (iii) enforce all of the guaranty rights; and (iv) exercise all rights and remedies set forth in the DIP Documents, this Final Order, and as otherwise available at law; *provided*, *however*, that during the DIP Remedies Notice Period, the Debtors, the Prepetition Agent (at the direction of the Prepetition Required Lenders) and/or the Committee may seek an emergency hearing before the Court and may seek an order declaring that the automatic stay will remain in effect in whole or in part to the extent the circumstances so warrant, and the Court reserves the power to issue such an order; and *provided further* that the DIP Lenders shall not be obligated to make any loans or advances under the DIP Facility during any DIP Remedies Notice Period.  Upon expiration of the DIP Remedies Notice Period and relief from the Automatic Stay granted to the DIP Agent or DIP Lenders

pursuant to and in accordance with this paragraph 10(d), each of the Prepetition Secured Parties

shall have the right to immediately file a motion on five (5) days' notice (which shortened time

shall not be contested) for any purpose, including, without limitation, to seek relief from the

Automatic Stay (if applicable) to protect, enforce, and exercise all rights and remedies provided

under this Final Order, the Prepetition Loan Documents, or applicable law.

(e)      No rights, protections or remedies of the DIP Agent or the DIP Secured

Parties granted by the provisions of this Final Order or the DIP Documents shall be limited,

modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any

party to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported

termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any

other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision

of adequate protection to any party.

11.    <u>Limitation on Charging Expenses Against Collateral</u>.  Except to the extent of the

Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases

or any future proceeding that may result therefrom, including liquidation in bankruptcy or other

proceedings under the Bankruptcy Code, shall be charged against or recovered from the

DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or

any similar principle of law, without the prior written consent (to be withheld or granted in the

sole discretion of the party with the power to provide such binding consent) of the DIP Agent, the

DIP Lenders, the Prepetition Agent, and/or the Prepetition Lenders, as applicable, and no consent

shall be implied from any other action, inaction or acquiescence by the DIP Agent, the DIP Secured

Parties, the Prepetition Agent or the Prepetition Secured Parties, and nothing contained in this

Final Order shall be deemed to be a consent by the DIP Agent, the DIP Secured Parties, the

Prepetition Agent or the Prepetition Secured Parties to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12.     <u>No Marshaling</u>.  Except as otherwise specified herein solely with respect to Avoidance Proceeds, in no event shall the DIP Agent, the DIP Secured Parties, the Prepetition Agent or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Credit Facility Debt, or the Prepetition Collateral.

13.     <u>Section 552(b)</u>.  The Prepetition Secured Parties shall each be granted all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception thereunder shall not apply to any of them.

14.     <u>Payments Free and Clear</u>.  Subject to the Carve Out, any and all payments or proceeds remitted (a) to the DIP Agent by, through or on behalf of the DIP Secured Parties or (b) subject to paragraph 24, to or on behalf of the Prepetition Secured Parties, in each case, pursuant to the provisions of this Final Order, the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

15.     <u>Disposition of DIP Collateral</u>.  The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as otherwise provided for in this Final Order, any other DIP Documents, or otherwise permitted by an order of the Court.

16.     <u>Use of Cash Collateral</u>.  The DIP Loan Parties are hereby authorized, subject to the terms and conditions of this Final Order, to use all Cash Collateral from the Petition Date through

and including the Cash Collateral Termination Date (as defined herein), and the Prepetition

Secured Parties have consented to such use of Cash Collateral; *provided* that (a) the Prepetition

Secured Parties are granted the Adequate Protection as hereinafter set forth and (b) except on the

terms and conditions of this Final Order, the DIP Loan Parties shall not be authorized to use such

Cash Collateral absent further order of the Court.  As used herein, "**Cash Collateral Termination**

**Date**" means the earlier to occur of (a) the Maturity Date (as defined in the DIP Credit Agreement);

(b) delivery of a Carve Out Notice; (c) (i) the occurrence and continuation of an Event of Default

(as defined under the DIP Credit Agreement) upon the expiration of the DIP Remedies Notice

Period or (ii) the occurrence and continuation of an Event of Default (as defined herein) other than

as described in clause (i) above and following five (5) days' prior written notice by the Prepetition

Agent (acting at the direction of Prepetition Required Lenders) of its election to terminate the use

of Cash Collateral on account of such Event of Default; (d) the occurrence of a Non-Permitted

Action (as defined herein) and following seven (7) days' prior written notice by the Prepetition

Agent (acting at the direction of Prepetition Required Lenders) of its election to terminate the use

of Cash Collateral on account of such Non-Permitted Action; or (e) termination of the RSA (other

than in connection with the filing by the Debtors of an Acceptable Plan[7]), and following seven (7)

days' prior written notice by the Prepetition Agent (acting at the direction of Prepetition Required

Lenders) of its election to terminate the use of Cash Collateral on account of such termination of

---

[7]    "**Acceptable Plan**" (as defined in the DIP Credit Agreement) is hereby amended and modified by this
Final Order to mean (a) the plan of reorganization contemplated by the RSA, (b) a substantially similar
chapter 11 plan acquisition of substantially all of the assets of the Debtors that provides equal or more
favorable plan treatment of the Pre-Petition Lenders (as defined in the DIP Credit Agreement), or (c)
another chapter 11 plan of reorganization that pays the Pre-Petition Lenders in full in cash on the Plan
Effective Date (as defined in the DIP Credit Agreement); *provided*, that no chapter 11 plan shall be an
Acceptable Plan unless it is reasonably expected to be consummated prior to the Maturity Date (for the
avoidance of doubt, as may be extended pursuant to Section 2.22 of the DIP Credit Agreement) and is
not in any other manner adverse to the Pre-Petition Lenders (in their capacities as such) when compared
to the plan of reorganization contemplated by the RSA.

the RSA.  For the avoidance of doubt, nothing herein shall prejudice the Prepetition Secured Parties' right to request any additional relief from the Court.

17.    <u>Adequate Protection of Prepetition Secured Parties</u>.    The Prepetition Secured Parties are granted, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, adequate protection of their interests in all Prepetition Collateral in an amount equal to the aggregate diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any diminution resulting from the sale, lease or use by the Debtors of the Prepetition Collateral, the priming of the Prepetition Credit Facility Liens by the DIP Liens pursuant to the DIP Documents and this Final Order, the payment of any amounts under the Carve Out or pursuant to this Final Order, the Interim Order or any other order of the Court or provision of the Bankruptcy Code or otherwise, and the imposition of the Automatic Stay (the "**Adequate Protection Claims**").  The Prepetition Agent, for the benefit of the Prepetition Secured Parties, is hereby granted the following as Adequate Protection for, and to secure repayment of an amount equal to such Adequate Protection Claims (collectively, the "**Adequate Protection Obligations**"):

(a)    <u>Prepetition Adequate Protection Liens</u>. The Prepetition Agent, for itself and for the benefit of the other Prepetition Secured Parties, is hereby granted (effective and legal, valid, binding, unavoidable, and properly perfected upon the date of the Interim Cash Collateral Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements) in the amount of the Prepetition Secured Parties' Adequate Protection Claims, a valid, binding, enforceable, non-avoidable and properly perfected replacement security interest in and lien upon all of the DIP Collateral (the "**Adequate**

40

Protection Liens"), in each case subject and subordinate only to (i) the DIP Liens, (ii) valid, binding, enforceable, properly perfected, unavoidable and senior liens in the DIP Collateral that are senior to the Prepetition Credit Facility Liens as of the Petition Date, and (iii) the Carve Out. Notwithstanding the foregoing, prior to seeking payment of their Adequate Protection Claims from any Adequate Protection Liens on Avoidance Proceeds, the Prepetition Secured Parties shall use commercially reasonable efforts to first satisfy their Adequate Protection Claims from all other material assets of the Debtors.

(b)    Section 507(b) Claims.  The Prepetition Agent, for itself and for the benefit of the other Prepetition Secured Parties, is hereby granted, subject only to the Carve Out and the DIP Superpriority Claims, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code (the "**507(b) Claims**") in the amount of the Prepetition Secured Parties' Adequate Protection Claims, if any, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code, which 507(b) Claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding Avoidance Actions, but including Avoidance Proceeds).  Notwithstanding the foregoing, prior to seeking payment of any 507(b) Claims from Avoidance Proceeds, the Prepetition Secured Parties shall use commercially reasonable efforts to first satisfy such claims from all other material assets of the Debtors that are Obligors of the Prepetition Secured Debt.  Except to the extent expressly set forth in this Final Order or the DIP Documents, the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the DIP Obligations have

indefeasibly been paid in cash in full and all DIP Commitments have been terminated. Notwithstanding their status as 507(b) Claims, the Prepetition Secured Parties' Adequate Protection Claims may be satisfied in a plan of reorganization or liquidation confirmed in the Chapter 11 Cases in any manner set forth in such plan if the Prepetition Required Lenders consent to such treatment.

(c)     Adequate Protection Payments.  Subject to the Carve Out, the DIP Loan Parties shall provide further Adequate Protection to the applicable Prepetition Secured Parties in the form of (1) postpetition monthly interest payments in cash to the Prepetition Agent, on behalf of the Prepetition Lenders,[8] in an amount equal to the accrued and unpaid interest at the non-default interest rate and as otherwise provided under the Prepetition Credit Agreement (including, for the avoidance of doubt, payment of all prepetition accrued and unpaid interest under the Prepetition Credit Agreement), (2) payment immediately upon demand of all indemnification and reimbursement claims arising under Sections 8.02 and 9.03 of the Prepetition Credit Agreement or any Prepetition Loan Document (to the extent covered thereby) arising out of or relating to any act or omission of the Prepetition Agent taken in connection with the DIP Documents, the Interim Cash Collateral Order, the Interim Order, and this Final Order or any related matter, which indemnification and reimbursement obligations are incorporated herein *mutatis mutandis* as joint and several administrative obligations of the DIP Loan Parties, and (3) without duplication of fees paid for the benefit of the DIP Secured Parties, the DIP Loan Parties shall pay all reasonable and documented prepetition and postpetition fees and expenses of (x) Gibson, Dunn & Crutcher LLP

---

[8]    Notwithstanding any provisions herein to the contrary, any payments or distributions to be made pursuant to this Final Order on account of the GSI Hedge Claim or GSI Hedge Agreement and the Debtors' indebtedness to GSI on account thereof (including but not limited to Adequate Protection Payments to GSI) shall be paid directly to GSI to the account specified in GSI's Calculation Statement for Payment on Early Termination provided to the Debtors on or about September 28, 2020.

as legal counsel to the Ad Hoc Group, PJT Partners LP as financial advisor to the Ad Hoc Group, and one local counsel (in each applicable material jurisdiction) engaged by the Ad Hoc Group (collectively, the "**Ad Hoc Group Advisors**"), (y) the Prepetition Agent (which shall include the reasonable and documented out-of-pocket fees and expenses of one primary legal counsel and one local counsel in each material jurisdiction or any other jurisdiction in which the Prepetition Agent is directed or requested to take action by the DIP Agent in furtherance of this Final Order and, upon request, one financial advisor billing at an hourly rate (the "**Prepetition Agent FA**")) and (z) Cadwalader, Wickersham & Taft LLP as legal counsel to GSI (solely as provided for in the GSI Hedge Agreement) (collectively, the "**Adequate Protection Fees and Expenses**"), subject only to the review procedures set forth in paragraph 23 of this Final Order (collectively the payments described in (1), (2) and (3) hereof, the "**Adequate Protection Payments**"); *provided*, *however*, to the extent that any such Adequate Protection Payments must be repaid as a result of a successful Challenge (as defined herein) under paragraph 24, such Adequate Protection Payments shall be recharacterized as repayment of principal of the Prepetition Credit Facility Debt..

(d)     Adequate Protection Finding.  Subject to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any diminution in value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases.   Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.

(e)    <u>Prepetition Secured Parties' Information Rights</u>.    The DIP Loan Parties shall concurrently deliver to the Prepetition Agent, for distribution to the Prepetition Secured Parties (and subject to applicable confidentiality restrictions governing the Prepetition Credit Agreement, including with respect to any "private" side lender database), and the legal and financial advisors to the ad hoc group of Prepetition Lenders (collectively, the "**Ad Hoc Group**") all required written financial reporting and other periodic reporting that is required to be provided or that is provided to the DIP Agent or the DIP Secured Parties under the DIP Documents or otherwise.    Additionally, the Debtors shall hold weekly telephone calls with (i) the Ad Hoc Group Advisors (as defined below) and Prepetition Agent and (ii) the Committee, in each case, to discuss relevant updates in the Chapter 11 Case.

(f)    <u>Maintenance of Collateral</u>.    The DIP Loan Parties shall continue to maintain and insure the Prepetition Collateral and the DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Credit Facilities and the DIP Documents.

(g)    <u>Prepetition Secured Parties' Additional Adequate Protection</u>.    In the event the Debtors file or support in Court or in any motion or pleading, or take any corporate action to approve, a chapter 11 plan that is not an Acceptable Plan (a "**Non-Permitted Action**"), the Debtors shall provide written notice to the Prepetition Agent and counsel to the Ad Hoc Group not less than seven (7) business days before taking such Non-Permitted Action (the "**Non- Permitted Restructuring Notice**") with a copy thereof sent concurrently to the Committee.

18.    <u>Reservation of Rights of Prepetition Secured Parties</u>.    Under the circumstances and given that the above-described Adequate Protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the Adequate Protection provided herein is reasonable to protect the interests of the Prepetition Secured Parties and any other parties' holding

interests that are secured by Primed Liens; *provided* that any of the Prepetition Secured Parties,
including the Prepetition Agent acting on its own behalf or at the direction of the Prepetition
Required Lenders, may request further or different adequate protection and the DIP Loan Parties
or any other party in interest may contest any such request.

19.    <u>Adequate Protection of Prepetition Notes Secured Parties</u>.  The Prepetition Notes
Secured Parties are granted, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the
Bankruptcy Code, adequate protection of their interests in all Prepetition Notes Collateral in an
amount equal to the aggregate diminution in the value of the Prepetition Notes Secured Parties'
interests in the Prepetition Notes Collateral from and after the Petition Date, if any, for any reason
provided for under the Bankruptcy Code, including, without limitation, any diminution resulting
from the sale, lease or use by the Debtors of the Prepetition Notes Collateral, the priming of the
Prepetition Notes Secured Parties' liens by the DIP Liens pursuant to the DIP Documents and this
Final Order, the payment of any amounts under the Carve Out or pursuant to this Final Order, the
Interim Order or any other order of the Court or provision of the Bankruptcy Code or otherwise,
and the imposition of the Automatic Stay (the "**Noteholders Adequate Protection Claims**").
The Prepetition Notes Secured Parties are hereby granted the following as Noteholders Adequate
Protection for, and to secure repayment of an amount equal to such Noteholders Adequate
Protection Claims (collectively, the "**Noteholders Adequate Protection Obligations**"):

(a)    <u>Noteholders Adequate Protection Liens</u>. The Prepetition Notes Secured
Parties are hereby granted (effective and legal, valid, binding, unavoidable, and properly perfected
upon the date of the Interim Cash Collateral Order and without the necessity of the execution of
any mortgages, security agreements, pledge agreements, financing statements or other agreements)
in the amount of the Noteholders' Adequate Protection Claims, a valid, binding, enforceable, non-

avoidable and properly perfected replacement security interest in and lien upon all of the Prepetition Notes Collateral (the "**Noteholders Adequate Protection Liens**"), in each case subject and subordinate only to (i) the DIP Liens, (ii) Prepetition Credit Facility Liens, (iii) the Adequate Protection Liens, (iv) valid, binding, enforceable, properly perfected, unavoidable and senior liens in the Prepetition Notes Collateral that are senior to the Prepetition Notes Liens as of the Petition Date, and (v) the Carve Out.

(b)     Noteholders Section 507(b) Claims.  The Prepetition Notes Secured Parties are hereby granted, subject only to the Carve Out, DIP Superpriority Claims, and the 507(b) Claims, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code (the "**Noteholders 507(b) Claims**") in the amount of the Noteholders Adequate Protection Claims, if any, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code, which Noteholders 507(b) Claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding Avoidance Actions, but including Avoidance Proceeds).  Notwithstanding the foregoing, prior to seeking payment of any Noteholders 507(b) Claims from Avoidance Proceeds, the Prepetition Notes Secured Parties shall use commercially reasonable efforts to first satisfy such claims from all other material assets of the Debtors that are Obligors of the Prepetition Secured Debt.  Except to the extent expressly set forth in this Final Order or the DIP Documents, the Prepetition Notes Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Noteholders 507(b) Claims unless and until the DIP Obligations, the

Prepetition Credit Facility Debt and the 507(B) Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c)    Noteholders Adequate Protection Payments.  Subject to the Carve Out and the Adequate Protection Payments, the DIP Loan Parties shall provide further Noteholders Adequate Protection to the Prepetition Notes Secured Parties in the form of payment of all reasonable and documented postpetition fees and expenses of (1) Ropes & Gray LLP, as counsel to an ad hoc group of Prepetition Secured Noteholders (the "**Secured Noteholder Ad Hoc Group**"), (2) a financial advisor selected by the Secured Noteholder Ad Hoc Group (with the terms of engagement reasonably acceptable to the DIP Loan Parties in consultation with the Committee), and (3) the Prepetition Indenture Trustee (which shall include the reasonable and documented out-of-pocket fees and expenses of one primary legal counsel); *provided* that the Prepetition Indenture Trustee and its legal counsel shall be entitled to its fees and expenses incurred in connection with the exercise of its duties under the Prepetition Indenture, but will not be entitled to payment under this Final Order of fees and expenses otherwise duplicative of those incurred by the Secured Noteholder Ad Hoc Group and its advisors (collectively, the "**Secured Noteholders Fees and Expenses**"), each subject only to the review procedures set forth in paragraph 23 of this Final Order (collectively, the "**Noteholders Adequate Protection Payments**"); *provided*, *however*, to the extent that any such Noteholders Adequate Protection Payments must be repaid as a result of a successful Challenge (as defined herein) under paragraph 24, such Noteholders Adequate Protection Payments shall be recharacterized as repayment of principal of the Prepetition Senior Notes Debt.

(d)    Adequate Protection Finding, Reservation of Rights.  Subject to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy

Code in the event that the adequate protection provided to the Prepetition Notes Secured Parties

hereunder is insufficient to compensate for any diminution in value of their respective interests in

the Prepetition Notes Collateral during the Chapter 11 Cases.  Under the circumstances and given

that the above-described adequate protection is consistent with the Bankruptcy Code, including

section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable

and sufficient to protect the interests of the Prepetition Notes Secured Parties; *provided* that any

of the Prepetition Notes Secured Parties may request further or different adequate protection and

the DIP Loan Parties or any other party in interest may contest any such request.

20.     Perfection of DIP Liens and Adequate Protection Liens.

(a)     Without in any way limiting the automatically effective perfection of the

DIP Liens granted pursuant to paragraph 9 hereof and the Adequate Protection Liens granted

pursuant to paragraphs 17 and 18 hereof, the DIP Agent, the DIP Secured Parties, the Prepetition

Agent, the Prepetition Secured Parties and the Prepetition Notes Secured Parties are hereby

authorized, but not directed other than as required under the DIP Intercreditor Arrangements, to

file or record (and to execute in the name of the DIP Secured Parties and the Prepetition Secured

Parties (as applicable), as their true and lawful attorneys, with full power of substitution, to the

maximum extent permitted by law) financing statements, trademark filings, copyright filings,

mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control

over cash or securities, or take any other action in order to validate and perfect the liens and security

interests granted to them under the DIP Documents or this Final Order (collectively, "**Perfection**

**Actions**").  Whether or not the DIP Agent, on behalf of the DIP Secured Parties or the Prepetition

Agent, on behalf of the Prepetition Secured Parties, shall take such Perfection Actions, the liens

and security interests shall be deemed valid, binding, perfected, allowed, enforceable, non-

avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order.  Upon the request of the DIP Agent, each of the Prepetition Secured Parties and the DIP Loan Parties, without any further consent of any party, is authorized (in the case of the DIP Loan Parties) and directed (in the case of the Prepetition Secured Parties) to use reasonable best efforts to cause (in the case of the Debtors with respect to any non-Debtor affiliate) to take, execute, deliver and file such actions, instruments and agreements (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens and give effect to the DIP Intercreditor Arrangements and the other DIP Documents in all jurisdictions where the DIP Liens are required under the DIP Credit Agreement, including all local law documentation therefor determined to be reasonably necessary by the DIP Agent; *provided*, that no action need be taken in a foreign jurisdiction that would jeopardize the validity, priority (except to the extent provided for in this Final Order), enforceability, seniority, perfection, or the extent of the Prepetition Credit Facility Liens; *provided further*, that the failure to take any such action shall not result in the Prepetition Credit Facility Liens being senior to the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.  To the extent necessary to effectuate the terms of this Final Order and the DIP Documents, each of the DIP Agent and the Prepetition Agent hereby is deemed to appoint the other (and deemed to have accepted such appointment) to act as its agent with respect to the DIP Collateral, with such powers as are expressly delegated thereto under the DIP Documents (including the DIP Intercreditor Arrangements and the Prepetition Loan Documents (and even if it involves self-contracting and multiple representation to the extent legally possible)), together with such other powers as are reasonably incidental thereto.

(b)       A certified copy of this Final Order may, in the discretion of the DIP Agent,

be filed with or recorded in filing or recording offices in addition to or in lieu of such financing

statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby

authorized and directed to accept a certified copy of this Final Order for filing and/or recording,

as applicable.  The Automatic Stay shall be modified to the extent necessary to permit the DIP

Agent and the Prepetition Agent to take all actions, as applicable, referenced in this subparagraph

(b) and the immediately preceding subparagraph (a).

21.     <u>Preservation of Rights Granted Under this Final Order</u>.

(a)       Other than the Carve Out and other claims and liens expressly granted by

this Final Order, including, without limitation, as authorized pursuant to the Hedging Order,  no

claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to

the DIP Agent and the DIP Secured Parties or the Prepetition Agent and the Prepetition Secured

Parties shall be permitted while any of the DIP Obligations or the Adequate  Protection Obligations

remain outstanding, and, except as otherwise expressly provided in this Final Order, including,

without limitation, as authorized pursuant to the Hedging Order, the DIP Liens, the Adequate

Protection Liens and the Noteholders Adequate Protection Liens shall not be: (i) subject or junior

to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates

under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other

lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii)

subordinated to or made *pari passu* with any liens arising after the Petition Date including, without

limitation, any liens or security interests granted in favor of any federal, state, municipal or other

domestic or foreign governmental unit (including any regulatory body), commission, board or

court for any liability of the DIP Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the DIP Loan Parties.

(b)    The occurrence of (i) any "Event of Default" (as defined in the DIP Credit Agreement) or (ii) any breach of any of the terms of this Final Order, shall, after notice by the DIP Agent (acting in accordance with the terms of this Final DIP Order) in writing to the Borrower constitute an event of default under this Final Order (each an "**Event of Default**") and, upon any such Event of Default, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Credit Agreement and the DIP Agent shall be authorized to exercise all rights and remedies pursuant to the DIP Documents and subject to paragraph 10(d). Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code:  (A) the DIP Superpriority Claims, the 507(b) Claims, Noteholders 507(b) Claims, the DIP Liens, the Adequate Protection Liens, and the Noteholders Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations, Adequate Protection Obligations and Noteholders Adequate Protection Obligations shall have been indefeasibly paid in full and in cash (and that such DIP Superpriority Claims, 507(b) Claims, Noteholders 507(b) Claims, DIP Liens, Adequate Protection Liens and the Noteholders Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (B) the other rights granted by this Final Order, including with respect to the Carve Out, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.  The DIP Agent shall provide notice to the

Prepetition Agent and the Ad Hoc Group within one day upon learning of the occurrence of an Event of Default.

(c)    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, and the Prepetition Notes Secured Parties shall be granted all of the rights, remedies, protections, and benefits granted under section 364(e) of the Bankruptcy Code.

(d)    Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Noteholders Adequate Protection Liens, the Adequate Protection Obligations, the Noteholders Adequate Protection Obligations, the 507(b) Claims, the Noteholders 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Secured Parties, the Prepetition Agent, the Prepetition Secured Parties and the Prepetition Notes Secured Parties granted by the provisions of this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of these Chapter 11 Cases or by any other act or omission; the entry of an order approving the sale of any DIP Collateral or Prepetition Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the DIP Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.    The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under

the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Obligations, the Noteholders Adequate Protection Liens, the Noteholders Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Secured Parties, the Prepetition Agent, the Prepetition Secured Parties and the Prepetition Notes Secured Parties granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated (and in the case of rights and remedies of the Prepetition Agent and Prepetition Secured Parties, shall remain in full force and effect thereafter, subject to the terms of this Final Order).

22.    <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Chapter 11 Cases or any successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents at any time prior to the repayment in full in cash of all DIP Obligations and the termination of any DIP Commitments, including subsequent to the confirmation of any plan with respect to the Debtors and the Debtors' estates, and such financing is secured by any DIP Collateral or Prepetition Collateral, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent, for the benefit of itself and the DIP Lenders, to be applied as set forth the DIP Documents and this Final Order.

23.    <u>Payment of Fees and Expenses</u>.

(a)    The Fee Letter is hereby approved, and the DIP Loan Parties are authorized to and shall pay the DIP Fees and Expenses.  Subject to the review procedures set forth in this paragraph 23, payment of all DIP Fees and Expenses, Adequate Protection Fees and Expenses and

Noteholders Fees and Expenses shall not be subject to allowance or review by the Court.  The

post-petition payment of the fees, expenses and disbursements set forth in the foregoing sentence,

along with the professional fees and expenses of Professional Persons for the DIP Secured Parties

(including the fees and expenses of Weil, Gotshal & Manges LLP, whether accrued prior to or

after the Petition Date), the Prepetition Secured Parties (including the fees and expenses of the Ad

Hoc Group Advisors, Cadwalader, Wickersham & Taft LLP (solely as provided for in the GSI

Hedge Agreement), and Stroock & Stroock & Lavan LLP and the Prepetition Agent FA, in each

case, whether accrued prior to or after the Petition Date), and the Secured Noteholders Fees and

Expenses (including the fees and expenses of the Ropes & Gray LLP, as counsel to Secured

Noteholder Ad Hoc Group, whether accrued prior to or after the Petition Date) shall be made,

subject to the terms hereof, within ten (10) days (which time period may be extended by the

applicable professional) upon the receipt by the Debtors, the Committee and the U.S. Trustee (the

"**Review Period**") of invoices therefor (the "**Invoiced Fees**") and shall not be required to comply

with the U.S. Trustee fee guidelines.  Any time that such professionals seek payment of fees and

expenses from the DIP Loan Parties prior to confirmation of a chapter 11 plan, each professional

shall provide summary copies of its invoices (which shall not be required to contain time entries

and which may be redacted or modified to the extent necessary to delete any information subject

to the attorney-client privilege, or any other legal privilege, any information constituting attorney

work product, or any other confidential information, and the provision of their invoices shall not

constitute any waiver of the attorney client privilege, any other legal privilege, or of any benefits

of the attorney work product doctrine) to the Debtors, the U.S. Trustee, and counsel to the

Committee (collectively, the "**Reviewing Parties**").  The Reviewing Parties may object to any

portion of the Invoiced Fees within the Review Period by written notice to the applicable

professional or by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the applicable DIP Secured Party or Prepetition Secured Party and the applicable professional of any hearing on such motion or other pleading, setting forth the specific objections to the Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading.  If no written objection to Invoiced Fees is received by 12:00 p.m. (Eastern Time), on the end date of the Review Period, the DIP Loan Parties shall pay such Invoiced Fees within three (3) calendar days thereafter.  Payments of any amounts set forth in this paragraph shall not be subject to avoidance, disgorgement, or any similar form of recovery by the DIP Loan Parties or any other person; *provided*, *however*, to the extent that any such payments must be repaid as a result of a successful Challenge (as defined herein) under paragraph 24, such amounts shall be recharacterized as repayment of principal of the Prepetition Credit Facility Debt or Prepetition Senior Notes, as applicable.

(b)      Notwithstanding the foregoing, the DIP Loan Parties are authorized and directed to pay on the Effective Date the DIP Fees and Expenses and the Adequate Protection Fees and Expenses incurred on or prior to such date without the need for any professional engaged by, or on behalf of, the DIP Secured Parties or the Prepetition Secured Parties to first deliver a copy of its invoice or other supporting documentation to the Reviewing Parties (other than the DIP Loan Parties).  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the DIP Secured Parties in connection with or with respect to the DIP Facility are hereby

approved in full and shall not be subject to recharacterization, avoidance, subordination, disgorgement or any similar form of recovery by the DIP Loan Parties or any other person.

24.    <u>Effect of Stipulations on Third Parties</u>.  Immediately upon entry of the Interim Order, the Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes; *provided*, *however*, that the releases set forth in paragraph F shall only be binding on the Debtors to the extent a Challenge (as defined herein) (a) is not timely filed or (b) is not successful with respect to the subject of such release.  The Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or any other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) (x) with respect to parties in interest (other than the Committee) with requisite standing, 75 calendar days after entry of the Interim Order and (y) with respect to the Committee, 100 calendar days after the first appointment of the Committee (*provided* that, in the event that the Committee files and serves a motion to obtain standing and attaches to such motion a proposed complaint within such 100-day period, such time period shall be tolled as to the Committee until the Court decides the standing motion), (ii) any

such later date as has been agreed to, in writing, by the Prepetition Agent (with the consent of the

Prepetition Required Lenders, which consent may be granted or denied in their sole and absolute

discretion) and (iii) any such later date as has been ordered by the Court for cause upon a motion

filed and served prior to the expiration of the deadline to commence a Challenge (as defined herein)

(the time period established by the foregoing clauses (i), (ii), and (iii), the "**Challenge Period**"),

*provided*, *however*, that if the case converts to a chapter 7, or if a chapter 11 trustee is appointed,

prior to the end of the Challenge Period, the Challenge Period shall be extended for the chapter 7

or chapter 11 trustee to the later of (i) the time that is remaining in the Challenge Period plus 10

days and (ii) such date designated by the Court, (A) objecting to or challenging the amount,

validity, priority, enforceability, seniority, avoidability, perfection or extent of any of the

Prepetition Credit Facility Debt, the Prepetition Credit Facility Liens, Prepetition Senior Notes

Debt or Prepetition Notes Liens, or (B) otherwise asserting or prosecuting any action for

preferences, fraudulent transfers or conveyances, other avoidance power claims or any other

claims, counterclaims or causes of action, objections, contests or defenses (collectively,

the "**Challenges**") against any of the Prepetition Secured Parties or Prepetition Notes Secured

Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents,

financial advisors, attorneys, accountants, investment bankers, consultants, representatives and

other professionals and the respective affiliates, heirs, predecessors, successors and assigns thereof,

in each case in their respective capacity as such (each a "**Representative**" and, collectively, the

"**Representatives**") in connection with matters related to the Prepetition Loan Documents, the

Prepetition Credit Facility Debt, the Prepetition Credit Facility Liens, the Prepetition Collateral,

the Prepetition Senior Notes, the Prepetition Senior Notes Debt, the Prepetition Notes Liens and

the Prepetition Notes Collateral; and (b) there is a final non-appealable order in favor of the

plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested

matter; *provided*, that any pleadings filed in connection with any Challenge shall set forth with

specificity the basis for such challenge or claim and any challenges or claims not so specified prior

to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If

no such Challenge is timely and properly filed during the Challenge Period or the Court does not

rule in favor of the plaintiff in any such proceeding then: (1) the Debtors' stipulations, admissions,

agreements and releases contained in this Final Order shall be binding on all parties in interest,

including, without limitation, the Committee; (2) the obligations of the Prepetition Secured Parties

under the Prepetition Loan Documents, including the Prepetition Credit Facility Debt (including

Default Interest) and the obligations of the Prepetition Notes Secured Parties, shall constitute

allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination,

recoupment, offset or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent

chapter 7 case(s); (3) the Prepetition Credit Facility Liens on the Prepetition Collateral and the

Prepetition Notes Liens on the Prepetition Notes Collateral shall be deemed to have been, as of the

Petition Date, legal, effective, valid, binding, perfected, security interests and liens, not subject to

recharacterization, subordination, avoidance or other defense; and (4) the Prepetition Credit

Facility Debt, the Prepetition Credit Facility Liens on the Prepetition Collateral, the Prepetition

Senior Notes Debt and the Prepetition Notes Liens shall not be subject to any other or further claim

or challenge by any statutory or non-statutory committees appointed or formed in the Chapter 11

Cases or any other party in interest acting or seeking to act on behalf of the DIP Loan Parties'

estates, including, without limitation, any successor thereto (including, without limitation, any

chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and

any defenses, claims, causes of action, counterclaims and offsets by any statutory or non-statutory

committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives or the Prepetition Notes Secured Parties arising out of or relating to the Debtors, any of the Prepetition Loan Documents, the Prepetition Credit Facility Debt, the Prepetition Credit Facility Liens, the Prepetition Collateral, the Prepetition Senior Notes, the Prepetition Senior Notes Debt or the Prepetition Notes Collateral, as applicable, shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any statutory or nonstatutory committee appointed or formed in the Chapter 11 Cases and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Final Order vests or confers on any Entity (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Loan Documents, the Prepetition Credit Facility Debt, the Prepetition Credit Facility Liens, the Prepetition Senior Notes, the Prepetition Senior Notes Debt and the Prepetition Notes Liens and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization.

25.    <u>Limitation on Use of DIP Financing Proceeds and Collateral</u>.  Notwithstanding any

other provision of this Final Order or any other order entered by the Court, no DIP Loans, DIP

Collateral, Prepetition Collateral or any portion of the Carve Out, may be used directly or indirectly,

(a) in connection with the investigation, threatened initiation or prosecution of any claims, causes

of action, adversary proceedings or other litigation (i) against any of the DIP Secured Parties, the

Prepetition Secured Parties, the Prepetition Notes Secured Parties, or their respective predecessors-

in-interest, agents, affiliates, representatives, attorneys, or advisors, in each case in their respective

capacity as such, or any action purporting to do the foregoing in respect of the DIP Obligations,

DIP Liens, DIP Superpriority Claims, Prepetition Credit Facility Debt, Prepetition Credit Facility

Liens, the Adequate Protection Obligations and Adequate Protection Liens granted to the

Prepetition Secured Parties, and/or the Noteholders Adequate Protection Obligations and

Noteholders Adequate Protection Liens granted to the Prepetition Notes Secured Parties, as

applicable, or (ii) challenging the amount, validity, priority, enforceability, seniority, avoidability,

perfection, or extent of or asserting any defense, counterclaim or offset with respect to the DIP

Obligations, the Prepetition Credit Facility Debt, the obligations under the Senior Notes and/or the

liens, claims, rights, or security interests securing or supporting the DIP Obligations, the

Prepetition Credit Facility Debt, or the obligations under the Senior Notes granted under this Final

Order, the DIP Documents, the Prepetition Loan Documents in respect of the Prepetition Credit

Facility Debt or the Senior Notes in respect of the obligations under the Senior Notes, including,

in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105,

510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy  Code, applicable non-bankruptcy law or

otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP

Loans, DIP Collateral, Prepetition Collateral, or Prepetition Notes Collateral may be used by the

Committee to investigate but not to prosecute (A) the claims and liens of the Prepetition Secured

Parties, (B) the claims and liens of the Prepetition Notes Secured Parties, and (C) potential claims,

counterclaims, causes of action or defenses against the Prepetition Secured Parties or Prepetition

Notes Secured Parties, up to an aggregate cap of no more than $200,000), (b) to prevent, hinder,

or otherwise delay or interfere with the Prepetition Agent's, the Prepetition Secured Parties', the

DIP Agent's, the DIP Secured Parties', or the Prepetition Notes Secured Parties' as applicable,

enforcement or realization on the Prepetition Credit Facility Debt, the Prepetition Collateral, the

DIP Obligations, the DIP Collateral, the obligations under the Senior Notes and the Prepetition

Notes Collateral and the liens, claims and rights granted to such parties under this Final Order, as

applicable, each in accordance with the DIP Documents, the Prepetition Loan Documents, the

Senior Notes or this Final Order (it being understood that the preceding sentence shall not apply

to the support of, or objection to, (i) the sale of any DIP Collateral or (ii) any plan of reorganization,

in each case on grounds other than the amount, validity, priority, enforceability, seniority,

avoidability, perfection, or extent of with respect to the DIP Obligations, the Prepetition Credit

Facility Debt, the obligations under the Senior Notes and/or the liens, claims, rights, or security

interests securing or supporting the DIP Obligations, the Prepetition Credit Facility Debt, or the

obligations under the Senior Notes granted under this Final Order, the DIP Documents, the

Prepetition Loan Documents in respect of the Prepetition Credit Facility Debt or the Senior Notes

in respect of the obligations under the Senior Notes); (c) to seek to modify any of the rights and

remedies granted to the Prepetition Agent, the Prepetition Secured Parties, the DIP Agent, the DIP

Secured Parties or the Prepetition Notes Secured Parties under this Final Order, the Prepetition

Loan Documents, the Senior Notes or the DIP Documents, as applicable; (d) to apply to the Court

for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant

to the DIP Documents or as authorized pursuant to the Hedging Order) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and 507(b) Claims granted to the Prepetition Secured Parties and Noteholders Adequate Protection Liens and Noteholders 507(b) Claims granted to the Prepetition Notes Secured Parties; or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved or authorized by the Court, agreed to in writing by the DIP Lenders, expressly permitted under this Final Order or permitted under the DIP Documents (including the Approved Budget, subject to permitted variances), in each case unless all DIP Obligations, Prepetition Credit Facility Debt, Adequate Protection Obligations, obligations under the Senior Notes, Noteholders Adequate Protection Obligations and claims granted to the DIP Agent, DIP Secured Parties, Prepetition Agent, Prepetition Secured Parties and Prepetition Notes Secured Parties under this Final Order, have been refinanced or paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the DIP Secured Parties. For the avoidance of doubt, this paragraph 25 shall not limit the Debtors' or the Committee's right to use DIP Collateral to contest that an Event of Default has occurred hereunder pursuant to and consistent with paragraph 10(d) of this Final Order.

26. <u>Cash Management</u>. Unless otherwise agreed by the DIP Agent or otherwise permitted by the DIP Documents, and pursuant to further order of the Court, the Debtors shall maintain their cash management arrangements in all material respects in a manner consistent with that approved by the Court in the *Second Interim (I) Authorizing, But Not Directing, the Debtors to (A) Continue to Use Their Cash Management System, Including Existing Bank Accounts; (B) Pay or Honor Certain Prepetition Obligations Related Thereto and (C) Maintain Existing*

*Business Forms, (II) Authorizing Intercompany Transactions, (III) Waiving the Requirements of Section 345(b) and (IV) Granting Related Relief* [D.I. 72] or in such final order of the Court (the "**Cash Management Order**").

27.    <u>Final Order Governs</u>.  In the event of any inconsistency or conflict between the provisions of this Final Order, the Interim Order, the Interim Cash Collateral Order, and the DIP Documents (including, but not limited to, with respect to the Adequate Protection Obligations) or any other order entered by this Court, the provisions of this Final Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the DIP Documents, including, without limitation, the Approved Budget (subject to permitted variances). Notwithstanding anything to the contrary in the DIP Credit Agreement or any other DIP Document, (i) the "Delayed Draw Commitment" (as defined in the DIP Credit Agreement) shall be in the aggregate amount of $100 million; (ii) the "Commitment" and the "DIP Term Loan Facility" (each as defined in the DIP Credit Agreement) shall be in the aggregate amount of $200 million; (iii) Schedule 2.01 shall be modified to reflect a Delayed Draw Commitment in the amount of $100 million; and (iv) each DIP Document (including, without limitation, the definitions of such terms in the DIP Credit Agreement and any provision that incorporates or uses such terms in the DIP Credit Agreement) is hereby amended and modified by this Final Order to the extent necessary to reflect the terms and modifications set forth in the foregoing clauses (i) through (iii).

28.    <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents and the provisions of this Final Order, including all findings herein (subject to paragraph 24), shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agent, the

DIP Secured Parties, the Prepetition Agent, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Secured Parties, the Prepetition Agent, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that the DIP Agent, the DIP Secured Parties, the Prepetition Agent and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

29.     <u>Loss or Damage to Collateral</u>.  Nothing in this Final Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender, the Prepetition Agent or any other Prepetition Secured Parties, or any of their respective Representatives, of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business or in connection with their restructuring efforts (other than the Carve Out).  The DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral shall be borne by the DIP Loan Parties.

30.    <u>Limitation of Liability</u>. In determining to make any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents or Prepetition Loan Documents, none of the DIP Secured Parties, the Prepetition Secured Parties or their respective Representatives shall (a) be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code).  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Agent, the DIP Secured Parties, the Prepetition Agent or the Prepetition Secured Parties or their respective Representatives of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

31.    <u>No Waiver</u>.  No delay or failure by the Prepetition Agent, any of the other Prepetition Secured Parties, the DIP Agent or any DIP Lender in the exercise of its rights and remedies under the DIP Documents or this Final Order, as applicable, shall constitute a waiver, in whole or in part, of any of such lender's or agent's rights hereunder or otherwise.

32.    <u>DIP Intercreditor Arrangements</u>.  The Bankruptcy Court approves the DIP Intercreditor Arrangements annexed hereto as **Exhibit 1** and authorizes and directs the Prepetition Agent, on behalf of itself and each of the other Prepetition Secured Parties, to execute and perform

under any related documents and to perform all such other and further acts as may be necessary or appropriate to comply with and fulfill the obligations under the DIP Intercreditor Arrangements. Notwithstanding anything to the contrary herein or in any other order of the Bankruptcy Court, in determining the relative priorities and rights of any Prepetition Secured Party as against any other Prepetition Secured Party (including, without limitation, the relative priorities and rights of the Prepetition Secured Parties with respect to the Adequate Protection Liens granted hereunder), such priorities and rights shall continue to be governed by the Prepetition Loan Documents. The Intercreditor Arrangements shall survive the conversion or dismissal of any of the Chapter 11 Cases or any relief from the Automatic Stay granted in the Chapter 11 Cases.

33.     Proof of Claim.

(a)     The Prepetition Agent and/or any other Prepetition Secured Party shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case in order to assert claims for payment of the Prepetition Credit Facility Debt arising under the Prepetition Loan Documents, including, without limitation, any principal, unpaid interest, Default Interest, fees, expenses and other amounts under the Prepetition Loan Documents. The statements of claim in respect of such indebtedness set forth in this Final Order, together with any evidence accompanying the Motion and presented at the Interim Hearings and Final Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status. The Debtors' stipulations hereof shall be deemed to constitute a timely filed proof of claim for the Prepetition Agent in respect of all Prepetition Credit Facility Debt. In addition, the Prepetition Agent will not be required to file any request for allowance and/or payment of any administrative expenses, and this Final Order shall be deemed to constitute a timely filed request for allowance and/or payment of any obligations related to the Prepetition Credit Agreement constituting

administrative expenses, as applicable and if any. To the extent the Prepetition Agent and/or any other Prepetition Secured Party files a proof of claim, it may file a Master Proof of Claim, as set forth below. The provisions of this paragraph 33 shall survive any termination, reversal or modification of this Final Order and any conversion of any of the Chapter 11 Cases.

(b)       In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce unnecessary expense to the Debtors' estates, the Prepetition Agent and/or any other Prepetition Secured Party is authorized to file in the Debtors' lead chapter 11 case In re Garrett Motion Inc., Case No. 20-12212 (MEW), a master proof of claim on behalf of itself or the applicable Prepetition Secured Party(ies) on account of any and all of its and/or their respective claims arising under the applicable Prepetition Loan Document(s) (including, without limitation, in respect of obligations under Hedging Agreements constituting Secured Hedging Obligations (as defined in the Prepetition Credit Agreement)) and hereunder (each a "**Master Proof of Claim**") against each of the Debtors; provided that such Master Proofs of Claim shall identify and describe in reasonable detail each such claim against the Debtors; provided, further, that, for the avoidance of doubt, the Prepetition Agent shall not be required to file any proofs of claim on account of any such obligations under any Hedging Agreements on behalf of any party. Upon the filing of a Master Proof of Claim by any Prepetition Secured Party, such Prepetition Secured Party shall be deemed to have filed a proof of claim in the amount set forth therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Loan Document(s), and the claim of each applicable Prepetition Secured Party (and each of its respective successors and assigns) named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases. The Master Proofs of Claim shall not be required to (a) identify whether any Prepetition Secured Party acquired its claim

67

from another party or the identity of any such party or (b) be amended to reflect a change of the holder of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 33 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties so long as such instruments, agreements or other documents are reasonably described within such Master Proof of Claim and are provided upon written request to the Prepetition Agent or the applicable Prepetition Secured Party.

34.    <u>Rights of Certain Prepetition Secured Parties</u>.

(a)    Subject to paragraphs 16 and 17, and except as otherwise permitted under the Bankruptcy Code or by any order of the Court, prior to the occurrence of an Event of Default, except as expressly permitted pursuant to the terms of this Final Order or the DIP Documents, the Prepetition Secured Parties shall not (i) exercise any rights or remedies with respect to any Prepetition Credit Facility Liens or Prepetition Collateral or (ii) enforce or pursue an event of default or other breach under any Prepetition Loan Document, in each case with respect to any Debtor on account of any Prepetition Credit Facility Debt.

(b)    For the avoidance of doubt and as set forth in the Prepetition Credit Agreement, the Commitments (as defined in the Prepetition Credit Agreement) and any other obligation of the Prepetition Lenders to provide credit or make any loans or advances to the Borrower or any other Loan Party are hereby terminated as of the Petition Date.

35.    <u>Insurance Proceeds and Policies</u>.  Upon entry of the Interim Order and to the fullest extent provided by applicable law, to the extent that the Prepetition Agent is listed (or is required to be listed) as loss payee (or similar or equivalent term) under the Borrower's or DIP Guarantors' insurance policies, the DIP Agent is also deemed to hold an equivalent role under the insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of the insurance policies, to the indefeasible payment in full of the DIP Obligations and termination of the DIP Commitments, and to the payment of the applicable Prepetition Credit Facility Debt.

36.    <u>Effectiveness</u>.  This Final Order shall take effect and be fully enforceable as of the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

37.    <u>Modification of DIP Documents and Approved Budget</u>.  The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the DIP Secured Parties providing for any consensual non-material modifications to the Approved Budget or the DIP Documents (in consultation with the Ad Hoc Group), or of any other modifications to the DIP Documents necessary to conform the terms of the DIP Documents to this Final Order, in each case consistent with the amendment provisions of the DIP Documents; *provided*, that the Prepetition Required Lenders must consent to any amendment, extension, waiver or other modification of the DIP Documents with respect to Adequate Protection Payments; *provided, further* that notice of any material modification or amendment to the DIP Documents shall be provided to the U.S. Trustee, the Prepetition Agent, counsel to the Ad Hoc Group, the Committee, and any other statutory committee, which shall have five (5) business days from the date of such notice within

which to object, in writing, to the modification or amendment (it being understood that any modification or amendment that requires the payment of a consent or other fee shall be considered material for the purposes of this provision). If the U.S. Trustee, the Prepetition Agent (acting in accordance with the terms of this Final Order or the Prepetition Loan Documents and, to the extent required, at the direction of the Prepetition Required Lenders), counsel to the Ad Hoc Group, the Committee, or any other statutory committee timely objects to any material modification or amendment to the DIP Documents, the modification or amendment shall only be permitted pursuant to an order of the Court. The foregoing shall be without prejudice to the Debtors' right to seek approval from the Court of a material modification on an expedited basis. For the avoidance of doubt, any amendment or other modification of the DIP Documents with respect to fees, interest rate, Maturity Date (as defined in the DIP Credit Agreement), the incurrence by the Debtors of any additional secured indebtedness for borrowed money that is not permitted pursuant to the DIP Credit Agreement, or an increase in aggregate principal in the DIP Facility shall require consent of each DIP Lender.

38.    _Credit Bidding_. (a) The DIP Agent, for and on behalf of the DIP Lenders, shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral and (b) subject to paragraph 24 hereof, the Prepetition Agent (at the written direction of the applicable Prepetition Secured Parties), for and on behalf of the Prepetition Lenders, shall have the right to credit bid up to the full amount of the Prepetition Credit Facility Debt, in connection with any sale of any Collateral pursuant to section 363 of the Bankruptcy Code, under a plan of reorganization or liquidation under section 1129 of the Bankruptcy Code, or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code, in each case, to the extent provided for in section 363(k) of the

Bankruptcy Code, without the need for further Court order authorizing the same, and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.  For the avoidance of doubt, subject to paragraph 24 hereof, nothing in this Final Order shall impair the DIP Lenders' unqualified right to credit bid up to the full amount of the outstanding DIP Obligations (including any accrued interest) in any sale of the DIP Collateral (or any part thereof) and to include, with the consent of the Prepetition Agent on behalf of the other Prepetition Secured Parties (in accordance with the Prepetition Loan Documents), a credit bid of the Prepetition Credit Facility Debt.

39.    <u>Payments Held in Trust</u>.  Except as expressly permitted in this Final Order or the DIP Documents and except with respect to any person or entity in its capacity as one of the DIP Loan Parties, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of all DIP Commitments, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Secured Parties and shall immediately turn over the proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Final Order; *provided* that, after indefeasible payment in full in cash of all DIP Obligations and termination of all DIP Commitments, in the event that any Prepetition Notes Secured Party receives any Prepetition Collateral or any proceeds of Prepetition Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all obligations under the Prepetition Credit Facility Debt, then such Prepetition Notes Secured Party shall be deemed to have received, and shall hold,

any such payment or proceeds of Prepetition Collateral in trust for the benefit of the Prepetition

Agent and the Prepetition Secured Parties and shall immediately turn over the proceeds to the

Prepetition Agent, or as otherwise instructed by this Court, for application in accordance with the

Prepetition Loan Documents, the Prepetition Intercreditor Agreement and this Final Order.

40.     <u>DIP Released Parties</u>.  Effective as of the date of entry of the Interim Order, each

of the Debtors and the Debtors' estates, on its own behalf and on behalf of its and their past, present

and future predecessors, successors, subsidiaries, and assigns, hereby absolutely, unconditionally

and irrevocably releases and forever discharges and acquits the DIP Secured Parties and each of

their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons,

and Representatives, each in such capacity (collectively, the "**DIP Released Parties**"), of and from

any and all obligations and liabilities to the Debtors (and their successors and assigns) and from

any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities,

actions and causes of action of any kind, nature or description, whether matured or unmatured,

known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued,

suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or

equity, upon contract or tort or under any state or federal law or otherwise, arising out of or related

to (as applicable) the DIP Documents, the obligations owing and the financial obligations made

thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and

financial obligations made thereunder, in each case that the Debtors at any time had, now have or

may have, or that their successors or assigns hereafter can or may have against any of the DIP

Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising

at any time on or prior to the date of the Final Order, including, without limitation, (a) any so-

called "lender liability" or equitable subordination or recharacterization claims or defenses, (b) any

and all claims and causes of action arising under the Bankruptcy Code, and (c) any and all claims and causes of actions with respect to the validity, priority, perfection, enforceability or avoidability of the liens or claims of the DIP Secured Parties (collectively, the "**DIP Released Claims**"). For the avoidance of doubt, nothing in this release shall release the DIP Secured Parties of any liability that may arise after the date of this Final Order or relieve the DIP Secured Parties of their Obligations under the DIP Documents from and after the date of this Final Order.

41.     <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

42.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

43.     <u>Necessary Action</u>.  The Debtors, the DIP Secured Parties, the Prepetition Secured Parties and the Prepetition Notes Secured Parties are authorized to take all actions as are necessary or appropriate to implement the terms of this Final Order.  In addition, the Automatic Stay is modified to permit affiliates of the Debtors who are not debtors in these Chapter 11 cases to take all actions as are necessary or appropriate to implement the terms of this Final Order.

44.     <u>Removal of Certain DIP Credit Agreement Events of Default</u>.  The provisions of the DIP Credit Agreement that provide that it is a default if (a) a motion is filed for additional or alternative financing, or (b) a request is made for superpriority expense treatment of another obligation, or (c) a motion is made for adequate protection in favor of another party, shall not apply to the extent that the Debtors seek approval of a debtor-in-possession credit facility that would replace the DIP Facility, and the Debtors' rights to seek such a replacement is fully preserved.

45.    <u>Secured Hedging Obligations</u>.  Notwithstanding anything to the contrary set forth in the Prepetition Loan Documents or this Final Order, any payment due from a Secured Hedge Counterparty (as defined in the Prepetition Intercreditor Agreement) to a Debtor under a Secured Hedge Agreement (as defined in the Prepetition Intercreditor Agreement) shall be paid to such Debtor and shall be treated as Cash Collateral pursuant to the terms of this Final Order.  The Debtors shall provide notice to the Prepetition Agent of the receipt of such payment reasonably promptly after receipt thereof.  Any payment due from a Secured Hedge Counterparty to a Debtor under a Secured Hedge Agreement that has been paid to the Prepetition Agent after the Petition Date but prior to the entry of this Final Order shall be turned over to the Debtors by the Prepetition Agent as soon as reasonably practicable.

46.    <u>Avoidance Proceeds</u>.  The Debtors shall not disburse and shall hold Avoidance Proceeds in trust for the benefit of the DIP Secured Parties, Prepetition Secured Parties, and Prepetition Notes Secured Parties, and shall immediately turn over such Avoidance Proceeds to the DIP Agent, Prepetition Agent, or Prepetition Indenture Trustee (as applicable) to first satisfy the DIP Obligations, Adequate Protection Obligations, and Noteholders Adequate Protection Obligations to the extent such claims are not satisfied from other Collateral following commercially reasonable efforts by the DIP Secured Parties, Prepetition Secured Parties, and Prepetition Notes Secured Parties, as applicable and as described in this Final Order.  Any Avoidance Proceeds received by the Debtors shall be maintained in a separate account and constitute Collateral.    Once such DIP Obligations, Adequate Protection Obligations, and Noteholders Adequate Protection Obligations are indefeasibly paid in full and in cash, then any remaining Avoidance Proceeds may be used for other purposes and to satisfy other claims as further ordered by the Court.  To the extent any person or entity other than the Debtors receives

any Avoidance Proceeds prior to the indefeasible payment in full in cash of the DIP Obligations, Adequate Protection Obligations, and Noteholders Adequate Protection Obligations, such person or entity shall be deemed to have received such Avoidance Proceeds in in trust for the benefit of the DIP Secured Parties, Prepetition Secured Parties, and Prepetition Notes Secured Parties, and shall immediately turn over such Avoidance Proceeds to the Debtors to hold and disburse as set forth in this paragraph 46.

47.　　<u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to implement, interpret, and enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.  Except as set forth in this paragraph 47, the Prepetition Secured Parties do not consent to, and shall not be deemed to consent to, the jurisdiction of the Court for any other reason.

48.　　<u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

Dated: October 23, 2020
　　　New York, New York

　　　　　　　　　　　　　**s/Michael E. Wiles**
　　　　　　　　　　　　　The Honorable Michael E. Wiles
　　　　　　　　　　　　　United States Bankruptcy Judge

## **Exhibit 1**

Intercreditor Arrangements

## Exhibit 1

## DIP Intercreditor Arrangements[1]

*Section 1.01    Priming*

The DIP Agent on behalf of itself and each DIP Secured Party and the Prepetition Agent on behalf of itself and each Prepetition Secured Party hereby consent to the priming of the Prepetition Collateral by the DIP Collateral pursuant to the terms of the Consent, the Interim Order and the DIP Documents.

Without prejudice to the generality of the foregoing, for the purpose of any DIP Collateral governed by Romanian law, the DIP Agent and the Prepetition Agent hereby fully, unconditionally and irrevocably agree that the DIP Collateral shall rank senior in priority to the Prepetition Collateral, pursuant to the terms of the Consent, the Interim Order, the DIP Documents and article 2427 of the Civil Code of Romania.

For this purpose, pursuant to the terms of the Consent, the Interim Order and the DIP Documents, the Prepetition Agent:

(i) agrees to enter any amendments to the Romanian law Prepetition Collateral for the purpose of reflecting their change into second ranking, to the extent deemed necessary by the parties thereunder; and

(ii) will provide the proof of registration as first ranking of the DIP Collateral governed by Romanian law with the National Registry for Movable Publicity and the Shareholders' Registry, as applicable and take such further action and shall execute and deliver such additional documents and instruments required or desirable to effect such registration, including but not limited to, any change of ranking agreement.

*Section 1.02    No New Liens.*

The DIP Agent on behalf of itself and each DIP Secured Party and the Prepetition Agent on behalf of itself and each Prepetition Secured Party hereby agree that, (a) so long as any DIP Obligations remain outstanding, none of the DIP Loan Parties  shall grant any additional liens on any asset or property of any DIP Loan Party to secure any Prepetition Credit Facility Debt unless (to the extent not prohibited and possible under applicable law) it has granted, or concurrently therewith grants, a lien on such asset or property of such DIP Loan Party  to secure the DIP Obligations and   (b) so long as any DIP Obligations remain outstanding, if the Prepetition Agent, for the benefit of the Prepetition Secured Parties, shall hold any lien on any assets or property of any DIP Loan Party securing any Prepetition Credit Facility Debt that are not also subject to the DIP Liens, the Prepetition Agent (i) shall notify the DIP Agent promptly upon becoming aware thereof and, unless such DIP Loan Party shall promptly grant a similar lien on such assets or property to the DIP Agent as security for the DIP Obligations, shall (to the

---

[1] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Interim Order.

extent not prohibited and possible under applicable law) assign such lien to the DIP Agent as security for all DIP Obligations for the benefit of the DIP Secured Parties (but may retain a junior lien on such assets or property subject to the terms hereof) and (ii) until such assignment of such lien to the DIP Agent or such grant of a similar lien to the DIP Agent, shall (to the extent not prohibited and possible under applicable law) be deemed to also hold and have held such lien for the benefit of the DIP Agent and the other DIP Secured Parties as security for the DIP Obligations. Without limiting the foregoing, in the event that the Prepetition Agent for the benefit of the Prepetition Secured Parties holds any lien on any assets or property of any DIP Loan Party to secure the Prepetition Credit Facility Debt and is unable to assign or transfer such lien to the DIP Agent or any other DIP Secured Party (as applicable under the relevant jurisdiction of that lien), the Prepetition Agent shall promptly delegate its enforcement rights in respect of such asset or property to the DIP Agent or any other DIP Secured Party (as applicable) so as to provide that such enforcement rights are exercisable in accordance with the enforcement rights of the DIP Agent or any other DIP Secured Party as set forth in the Interim Order and the other DIP Documents.

*Section 1.03    Cooperation.*

(a)    The Prepetition Agent  on behalf of itself and each Prepetition Secured Party agrees to cooperate with the DIP Agent and any other DIP Secured Party, including, without limitation, making, executing and delivering any amendments or modifications to the Prepetition Loan Documents or filings in any applicable jurisdiction to provide for the lien priority set forth in the Interim Order, granting any necessary powers-of-attorney (together with all formalities), to effect any such amendments or modifications, delivering to the DIP Agent the certificates of shares which are subject to any DIP Collateral (including with any necessary endorsements) and, to the extent such amendment or modification requires any mandatory or advisable form or other perfection requirement such as notarial form, the parties agree to comply with the respective amendment or modification as if such form would have been complied with and jointly undertake to comply with such form requirement as soon as reasonably practicable.

(b)    In furtherance of the foregoing and the intentions of the Interim Order, the Prepetition Agent agrees to take instruction from the DIP Agent with respect to actions required or permitted to be taken pursuant to the terms of the Prepetition Intercreditor Agreement and will take all reasonable steps with respect to the Prepetition Intercreditor Agreement, in each case solely to the extent necessary to effectuate the purposes of the Interim Order (including these Intercreditor Arrangements).

*Section 1.04    Further Assurances.*

The DIP Agent, on behalf of itself and each DIP Secured Party and the Prepetition Agent on behalf of itself and each Prepetition Secured Party agrees that it will take such further action and shall execute and deliver such additional documents and instruments (in recordable form, if requested) as the other parties hereto may reasonably request to effectuate the terms of, and the lien priorities contemplated by, the Interim Order, including such amendments to financing statements and other documents as may be necessary to reflect or record the relative priorities established pursuant to the Interim Order.  If at any time or from time to time hereafter

it becomes necessary or advisable in connection with any enforcement action or other disposition of any DIP Collateral by the DIP Agent to obtain a subordination, release or discharge of liens of the Prepetition Secured Parties in any such DIP Collateral in order to convey good and marketable title to such DIP Collateral, then, so long as such enforcement action or other disposition, and the application of the proceeds derived therefrom, have been accomplished in conformity with the Interim Order, upon the request of the DIP Agent, the Prepetition Agent shall execute such instruments of subordination, release or discharge of such liens, in recordable form, as may be reasonable and appropriate in the circumstances; *provided*, *however*, that no such subordination, release or discharge shall alter, impair, release, discharge, terminate or otherwise modify any liens of the Prepetition Agent, which are held for the benefit of the Prepetition Secured Parties in and to any other portion of the DIP Collateral then existing or the claims of the Prepetition Secured Parties against DIP Loan Parties for any of the Prepetition Credit Facility Debt.

*Section 1.05    Foreign Collateral.*

For the avoidance of doubt, notwithstanding that liens granted to the DIP Secured Parties and the Prepetition Secured Parties on the Collateral governed by the laws of a jurisdiction located outside of the United States of America (the "**Foreign Collateral**") may (A) have legally the same or differing ranking due to mandatory legal provisions governing such Foreign Collateral or (B) have been perfected in an order contrary to the contemplated ranking as set out in the Interim Order, the contractual ranking of the liens on such Foreign Collateral shall be consistent with the ranking set forth in the Interim Order, and all the other terms and provisions of the Interim Order, the Consent and the DIP Documents with respect to Collateral shall be applicable to such Foreign Collateral.  In furtherance of the foregoing, the Prepetition Agent shall take such action as reasonably requested from time to time to effectuate the provisions of the Interim Order including, without limitation, as to lien priority, enforcement and releases.

*Section 1.06    Appointment of DIP Agent.*

In relation to any DIP Documents governed by the laws of Switzerland (the "**Swiss Collateral Documents**") (i) all Collateral charged under the Swiss Collateral Documents is DIP Collateral (with the exception of Cash Collateral), (ii) the DIP Agent holds any security created or evidenced or expressed to be created or evidenced under or pursuant to a Swiss Collateral Document by way of a security assignment (*Sicherungsabtretung*) or transfer for security purposes (*Sicherungsübereignung*) or any other non-accessory (*nicht akzessorische*) security; and any proceeds and other benefits of such DIP Collateral, as fiduciary (*treuhänderisch*) in its own name but for the account of all relevant DIP Secured Parties and Prepetition Secured Parties which have the benefit of such security in accordance with the Interim Order and the respective Swiss Collateral Document; (ii) each present and future DIP Secured Party and each present and future Prepetition Secured Party hereby authorizes the DIP Agent to (A) accept and execute as its direct representative (*direkter Stellvertreter*) any Swiss law pledge or any other Swiss law accessory (*akzessorische*) security created or evidenced or expressed to be created or evidenced under or pursuant to a Swiss Collateral Document for the benefit of such DIP Secured Party and Prepetition Secured Party hold, administer and, if necessary, enforce any such DIP Collateral  on behalf of each relevant DIP Secured Party  which has the benefit of such DIP Collateral; (B)

agree as its direct representative (*direkter Stellvertreter*) to amendments and alterations to any Swiss Collateral Document which creates or evidences or expressed to create or evidence a pledge or any other Swiss law accessory (*akzessorische*) security; (C) effect as its direct representative (*direkter Stellvertreter*) any release of DIP Collateral created or evidenced or expressed to be created or evidenced under a Swiss Collateral Document in accordance with the Interim Order; and (D) exercise as its direct representative (*direkter Stellvertreter*) such other rights granted to the DIP Agent under the Interim Order or under the relevant Swiss Collateral Document.

In relation to any DIP Collateral under the DIP Documents governed by the laws of the United Mexican States, the DIP Secured Parties and the Prepetition Secured Parties hereby appoint the DIP Agent, and the parties agree and acknowledge that the DIP Agent will act, as a *comisionista* of the DIP Secured Parties and of the Prepetition Agent (for itself and on behalf of each Prepetition Secured Party) pursuant to Articles 273 and 274 of the Mexican Commerce Code (*Código de Comercio*).

## Section 1.07    DIP Parallel Debt

(a)    Subject to the limitations set out in each DIP Document, each DIP Loan Party hereby irrevocably and unconditionally undertakes to pay to the DIP Agent amounts equal to any amounts owing from time to time by that DIP Loan Party to any DIP Secured Party under any of the DIP Documents, including any Guarantee, as and when those amounts are due (the "**DIP Parallel Debt**").

(b)    Each DIP Loan Party and the DIP Agent acknowledge that the obligations of each DIP Loan Party under clause (a) above are several and are separate and independent from, and shall not in any way limit or affect, the corresponding obligations of that DIP Loan Party to any DIP Secured Party under any of the DIP Documents, including any Guarantee (its "**DIP Corresponding Debt**"), nor shall the amounts for which each DIP Loan Party is liable under clause (a) above (its "**DIP Parallel Debt**") be limited or affected in any way by its DIP Corresponding Debt provided that: (i) the DIP Parallel Debt of each DIP Loan Party shall be decreased to the extent that its DIP Corresponding Debt has been irrevocably paid or (in the case of guarantee obligations) discharged; and (ii) the DIP Corresponding Debt of each DIP Loan Party shall be decreased to the extent that its DIP Parallel Debt has been irrevocably paid or (in the case of guarantee obligations) discharged; and (iii) the amount of the DIP Parallel Debt of a DIP Loan Party shall at all times be equal to the amount of its DIP Corresponding Debt.

(c)    For the purpose of this Section 1.07 (*DIP Parallel Debt*), the DIP Agent acts in its own name and not as a trustee, and its claims in respect of the DIP Parallel Debt shall not be held on trust.  The DIP Liens granted under the DIP Documents, including any Guarantee, to the DIP Agent to secure the DIP Parallel Debt are granted to the DIP Agent, in its capacity as creditor of the DIP Parallel Debt and shall not be held on trust.

(d)    All moneys received or recovered by the DIP Agent pursuant to this Section 1.07 (*DIP Parallel Debt*), and all amounts received or recovered by the DIP Agent, from or by the

4

enforcement of any DIP Liens granted to secure the DIP Parallel Debt, shall be applied in accordance with the DIP Documents.